John Kaempf, OSB #925391
KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: (503) 224-5006
Email: john@kaempflawfirm.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC. an Oregon public benefit corporation; BRAD LOHREY, SHERMAN COUNTY SHERIFF; and ADAM JOHNSON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>KATE BROWN, GOVERNOR OF THE STATE OF OREGON, in her official capacity; and ELLEN ROSENBLUM, ATTORNEY GENERAL OF THE STATE OF OREGON, in her official capacity,<br><br>Defendants. | Civil No.<br><br>**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1. Plaintiffs Oregon Firearms Federation "OFF," Sherman County Sheriff Brad Lohrey, and Adam Johnson—collectively "Plaintiffs"— through their counsel, bring this action against Defendants Kate Brown, the Governor of Oregon, in her official capacity; and

Page 1 – PLAINTIFFS' COMPLAINT

Ellen Rosenblum, the Attorney General of Oregon, in her official capacity; and make the following allegations.

2. Millions of law-abiding Americans own firearms equipped with magazines capable of holding more than 10 rounds of ammunition. There is nothing unusual or novel about this technology. Many of the nation's best-selling handguns and rifles come standard with magazines that can hold more than 10 rounds—and firearms equipped with such magazines are safely possessed by law-abiding citizens in the vast majority of States. The reason for the popularity of these magazines is that in a confrontation with a violent attacker, having enough ammunition can be the difference between life and death.

3. Although magazines capable of holding more than 10 rounds have existed and been in common use for more than a century, Oregon, through 2022 Ballot Measure 114—"114"—bans their manufacture, sale, import, or transfer effective December 8, 2022. https://www.oregonlive.com/politics/2022/11/oregons-strict-new-gun-limits-under-measure-114-go-into-effect-even-sooner-state-says.html

4. In Oregon's view, these standard issue magazines are actually "large capacity magazines" that threaten public safety. In November 2022, the State took the additional and extreme step of banning mere possession of magazines over 10 rounds. Under 114, owners of such magazines who want to keep the property they lawfully acquired and have used only for lawful purposes may no longer continue to do so.

5. 114 violates multiple constitutional provisions. First, it impermissibly burdens Plaintiffs' Second Amendment rights. The Second Amendment protects the right to keep and bear arms "typically possessed by law-abiding citizens for lawful purposes." *District of Columbia v. Heller*, 554 U.S. 570, 624-625 (2008). This applies to keeping and bearing arms

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: 503-224-5006

both inside and outside the home. *Id.*; *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022). "The standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S. Ct. at 2129-2130. "The second and 14th amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id*. at 2122. "The State's licensing regime violates the Constitution." *Id*. "Individual self-defense is the central component of the Second Amendment right." *Id*. at 2133.

6. Second, Article 1, Section 27 of the Oregon Constitution states, in relevant part, that "the people shall have the right to bear arms for the defence [sic] of themselves."

7. The Second and Fourteenth Amendments thus protect an individual's right to carry a gun for self-defense inside and outside the home.

8. The Second Amendment protects the purchase and use of ammunition and magazines necessary to make firearms effective. Because the magazines Oregon prohibits are "in common use for lawful purposes like self-defense," the prohibition "cannot stand." *Heller*, 554 U.S. at 624, 636.

9. 114 also violates the Takings Clause. By banning possession—in addition to sales and use—of magazines that were lawfully acquired and are presently possessed. 114 constitutes a physical appropriation of property without compensation that is *per se* unconstitutional.

10. 114 also violates article XI, Section 15 of the Oregon Constitution, which provides that "when the Legislative Assembly or any state agency requires any local government to establish a new program or provide an increased level of service for an existing program, the State of Oregon shall appropriate and allocate to the local government moneys sufficient to pay the ongoing, usual and reasonable costs of performing the mandated service or activity."

