John Kaempf, OSB #925391
KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone: (503) 224-5006
Email: john@kaempflawfirm.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC. an Oregon public benefit corporation; BRAD LOHREY, SHERMAN COUNTY SHERIFF; and ADAM JOHNSON, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> KATE BROWN, GOVERNOR OF THE STATE OF OREGON, in her official capacity; and ELLEN ROSENBLUM, ATTORNEY GENERAL OF THE STATE OF OREGON, in her official capacity, <br><br> Defendants. | Civil No. 2:22-cv-01815-IM <br><br> **DECLARATION OF PLAINTIFF ADAM JOHNSON IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** |

I, Adam Johnson, testify as follows: I am over 18 years of age and of sound mind, and I have personal knowledge of all matters herein.

1. I am a Plaintiff in this lawsuit and a resident of the State of Oregon. I own Coat of Arms Firearms in Keizer, Oregon.

Page 1 – DECLARATION OF PLAINTIFF ADAM JOHNSON

2. Magazines over 10 rounds are commonly possessed by the American public, and have been for generations. Such magazines have existed since before the American Revolution. They have been very commonly possessed in the United States since 1862. And their popularity has steadily increased ever since, especially as technology has improved.

3. Although exact numbers are difficult to calculate, a sizable percentage—perhaps a majority—of all firearms sold in the United States today come from the factory with magazines over 10 rounds.

4. Magazines of up to thirty rounds for rifles, and up to twenty rounds for handguns, are standard equipment for many popular firearms. These magazines are overwhelmingly used for lawful purposes. Common sense tells us that the small percentage of the population who are violent gun criminals is not remotely large enough to explain the massive market for magazines of more than ten rounds that has existed since the mid-nineteenth century. Civilians overwhelmingly choose them to increase their chances of staying alive in violent confrontations.

5. The reasons a potential victim benefits from having a magazine over 10 rounds for self-defense are obvious. The presence of multiple attackers may require far more defensive discharges to eliminate the threat. The stress of a criminal attack greatly reduces the likelihood that shots fired will hit an attacker, and bullet-hits do not necessarily incapacitate a criminal before he can complete his attack.

6. Further, because most people do not keep back-up magazines or firearms immediately accessible, victims are often limited to shots available from a single firearm

7. It is well-documented that these magazines have long been commonly

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone 503-224-5006

possessed by law-abiding citizens—especially for the core lawful purpose of self-defense. There is nothing unusual or novel about magazines that can hold more than 10 rounds. Indeed, many of the nation's best-selling firearms—including the Glock pistol, the nation's most popular handgun—have long come standard with magazines that Oregon law will prohibit if 114 goes into effect. For these reasons, the banned magazines in 114 are commonly preferred by law-abiding Oregonians, including Plaintiffs, for self-defense.

8. I am a responsible and law-abiding resident of Oregon who is not prohibited from owning or possessing firearms. The same is true of all OFF members based on my knowledge and belief.

9. Plaintiffs either own and possess a lawfully acquired magazine over 10 rounds, or seek to acquire and possess one soon. For purposes of this Motion, I declare that, but for the impending enforcement of 114, I would continue to possess my magazines in Oregon for self-defense and other lawful purposes.

10. OFF represents its countless law-abiding members, who lawfully acquired and presently possess magazines over 10 rounds, and who would retain possession of them if this Court enjoins 114.

11. Existing data show why magazine capacity limits are ineffective at reducing violence. First, criminals rarely fire more than a few rounds, making magazine capacity irrelevant for almost all crimes. High volume of fire is usually limited to rare mass shootings—those involving many victims. But, even in such cases, larger magazines do not increase lethality because the perpetrators almost always possess multiple firearms or magazines that allow them to sustain the same amount and rate of fire, regardless of

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone 503-224-5006

magazine size. For these reasons, the notion that lower capacity magazines (assuming the law prevents the mass murderer from obtaining larger ones) will provide victims an opportunity to escape or tackle the shooter during a magazine change required after few shots is, unfortunately, unrealistic. History shows that mass shooters often change magazines without incident throughout their attack.

12. Indeed, contrary to 114 proponents' claims that magazine bans promote public safety, such laws instead decrease public safety because they restrict the self-defense capabilities of the law-abiding—as the time it takes to change magazines is much more likely to negatively affect crime victims than their attackers. Unlike perpetrators of violent crime and mass shootings, victims do not choose when or where an attack will take place. The number of attackers, the location of the attack, the attacker's intentions, and the time of the attack are completely unknown. For that reason, the prohibited magazines in 114 are overwhelmingly preferred by law-abiding Americans for personal and home defense.

13. The availability of more ammunition in a firearm increases the likelihood of surviving a criminal attack, while limiting the number of rounds available decreases one's chances of survival. A firearm's ammunition capacity is thus directly related to its suitability for self-defense.

14. Limits on magazine capacity are likely to impair the ability of citizens to engage in lawful self-defense in those crime incidents necessitating that the victim fire many rounds in order to stop the aggressive actions of offenders.

15. The reasons citizens benefit from having more than 10 rounds immediately available in a self-defense emergency are clear. Given that criminal attacks occur at a

moment's notice, taking the victim by surprise, usually at night and in confined spaces, victims rarely have multiple magazines or extra ammunition readily available for reloading. Regardless, the victim likely cannot hold a spare magazine as he or she scrambles for cover. Often both hands will be on the firearm. If they are not, one hand is likely holding the phone to call the police. And most people do not keep back-up magazines or firearms strapped to their bodies while they sleep; they must typically make do with a single gun and its ammunition capacity.

16. Even if additional magazines are available, it is extremely difficult—and potentially deadly—to stop to change magazines when one is under attack—the stress of which severely degrades the fine motor skills necessary for the task. That same stress also reduces the accuracy of any shots that are fired.

17. Even if accurate, it is rare that a single shot will immediately neutralize an attacker. And the presence of multiple attackers may require far more defensive discharges to eliminate the threat. If limited to just 10 rounds by the ban in 114, victims are left defenseless should they be unable to incapacitate their attackers with just 10 bullets.

18. 114 will negatively impact police officers who will be in violation once off duty even though they often end shifts and go home in their police cars with all their issued gear.

19. 114 says that the owner of the magazines may continue to possess them if they are used on the property of the "registered owner." But magazines are not "registered," and there is no way to do that even if one wanted to.

20. 114 also effectively bans most common shotguns, since their integral

Page 5 – DECLARATION OF PLAINTIFF ADAM JOHNSON

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 64
Portland, Oregon 97205
Telephone 503-224-5006

magazines have a capacity of over ten rounds when loaded with mini shells. Thus, 114 is an outright ban on one of the most common—and not "military style" firearms.

I hereby declare that the above statement is true to the best of my knowledge and belief, and I understand it is made for use as evidence in court and is subject to penalty of perjury.

DATED: November 23, 2022.

_____
ADAM JOHNSON

KAEMPF LAW FIRM PC
2021 SW Main Street, Suite 04
Portland, Oregon 97205
Telephone 503-224-5006

# CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, I caused to be electronically filed the foregoing paper with the Clerk of the Court by using the CM/ECF system. The following participant in the case who is a registered CM/ECF user will be served by the CM/ECF system.

Brian Marshall
brian.s.marshall@doj.state.or.us

OREGON DEPARTMENT OF JUSTICE
Attorney for Defendants


KAEMPF LAW FIRM PC

/s John Kaempf
John Kaempf, OSB #925391
john@kaempflawfirm.com

Attorney for Plaintiffs

Page 1 – CERTIFICATE OF SERVICE