Karen L. Osborne
Simon P. Serrano *
Austin F. Hatcher *
5238 Outlet Dr.
Pasco, WA 99301
(509) 567-7086
pete@smfjb.org
* Motion for *Pro Hac Vice*, Pending

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., an Oregon public benefit corporation; BRAD LOHREY, Sherman County Sheriff; CODY BOWEN, Union County Sheriff; BRIAN WOLFE, Malheur County Sheriff; HAROLD RICHARD HADEN, JR., an individual; and ADAM JOHNSON, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>KATE BROWN, GOVERNOR OF THE STATE OF OREGON, and ELLEN ROSENBLUM, ATTORNEY GENERAL OF THE STATE OF OREGON, in both their official and personal capacities,<br><br>        Defendants. | Civil No.: 2:22-cv-01815-IM<br><br>OPPOSED BRIEF OF AMICUS CURIAE SILENT MAJORITY FOUNDATION AND SUPPORTING MEMORANDUM |

## **TABLE OF CONTENTS**

CERTIFICATE OF COMPLIANCE WITH LOCAL RULES ............................................... 1

INTRODUCTION AND IDENTITY OF PROPOSED *AMICUS CURAIE* ........................... 1

ARGUMENT ............................................................................................................................ 2

1.  COMMON USE OF THE BANNED MAGAZINES. ....................................................... 2

2.  THE PROHIBITED MAGAZINES HAVE LONG BEEN IN COMMON USE
    FOR LAWFUL PURPOSES. ............................................................................................ 5

3.  THERE IS NO HISTORICAL TRADITION OF RESTRICTING
    AMMUNITION CAPACITY. ........................................................................................... 8

4.  LAWFUL PURPOSES/USES OF THE BANNED MAGAZINES. ............................... 10

CONCLUSION ....................................................................................................................... 11

## **TABLE OF AUTHORITIES**

### **Cases**

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ................................................................................................. 3, 11

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ...................................................................................................... 3

*Friedman v. City of Highland Park*,
  784 F.3d 406 (CA7 2015) ............................................................................................. 4

*Fyock v. City of Sunnyvale*,
  25 F. Supp. 3d 1267 (N.D. Cal. 2014) ...................................................................... 4, 5

*Fyock v. City of Sunnyvale*,
  779 F.3d 991 (CA9 2015) ............................................................................................. 5

*Heller v. District of Columbia* (Heller II),
  670 F.3d 1244 (D.C. Cir. 2011) ................................................................................ 3, 4

*Jones v. Bonta* 34 F. 4th 704, 706,
  (9th Cir. 2022) ............................................................................................................... 11

*New York State Rifle & Pistol Association, Inc. v. Bruen*,

142 S. Ct. 2111 (2022) .................................................................................................. 2

**Other Authorities**

2022 Oregon Ballot Measure 114 ................................................................... 1, 2, 3, 12

Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 Alb.
  L. Rev. 849 (2015) ..................................................................................................... 9

Koper, *An Updated Assessment of the Federal Assault Weapons Ban: Impacts
  on Gun Markets and Gun Violence* (Nat'l Instit. Just. June 2004) .................................. 10

USA Carry, Magazine Restrictions, https://www.usacarry.com/magazine-
  restrictions/, last viewed 11/30/2022 ......................................................................... 10

Oregon Secretary of State 2022 Election Results, available at:
  https://results.oregonvotes.gov/resultsSW.aspx?type=MEASURE&map=C
  TY. Last accessed: November 30, 2022 ................................................................... 12

Act Entitled An Act For The Regulation Of The Militia Of This State,
  https://firearmslaw.duke.edu/laws/1791-s-c-acts-16-an-act-to-amend-and-
  more-effectually-put-in-force-for-the-time-therein-limited-the-act-entitled-
  an-act-for-the-regulation-of-the-militia-of-this-state/, last viewed
  11/30/2022. .................................................................................................................. 9

Washington Engrossed Substitute Senate Bill 5078 ............................................... 1, 2

Violent Crime Control and Law Enforcement Act of 1994 ......................................... 9

**Rules**

LR 7-1 ............................................................................................................................ 1