11. Finally, 114 violates the Due Process Clause. Banning magazines over 10 rounds is no more likely to reduce criminal abuse of guns then banning high horsepower engines is likely to reduce criminal abuse of automobiles. To the contrary, the only thing the ban contained in 114 ensures is that a criminal unlawfully carrying a firearm with a magazine over 10 rounds will have a potentially devastating advantage over his law-abiding victim. And 114 raises particularly acute due process concerns because it criminalizes the continued possession of magazines that were lawful when acquired. Desiring to acquire, possess, use, and/or transfer these unconstitutionally protected magazines for lawful purposes, including self-defense, but justifiably fearing prosecution if they do so, Plaintiffs respectfully request that this Court (1) declare that 114 infringes Plaintiffs' constitutional rights; and (2) immediately and permanently enjoin Defendants from enforcing 114 to the extent it prevents law-abiding Oregonians, like Plaintiffs, from acquiring, possessing, using or transferring constitutionally protected arms.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction of this civil action under 42 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a) and 42 U.S.C.

§ 1983 since this action seeks to address the deprivation, under color of the laws, statutes ordinances, regulations, customs and usages of the state of Oregon and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

13. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

14. Venue in this judicial district and division is proper under 28 U.S.C. § 1391 (D)(d)(2) because a substantial part of the offenses or omissions giving rise to Plaintiffs' claims occurred in this district and division.

## PARTIES

### PLAINTIFFS

15. Plaintiff Adam Johnson is a resident of Marion County, Oregon, and a law-abiding citizen of the United States. He owns numerous magazines prohibited by 114. But for Oregon's restrictions on magazines over 10 rounds, and his reasonable fear of criminal prosecution for violating them, plaintiff Johnson would continually possess a magazine over 10 rounds in Oregon for lawful purposes, including in-home and outside self-defense. Plaintiff Johnson owns Coat of Arms Custom Firearms, a store in Keizer, Oregon.

16. Plaintiff Brad Lohrey is the Sheriff of Sherman County, Oregon. If 114 takes effect, he and his officers will be unable to adequately protect the residents of Sherman County. Plaintiff Lohrey is a resident of Sherman County, Oregon, and a law-abiding citizen of the United States. He owns magazines prohibited by 114 for self-defense and other lawful purposes. But for Oregon's restrictions on magazines over 10 rounds and his reasonable fear

of criminal prosecution for violating them, plaintiff Lohrey would continually possess a magazine over 10 rounds in Oregon for lawful purposes, including in-home and outside self-defense, and law enforcement.

17. Plaintiff OFF is an Oregon public benefit corporation located in Canby, Clackamas County, Oregon. OFF is qualified as tax-exempt under 26 U.S.C. § 501(c)(4). OFF seeks to defend the civil rights of all law-abiding individuals, including the fundamental right to acquire and possess commonly owned firearm magazines.

18. OFF regularly provides guidance to Oregon gun owners regarding their legal rights and responsibilities. In addition, OFF is dedicated to promoting the shooting sports and providing education, training, and organized competition for adult and junior shooters. OFF members include law enforcement officers, prosecutors, professionals, firearm experts, and the public.

19. In this suit, OFF represents the interests of thousands of its members who reside in Oregon, including Sherman, Umatilla, and Wallowa County, and who are too numerous to conveniently bring this action individually. OFF represents the interests of those who are affected by Oregon's restriction on magazines capable of holding more than 10 rounds. In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution, and to continue to lawfully possess property that they lawfully obtained. But for Oregon's restrictions on magazines over 10 rounds and the reasonable fear of prosecution for violating them, OFF members would seek to acquire, keep, possess, and/or transfer such magazines for in-home and outside self-defense and other

lawful purposes, including self-defense outside the home  And the "permits to purchase" provisions of 114 also violate plaintiffs' Second and Fourteenth Amendment rights.

## DEFENDANTS

20.     Defendant Kate Brown is the Governor of the State of Oregon.  Defendant Ellen Rosenblum is the Attorney General of the State of Oregon.  Defendants are the chief law enforcement officers of Oregon.  They are charged by the Oregon Constitution with the duty to see that the laws of Oregon are uniformly and adequately enforced.  Defendant Rosenblum also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective offices.  Her duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of Oregon, including restrictions on certain magazines classified as "large capacity magazines." Defendants act and acted in their official capacities.  Defendants are responsible for formulating, executing, and administering Oregon's restrictions on magazines capable of holding more than 10 rounds at issue in this lawsuit.  Defendants can enforce Oregon's restriction on magazines capable of holding more than 10 rounds; And its "permits to purchase" clauses; against Plaintiffs and other Oregon citizens under color of state law within the meaning of 42 U.S.C. § 1983.