**Constitutional Provisions**

U.S. Const., amend. II ............................................................................ 2. 3, 4, 5, 8, 9, 11

U.S. Const., amend. XIV ............................................................................................... 9

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

Consistent with Local Rule 7-1, Silent Majority Foundation ("SMF") and its counsel of record certify that it has conferred with counsel of all Parties, as follows: on November 29, 2022, Mr. Serrano corresponded with Plaintiffs' Counsel, inquiring of the benefit of an Amicus brief. Counsel confirmed Plaintiffs' support. Mr. Serrano subsequently fulfilled obligations to "meet and confer" with Defendants' counsel via email on November 29, 2022, wherein Defendants' counsel confirmed that if Amicus brief was filed by 5 PM PST on November 29, 2022, Defendants would not oppose a Motion seeking leave to file an amicus brief; however, Defendants would oppose such a motion and brief if filed after that time. Amicus filed this Brief and its accompanying Motion, on November 30, 2022, as Opposed documents.

## INTRODUCTION AND IDENTITY OF PROPOSED *AMICUS CURAIE*

Silent Majority Foundation, by and through its attorneys, Simon P. Serrano, Austin F. Hatcher, and Karen L. Osborne, requests permission to file a brief as *amicus curiae*. SMF has filed a corresponding Motion seeking Leave to file this Brief and its supporting Memorandum. The SMF team is currently working on a magazine ban in Washington State enacted through Washington's Engrossed Substitute Senate Bill 5078 ("ESSB 5078," 2022), which prohibited "the manufacture, importation, distribution, selling, and offering for sale of large capacity magazines, defined as magazines with the capacity of greater than 10 rounds, impairs or infringes on individual rights to bear arms." (ESSB 5078, modifying Revised Code of Washington, Section 9.41 by adding 9.41.370 and .375.) Washington's ESSB 5078 is very similar, in part, to Oregon's Measure 114 ("114"), insofar as each prohibit sales, manufacturing, and importation of so-called "large capacity magazines," although 114 flies

farther in the face of the United States Constitution by prohibiting the purchase, use, and possession of such magazines while Washingtons' ESSB 5078 does not. Amicus counsel and members live throughout Washington, and many members, including the undersigned attorneys, frequently travel through Oregon on pleasure and business travel. Oft times, these members legally carry firearms with "large capacity magazines" while on these travels. Under these circumstances, SMF and its members are uniquely situated to offer insights into, and representation of persons who will be impacted by Oregon's Ballot Measure 114 beyond Oregon's borders.

## ARGUMENT

Amicus will address the illegality of 114 in three respects. First, the magazines banned by Section 11 of the Measure are in common use and are not dangerous; therefore, they cannot be prohibited under offered by the analysis United States Supreme Court's in *New York Pistol & Rifle Assn v. Bruen*, 142 S.Ct. 2111 (2022) earlier this year. Second, because the text of the Second Amendment of the United States Constitution protects these magazines, the State must demonstrate that regulation of the same is historically consistent with the Nation's historical tradition of firearm regulation, and the State cannot make such a showing. *Id.* at 2126. Finally, recent data demonstrates that carrying firearms for pleasure or in self-defense is becoming increasingly common, usurping any claim that these are "dangerous" or unusual firearms that the government can regulate under the *Bruen* analysis. While these reasons are neither the exclusive nor exhaustive bases to invalidate 114, they are the most compelling reasons to invalidate the Measure under the *Bruen* analysis.

1. **Common Use of the Banned Magazines.**

114 defines a "Detachable magazine" as: an ammunition feeding device that can be loaded or unloaded while detached from a firearm and readily inserted in a firearm.[1] In *District of Columbia v. Heller*, the United States Supreme Court ruled that the District of Columbia's handgun ban was unconstitutional partly because handguns are in "common use." *District of Columbia v. Heller*, 554 U.S. 570, 627-29 (2008). The Court held that the Second Amendment protects arms that are "typically possessed by law-abiding citizens for lawful purposes," inclusive of the regulated firearms. *Id*., at 625. In *Heller II*, the DC Circuit held, of standard capacity magazines holding more than 10 rounds of ammunition, that it could not "be certain whether these weapons are commonly used or are useful specifically for self-defense or hunting and therefore whether the prohibitions of certain semi-automatic rifles and magazines holding more than ten rounds meaningfully affect the right to keep and bear arms." The court then noted that the question need not be resolved through the litigation as, "assuming they do impinge upon the right protected by the Second Amendment, we think intermediate scrutiny is the appropriate standard of review and the prohibitions survive that standard." *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011)