## GENERAL ALLEGATIONS
## RIGHT TO KEEP AND BEAR ARMS

21.     The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." United States Supreme Court has concluded that "self-defense is a basic right, recognized by many legal systems from ancient times to the present day, an individual self-defense is the central component of

the Second Amendment right." *McDonald v. City of Chicago*, 562 U.S. 742, 767 (2010). The Supreme Court has held that a prohibition of an entire class of arms that is overwhelmingly chosen by American society is unconstitutional, especially when that prohibition extends to the home, where the need for defense of self, family, and property is most acute. *Heller*, 554 U.S. at 628.

22. The "arms" protected by the Second Amendment are those "typically possessed by law-abiding citizens for lawful purposes" today. Second Amendment protection also includes the ammunition and magazines necessary to meaningfully keep and bear arms for self-defense. As such, the Second Amendment protects magazines and the firearms equipped with them that are in common use for lawful purposes.

23. The Supreme Court also holds that the Second Amendment right to keep and bear arms is incorporated into the Due Process Clause of the 14th Amendment and may not be infringed by state or local governments. *McDonald*, 561 U.S. at 750.

## DUE PROCESS CLAUSE

24. The Due Process Clause of the 14th Amendment provides that "no state shall deprive any person of life, liberty, or property without due process of law." The "touchstone *of* due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Thus, a law that deprives an individual of life, liberty, or property without furthering any legitimate governmental objective violates the Due Process Clause.

25. Legislation that changes the law retroactively—making conduct that was legal when undertaken illegal—is especially likely to run afoul of the Due Process Clause. *See Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976). If retroactive laws change the legal

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: 503-224-5006

consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. Consequently, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity.

26. A law that deprives an owner of private property without a permissible justification violates the Due Process Clause regardless of whether it violates the Takings Clause.

## THE RESTRICTED ITEMS AND THEIR USES

27. A firearm magazine is a device that stores ammunition, and it is a critical part of delivering a loaded cartridge to the firing chamber of a rifle, pistol, or shotgun for distant charge of a projectile (bullet or shot).

28. Magazines can be either fixed to ("integral") or detachable from a firearm. Removal of fixed magazines requires disassembly of the firearm. Once a fixed magazine is removed from a firearm, the firearm lacks a structure to store ammunition, rendering the firearm unable to accept ammunition for firing, unless manually loaded into the chamber one round at a time after each discharge.

29. On the other hand, detachable magazines are designed to be routinely removed from and reinserted into a firearm. Removal generally requires a shooter to use a finger on the shooter's dominant hand to press a button or push a lever that releases the magazine from the cavity into which it is inserted to feed ammunition into the firearm's chamber for firing. Once a detachable magazine is removed, the firearm is unable to accept ammunition for firing, unless manually loaded into the chamber one round at a time after each discharge.

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: 503-224-5006

30. Originally, firearms only had "fixed" magazines. The modern detachable magazine was given form in 1879 with the introduction of the Remington-Lee bolt action rifle, and detachable magazines have been in common use ever since.

31. Detachable magazines offer several advantages beyond ease of reloading the firearm. Most important to self-defense, including inside and outside the home, detachable magazines allow for quick loading. This is especially beneficial if the gun is stored in an unloaded condition.

32. The detachable magazine is also useful if the firearm "jams." A "jam" is the failure of an expended cartridge to eject or the failure of a loaded cartridge to enter the chamber properly. The proper procedure for clearing a "jam" usually involves first removing the magazine. If the magazine is fixed, clearing the "jam" can be more difficult and dangerous because the next round in the magazine is trying to feed into the chamber and the user does not have the option, as there would be with a detachable magazine, of removing the magazine from below to stop that pressure.

33. Even outside a "jam" situation, detachable magazines offer safety advantages. Many fixed magazines require that the cartridges be cycled through the loading process for unloading. That creates many more opportunities for an accidental discharge—opportunities that are exacerbated when unloading must occur in a vehicle, in darkness, or in a crowded location.

34. Detachable magazines are a convenient and safe way to store and transport ammunition. And if mud or dirt gets into the magazine, it is often much easier to clean or replace a detachable magazine.

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: 503-224-5006

35. Finally, pre-loaded detachable magazines allow shooters to conveniently share ammunition while practicing—if they have similar firearms—or to safely reload while waiting one's turn to shoot, since the magazine is outside of the firearm while reloading takes place.