In *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring), the United States Supreme Court concluded that "[b]ased on the evidence presented, it can be confidently said that between at least 200,000 and perhaps 1,000,000 modern rifles are owned in California alone. Based on the lack of evidence at trial that these 200,000 to 1,000,000 California guns are often used in crime, it is reasonable to infer that most are owned by law-abiding citizens who use them only for lawful purposes." In *Heller II*, the DC

---

[1] OR Measure 114, Section 11(b).

Circuit held: "We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,' as the plaintiffs contend." *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (DC Cir. 2011). The Court then cited to statistical evidence to support its conclusion:

> Approximately 1.6 million AR–15s alone have been manufactured since 1986, and in 2007 this one popular model accounted for 5.5 percent of all firearms, and 14.4 percent of all rifles, produced in the U.S. for the domestic market. As for magazines, fully 18 percent of all firearms owned by civilians in 1994 were equipped with magazines holding more than ten rounds, and approximately 4.7 million more such magazines were imported into the United States between 1995 and 2000. There may well be some capacity above which magazines are not in common use but, if so, the record is devoid of evidence as to what that capacity is; in any event, that capacity surely is not ten. *Id.*

Soon thereafter, the Seventh Circuit held in *Friedman v. City of Highland Park* that "the evidentiary record is unequivocal: a statistically significant amount of gun owners such as Friedman use semiautomatic weapons and high-capacity magazines for lawful purposes," noting that "that an estimated 11,976,702 million persons participated in target shooting with an AR-type rifle in 2012." *Friedman v. City of Highland Park*, 784 F.3d at 409 n.3 (7th Cir. 2015). While the Seventh Circuit upheld the regulation challenged in *Friedman*, and Friedman's petition for *certiorari* was denied, this element of its holding was not impacted by those two actions.

Finally, Ninth Circuit precedent includes *findings* "that magazines having a capacity to accept more than ten rounds are in common use and are therefore neither dangerous nor unusual. *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1275 (N.D. Cal. 2014). The district court noted that Plaintiffs had "cite[d] statistics showing that magazines having a capacity to accept more than ten rounds make up approximately 47 percent of all magazines

owned," leading to the conclusion that banned magazines were "in common use" and not "dangerous and unusual." *Id.* Additionally, the court expressed concern that if magazines were not offered the protective constitutional language of "arms," that banning the "possession of magazines having a capacity to accept more than ten rounds implicates the Second Amendment's protections." *Id.* While *Fyock* was subsequently overturned in the Ninth Circuit Court of Appeals, the Circuit Court did not disturb these findings of the lower court, holding "we cannot say that the district court abused its discretion by inferring from the evidence of record that, at a minimum, magazines are in common use." *Fyock v. City of Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015). This court should follow suit with the Ninth Circuit and avoid disturbing the *findings* of the North District of California and hold that the banned magazines are in common use and that the proposed magazine ban violates the Second Amendment.

2. **The Prohibited Magazines have long been in common use for lawful purposes.**

A magazine is necessary to the proper function of the most common firearms in the United States, including both pistols and rifles. A magazine is the storage device for the ammunition allowing each round to be loaded into the chamber of the gun after each pull of the trigger.[2] Without a magazine, a semiautomatic firearm would be capable of firing only a single round before it must be reloaded, making the magazine a necessary part of the operation of the firearm. Additionally, the basic design of many firearms includes magazines that are larger than ten rounds. An example of this is the Browning Hi-Power semi-

---

[2] *See* "Description of the Automatic Pistol, Caliber .45 Model of 1911," at 8 (February 14, 1914), https://ia803102.us.archive.org/34/items/descriptionauto00statgoog/descriptionauto00statgoog.pdf, last visited 11/29/2022.

automatic handgun, patented in 1923, designed to hold 13 rounds.[3]