36. Firearm users have had the choice of magazine types and capacity for over 130 years. What they select is based on their respective need. For generations, Americans have overwhelmingly chosen detachable magazines.

37. While Oregon does not prohibit all detachable magazines—allowing for those with a capacity of 10 rounds or less—it does prohibit the sizes of magazines that are most popular among the American public. Indeed, detachable magazines capable of holding more than 10 rounds come standard with countless handgun and rifle models throughout the country. And law-abiding Americans own such magazines by the tens of millions.

38. Detachable magazines capable of holding more than 10 rounds are so common that only a few states place any restrictions on them. Not only are these restrictions recent, but they differ as to what capacity is acceptable and for what types of firearms magazine capacity should be restricted.

39. Magazines having a capacity over 10 rounds are popular for self-defense purposes. The grip of a handgun is sized to the common human hand. If enough space exists inside the grip for detachable magazines capable of holding more than 10 rounds—as is true for most commonly sold handguns and rifles—it makes sense, from a self-defense perspective, to take advantage of that space by accommodating as much ammunition as possible. Each available round is an additional opportunity to end the threat. That is

precisely why millions of Americans choose magazines over 10 rounds for self-defense, including inside and outside the home.

## TERMS OF BALLOT MEASURE 114

40. A true copy of Ballot Measure 114 is attached and incorporated as Exhibit A.

## VIOLATION OF PLAINTIFFS' RIGHT TO KEEP AND BEAR ARMS

41. 114 prohibits magazines that come standard with or commonly used in firearms that are "typically possessed by law-abiding citizens for lawful purposes" throughout the United States. *Heller*, 554 U.S. at 624-625. Indeed, millions of firearms—including the most popular models—that come stock from the factory with magazines over 10 rounds—have been sold in the United States. People also buy such magazines after-market by the millions. Notwithstanding Oregon's description of the prohibited magazines as being "large capacity," magazines with capacities of more than 10 rounds are, instead, standard-capacity for many common firearms that are lawfully possessed in the clear majority of States.

42. Prohibiting law-abiding adults from acquiring, keeping, possessing, and/or transferring these commonly owned magazines implicates and violates their Second Amendment rights. A total ban on standard-issue, commonly possessed magazines is not remotely tailored to increasing public safety. To the contrary, limiting magazine capacity to 10 rounds decreases public safety.

43. The "permits to purchase" provisions of 114 violate the Second and 14th Amendments. The "proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen*, 142 S. Ct. at 2156.

## VIOLATION OF PLAINTIFFS' RIGHTS UNDER THE TAKINGS CLAUSE

44. 114 makes it a crime for individuals to continue to possess magazines that they lawfully acquired and presently lawfully possess.

45. By forcing individuals who would otherwise keep their lawfully acquired property to instead physically surrender that property without government compensation, 114 is a *per se* constitutional taking.

46. 114 also violates article XI, Section 15 of the Oregon Constitution. It provides that "when the Legislative Assembly or any state agency requires any local government to establish a new program or provide an increased level of service for an existing program, the State of Oregon shall appropriate and allocate to the local government moneys sufficient to pay the ongoing, usual and reasonable costs of performing the mandated service or activity."

47. In the alternative, to the extent that 114 does not constitute a physical taking, it is an unconstitutional regulatory taking.

## VIOLATION OF PLAINTIFFS' RIGHT TO DUE PROCESS

48. Under the Due Process Clause, the government may deprive individuals of their property only when doing so furthers a "legitimate governmental objective." Due process concerns are heightened when the law applies retroactively to change the consequences of conduct that was lawful at the time.

49. By making it a crime for individuals to continue to possess property that they lawfully acquired, 114 deprives individuals of protected property interests without due process of law. For prohibiting law-abiding adults from possessing lawfully acquired and commonly used magazines based solely on their ability to accept more than 10 rounds does not further a "legitimate governmental objective" in a permissible way.

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: 503-224-5006

## DECLARATORY JUDGMENT ALLEGATIONS

50. 114 is set to go into effect on December 8, 2022. Enforcing 114 violates Plaintiffs' rights under the Second Amendment, the Takings Clause, and the Due Process Clause by including the acquisition, possession, and use of firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.

51. If not immediately enjoined by this Court, Defendants will enforce 114 in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity if 114 is enforced by Defendants.