Magazines of more than ten rounds are older than the United States. Firearms fitted with Magazines that Proposition 114 would prohibit have been used historically since at least 1580 using "superposed" loads (each round stacked on top of the other).[4] Such firearms and magazines have only gained popularity in the ensuing centuries.  The first American presence of such firearms occurred, fittingly in Oregon, with a firearm that included a twenty-two round magazine as Meriwether Lewis carried a Girandoni air rifle on his famous expedition with William Clark and the Corps of Discovery in 1804-06.[5]

The Model 1873 Short Rifle, manufactured by Winchester Repeating Arms, held ten to eleven rounds in a tubular magazine, and was so immensely popular and widespread that it has entered American lore as "the gun that won the West." The Model 1873 built off the commercial success of the Model 1866, marketed and touted by Winchester for defense against "sudden attack either from robbers or Indians."[6]

The M-1 Carbine, in wide use during World War II (WWII), was mass-produced for the returning citizen soldier.[7] In 1903, Congress created the Civilian Marksmanship Program to foster marksmanship, training, and safety, and made the M-1 widely available at steeply-discounted prices with its standard magazine sizes of fifteen or thirty rounds.[8] Springfield

---

[3] Guns.com, "Is a Clip a Magazine?," https://www.guns.com/news/2020/11/18/magazines-standard-capacity-v-large-capacity, last visited 11/29/2022.
[4] Lewis Winant, *Firearms Curiosa* 168-70 (2009).
[5] Jim Garry, *Weapons of the Lewis & Clark Expedition*, 94 (2012); See also: Exhibit 2, Declaration of Ashley Hlebinsky *Miller v. Becerra*, 3:19-cv-01537 (S.D. Cal.) ECF No.: 22-14 (December 6, 2019).
[6] R.L. Wilson, *Winchester: An American Legend*, 32 (1991).
[7] Bruce N. Canfield, *Bruce Canfield's Complete Guide to the M1 Garand and the M1 Carbine*, 163 (1999).
[8] *Id*., note 85, at 163; Larry L. Ruth, 2 *War Baby! Comes Home: the US caliber .30 Carbine*, 575 (R. Blake Stevens ed., 1993).

began producing a M1AA in 1974 with a twenty round detachable magazine.

The most popular rifle in American history is the AR-15 platform introduced in the late 1950s; the NSSF (National Shooting Sports Foundation) conducted research from data compiled from the ATF, the Annual Firearms Manufacturing and Exportation Report (AFMER), and US International Trade Commission (US ITC) and estimates that Modern Sporting Rifles currently circulating in the US number 24,446,000. This number represents a 4.5 million increase since the last estimate in 2020.  These numbers drastically surpass the numbers of the most common vehicle in the United States, the Ford F-150.  Similar to the M1 having widespread popularity among soldiers returning from WWII, the AR-15 is familiar to individuals who have served in the military, as it is similar to the M16A4/M4A1 carbine, standard issue rifles in the United States military.

European makers entered the market for modern sporting rifles in the early 1970s, and include such diverse countries of origin as Belgium's FN, Germany's Hechler & Koch, Switzerland's SIG, and Finland's Valmet.  **All** modern sporting rifles made by European makers come standard with magazines exceeding ten rounds.

Pistols historically carried more than ten rounds, dating back to "pepperbox" pistols of the 1830s.  Samuel Colt's famous revolvers were not as commercially successful as pepperboxes initially, but due to technical simplicity and durability, surpassed pepperboxes as the sidearm of choice, especially among the cowboys and frontiersman of American lore.

One of the most commercially successful pistols is the Beretta 92FS. It is a 9mm pistol with standard magazines of fifteen to seventeen rounds. It is so widely successful and ubiquitous that the United States military issues it as the standard firearm, designated the M9.