## FIRST CLAIM FOR RELIEF
## RIGHT TO KEEP AND BEAR ARMS

52. All paragraphs above are realleged and incorporated by reference.

53. 114's definition of "large-capacity magazine" includes many firearm magazines that come standard with or are common for firearms "typically possessed by law-abiding citizens for lawful purposes" nationwide. 114, therefore, generally prohibits Oregonians, including Plaintiffs, from acquiring, keeping, possessing, and/or transferring magazines protected by the Second Amendment, subject to significant criminal penalties, including imprisonment.

54. These restrictions on magazines that are commonly possessed throughout the United States by law-abiding, responsible adults for lawful purposes infringe on the right of the people of Oregon, including Plaintiffs, to keep and bear protected arms as guaranteed by

the Second Amendment to the United States Constitution, and as made applicable to Oregon by the 14th amendment.

55. In violation of the Second Amendment, 114 blocks law-abiding, responsible adults, including Plaintiffs, who would otherwise do so, from acquiring, keeping, possessing, and/or transferring magazines capable of holding more than 10 rounds that are in common use by law-abiding citizens for lawful purposes throughout the United States. Defendants enforcing 114 prevents Plaintiff Lohrey from adequately and fully protecting the residents of Sherman County.

56. 114's prohibitions extend to Plaintiffs' homes, where Second Amendment protections are at their highest, but also affect lawful and constitutionally protected conduct such as hunting, recreational shooting, and competitive marksmanship participation, and self-defense outside the home.

57. Defendants cannot satisfy their burden of justifying 114's restrictions on the Second Amendment right of the people, including Plaintiffs, to acquire, keep, possess, transfer, and use magazines that are in common use by law-abiding adults throughout the United States for the important rights of defense of self and home, and other lawful purposes. Defendants also cannot justify the unconstitutionally burdensome "permits to purchase" provisions of 114.

## SECOND CLAIM FOR RELIEF

### TAKINGS CLAUSE

58. All paragraphs above are realleged and incorporated by reference.

59. Under the Due Process Clause, the government may deprive individuals of their property only when doing so furthers a "legitimate governmental objective." Due

process concerns are heightened when a law applies retroactively to change the consequences of conduct was lawful at the time.

60. By making it a crime for individuals to continue to possess property that they lawfully acquired, 114 deprives individuals of protected property interests without due process of law, as prohibiting law-abiding adults from possessing lawfully acquired and commonly owned magazines based solely on their ability to accept more than 10 rounds does not further a "legitimate governmental objective" in a permissible way.

## PRAYER FOR RELIEF

Plaintiffs pray that the Court:

A. Enter a declaratory judgment under 208 U.S.C. § 2201 that 114 is unconstitutional on its face or, alternatively, to the extent its prohibitions apply to law-abiding adults seeking to acquire, use, or possess firearm magazines that are in common use by the American public for lawful purposes; because such prohibition infringes on the right of the people to keep and bear arms in violation of the Second and 14th Amendments to the United States Constitution; unconstitutionally takes property without compensation in violation of the Takings Clause; and arbitrarily deprives Plaintiffs of protected property interests under the Due Process Clause.

B. Issue an injunction immediately enjoining Defendants and their officers, agents, and employees from enforcing 114 in its entirety, or, alternatively, to the extent that such can be segregated from the rest of 114, any provision of 114 that prohibits the acquiring, using, or possessing of firearm magazines that are in common use by the American public for lawful purposes.

C. An award of all remedies available under 42 U.S.C. § 1983, and all reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law.

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: 503-224-5006

This includes an award of nominal damages against Defendants personally because enforcing 114 violates Plaintiffs' "clearly established rights."

    D.    And grant any such other and further relief as the court may deem proper.

DATED: November 18, 2022.

                                KAEMPF LAW FIRM PC

                                /s John Kaempf
                                John Kaempf, OSB #925391
                                john@kaempflawfirm.com

                                Attorney for Plaintiffs

# VERIFICATION

I, John Kaempf, declare that I have personal knowledge of the factual matters set out in this Complaint and declare under penalty of perjury that the foregoing is true and correct.

DATED: November 18, 2022.

                KAEMPF LAW FIRM PC

                /s John Kaempf
                John Kaempf, OSB #925391
                john@kaempflawfirm.com

                Attorney for Plaintiffs