Finally, addressing magazines, "box" style magazines were patented as early as 1855, with a detachable version patented in 1864, and a vertically stacked version patented in 1879. Exh. A, at 7. *Industry Intelligence Reports*, utilizing the same sources as NSSF, determined that hundreds of millions of detachable magazines are owned throughout the United States, including hundreds of millions of magazines that hold an excess of 10 rounds:

> (1) of the estimated 304,300,000 magazines in private possession, 159,800,000 (53%) of them hold more than ten rounds;
>
> (2) of the estimated 126,300,000 rifle magazines, 88,600,000 (70%) hold more than ten rounds; and
>
> (3) of the estimated 178,000,000 pistol magazines, 71,200,000 (40%) hold more than ten rounds.[9]

These data unequivocally show that magazines holding more than ten rounds are in common use today; moreover, they show that these types of magazines have a history of common use. These two elements support this Court awarding Plaintiffs' requested relief.

### 3. There is no historical tradition of restricting ammunition capacity.

At the time the Second Amendment was adopted, there were no laws restricting ammunition capacity. As discussed *supra*, that fact is not because guns did not have the capacity to fire more than one round. In fact, states based on federal legislation passed in 1792, required that men between the ages of 18 and 45 years of age "shall . . . provide himself with . . . not less than 24 cartridges.[10]

---

[9] Exhibit 1: NSSF, the Firearm Industry Trade Association. *Industry Intelligence Reports: Firearm Production in the Unite States with Firearm Import and Export Data*. Item #30336-20. October 2020.

[10] *See An Act to Organize, Govern, and Discipline the militia of the State of Maine*, Passed March 21, 1821 at 4-5, https://digitalcommons.usm.maine.edu/me_collection/5/, last viewed 11/30/2022; *See also* Duke Center for Firearms Law, 1791 S.C. Acts 16, *An Act To Amend And More Effectually Put In Force For The Time Therein Limited, The*

The first laws that restricted magazine capacity were enacted during the Prohibition era of 1920-33, nearly a century and a half after the adoption of the Second Amendment, and more than half a century after the adoption of the Fourteenth Amendment. For a detailed conversation regarding the dearth of historical ammunition capacity restrictions, see David B. Kopel, The History of Firearms Magazines and of Magazine Prohibition, 78 Albany L. Rev. 849, 864-868 (2015).

The only longstanding statute banning magazines with a capacity more than ten (the statute prohibits more than twelve shots without reloading) is found in the District of Columbia. Act of July 8, 1932, Pub. L. No. 72-275, §§ 1, 8, 47 Stat. 650, 650, 652.  Only nine states currently have ammunition capacity restrictions, all enacted after the *Violent Crime Control and Law Enforcement Act of 1994*, which Congress allowed to sunset in 2004. Pub. L. 103-322, § 110103(a)-(b), 108 Stat. 1796, 1998-99, § 110105, 108 Stat. at 2000. The *Violent Crime Control and Law Enforcement Act of 1994* prohibited the sales of "large capacity magazines," which the law defined as, *inter alia*, a magazine that "has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition." PL 103-332, Sec. 110103 (108 STAT 1999). It expired within 10 years of its adoption and has not been readopted in the ensuing years. Equally notable is the volume of "large capacity magazines" in commerce in the 1990's prior Congress' Act. One study indicates that at that time, "[a]pproximately 40 percent of the semiautomatic handgun models and a majority of the semiautomatic rifle models being manufactured and advertised prior to

---

*Act Entitled An Act For The Regulation Of The Militia Of This State*, https://firearmslaw.duke.edu/laws/1791-s-c-acts-16-an-act-to-amend-and-more-effectually-put-in-force-for-the-time-therein-limited-the-act-entitled-an-act-for-the-regulation-of-the-militia-of-this-state/, last viewed 11/30/2022.

the ban were sold with LCMs or had a variation that was sold with an LCM."[11] The same study further states that "A national survey of gun owners found that 18% of all civilian-owned firearms and 21% of civilian-owned handguns were equipped with magazines having 10 or more rounds as of 1994."[12]

Moving to this Century, California's definition of "large-capacity magazine" of 10 rounds has been effective only since January 1, 2011, and operative since January 1, 2012. Cal. Penal Code § 16740 (West 2012). Colorado passed a magazine restriction of over 15 rounds as late as 2013. 2013 Colo. House Bill 13-1224. Hawaii's 10 round high-capacity magazine law was passed only in 2011. HI Rev Stat § 134-8 (2011 through Reg. Sess.). Maryland passed a 10-round magazine restriction in 2013. 2013 Md. Laws ch. 427. New Jersey passed its 10-round magazine limit in 2019. *See* N.J.S.A. 2C:39-1. In 2018, Vermont restricted long-gun magazines to 10-rounds and hand gun magazines to 15 rounds. 13 V.S.A. § 4021. Just this year Rhode Island passed a large-capacity magazine ban. 11 R.I. 47.1. Additionally, local jurisdictions in Illinois, New York and Ohio have restrictions that vary from five rounds to 35 rounds depending on the locality.[13] Clearly, high-capacity limits are new to the scene and not a part of the historical record. The variation in the definition of high-capacity also demonstrates the arbitrary nature of such restriction.

**4. Lawful Purposes/Uses of the Banned Magazines.**

---

[11] Koper, *An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence*, at 6. (Nat'l Instit. Just. June 2004). Available at: https://www.ojp.gov/pdffiles1/nij/grants/204431.pdf. Last accessed: November 30, 2022.
[12] *Id.*
[13] USA Carry, Magazine Restrictions, https://www.usacarry.com/magazine-restrictions/, last viewed 11/30/2022.

As addressed above, several courts have concluded that the data demonstrates that the banned magazines are in common use. Recent studies support that conclusion, as one study in the *American Journal of Public Health* provides that the number of persons carrying loaded firearms has increased from 2015 to 2019 by roughly 10 percent (from 65% to 73%).[14] The article further concludes that the increase in numbers of persons carrying firearms for self-defense purposes increases in similar fashion (from 64% in 194 to 83% in 2021).[15] Thus, while the Second Amendment protects one's ability to bear arms, insofar as self-defense is a critical element to protecting that right, current data supports the position that the banned magazines are commonly owned and commonly carried for use in self-defense. Moreover, as the Ninth Circuit recently held, "[a]ll firearms are dangerous, and it therefore follows that they cannot be prohibited merely because they are dangerous alone." *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022), *opinion vacated on reh'g*, 47 F.4th 1124 (Mem) (Sep. 7, 2022). "Thus 'the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes.'" *Jones*, 34 F.4th at 716 (citing *Caetano*, 577 U.S. at 418 (Alito, J., concurring)). As such, the mere fact that firearms are dangerous *per se* does not limit the constitutional protections afforded to the class; this conclusion is further compelled by the increasingly common carrying of firearms in self-defense.

## CONCLUSION

Amicus SMF have demonstrated potential harm to its members and has provided additional historical information and data in support of Plaintiffs' request to enjoin Oregon's

---

[14] Exhibit 3: Rowhani-Rahbar, *et al., American Journal of Public Health: Trend in Loaded Handgun Carrying Among Adult Handgun Owners in the United States, 2015–2019.* Vol 112, No. 12, ad 1783: December 2022.
[15] *Id.*

Measure 114, which is presently supported by the narrowest of margins: 969,255 to 942,282 (5.71% to 49.29%, respectively).[16] Amicus joins Plaintiffs in requesting that this Court enjoin Measures 114.

Dated this 30th of November, 2022.

Karen L. Osborne, OSB #171291, WSBA #51433
Simon P. Serrano, WSBA #54769 *
Austin F. Hatcher, WSBA #57449 *
Attorneys for Amicus, Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301
(509)567-7086
* *Pro Hac Vice* pending

---

[16] Oregon Secretary of State 2022 Election Results, available at: https://results.oregonvotes.gov/resultsSW.aspx?type=MEASURE&map=CTY. Last accessed: November 30, 2022.

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, I caused to be electronically filed the foregoing paper with the Clerk of the Court by using the CM/ECF system. The following participant in the case who is a registered CM/ECF user will be served by the CM/ECF system.

> Brian Marshall
> brian.s.marshall@doj.state.or.us
>
> OREGON DEPARTMENT OF JUSTICE
> Attorney for Defendants
>
> John Kaempf
> john@kaempflawfirm.com
> Attorney for Plaintiffs

DATED: November 30, 2022.

> */s/ Simon Peter Serrano*
> Simon Peter Serrano, WSBA #54769*
> Silent Majority Foundation
> 5238 Outlet Dr.
> Pasco, WA 99301
> (509)567-7086
> *Admitted *Pro Hac Vice*