Jessica A. Skelton, OSB #102714
jessica.skelton@pacificalawgroup.com
PACIFICA LAW GROUP LLP
1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404
206-245-1700

*Attorney for Proposed Intervenor-Defendant*
*Oregon Alliance for Gun Safety*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC. an Oregon public benefit corporation; BRAD LOHREY, SHERMAN COUNTY SHERIFF; and ADAM JOHNSON, an individual,<br><br>Plaintiffs,<br>v.<br><br>KATE BROWN, Governor of the State of Oregon, in her official capacity; and ELLEN ROSENBLUM, Attorney General of the State of Oregon, in her official capacity,<br><br>Defendants. | No. 2:22-cv-01815-IM<br><br>OREGON ALLIANCE FOR GUN SAFETY'S MOTION TO INTERVENE AS A DEFENDANT AND MEMORANDUM OF LAW IN SUPPORT |

# TABLE OF CONTENTS

OREGON ALLIANCE FOR GUN SAFETY'S MOTION TO INTERVENE ............................. 1

MEMORANDUM OF LAW IN SUPPORT OF OREGON ALLIANCE FOR GUN SAFETY'S MOTION TO INTERVENE ................................................................................................ 2

I. INTRODUCTION .................................................................................................... 2

II. STATEMENT OF FACTS ....................................................................................... 3

    A. Measure 114 Seeks to Reduce Gun Violence ............................................... 3

    B. The Alliance Played a Leading Role in the Measure 114 Campaign ........... 3

    C. The Alliance Seeks Intervention Eight Days after Plaintiffs Filed Their First Amended Complaint ...................................................................................... 5

III. ARGUMENT ............................................................................................................ 6

    A. Legal Standards ............................................................................................. 6

    B. The Alliance Is Entitled to Intervene as of Right .......................................... 6

        1. The Alliance's intervention is timely ..................................................... 7

        2. The Alliance has an interest in the subject of this action ...................... 8

        3. The lawsuit's outcome may significantly impair the Alliance's interest .... 8

        4. The Alliance's interest may not be fully represented by Defendants ....... 9

    C. In the Alternative, the Court Should Grant Permissive Intervention .......... 13

        1. The Alliance's defense shares common questions of law and fact ....... 13

        2. The remaining requirements are met or inapplicable ........................... 15

        3. Additional factors weigh in favor of permissive intervention .............. 15

IV. CONCLUSION ....................................................................................................... 16

# OREGON ALLIANCE FOR GUN SAFETY'S MOTION TO INTERVENE

The Oregon Alliance for Gun Safety (the "Alliance") respectfully moves under Federal Civil Rule of Procedure 24(a) and (b) to intervene as of right or permissively in this matter as a defendant. In support of this Motion, the Alliance refers the Court to the attached Memorandum of Law.

Pursuant to Local Rule 7-1(a)(1), the Alliance's counsel contacted counsel for all parties by email on December 5, 2022, regarding their position on this Motion and requesting to confer telephonically. The Alliance's counsel conferred with Defendants' counsel on December 6. Defendants do not oppose this Motion.

Having received no response from Plaintiffs' counsel, earlier today the Alliance's counsel sent a follow-up email to Plaintiffs' counsel again asking for their position on the Motion and for an opportunity to confer telephonically at some point today. Plaintiffs' counsel responded with a two-word email: "No consent." The Alliance's counsel replied with a third email requesting an opportunity to confer today. Plaintiffs' counsel did not respond. Following a 50-minute telephonic conference with counsel for all parties in this case—and three related cases pending in this Court—the Alliance's counsel called Plaintiffs' counsel to briefly confer regarding this Motion. Plaintiffs' counsel reiterated that Plaintiffs did not consent to the Motion, stated that he did not have time to confer before tomorrow afternoon, and hung up.

Based on the foregoing, the undersigned certifies that the Alliance made a good faith effort through a telephone conference to resolve the dispute and has been unable to do so, while Plaintiffs' counsel willfully refused to confer.

# MEMORANDUM OF LAW IN SUPPORT OF OREGON ALLIANCE FOR GUN SAFETY'S MOTION TO INTERVENE

## I. INTRODUCTION

The Oregon Alliance for Gun Safety (the "Alliance")—which played a leading role in the campaign promoting Oregon Ballot Measure 114 ("Measure 114" or the "Measure") to voters—seeks to intervene in this lawsuit to defend the constitutionality of this common-sense gun violence prevention law. Measure 114 reflects Oregon voters' desire to improve public safety and reduce gun violence by limiting the manufacture and sale of large-capacity magazines ("LCMs"), requiring background checks for all firearm sales, and requiring a permit to purchase a firearm. Over the course of several months, the Alliance took a leading role in coordinating support for Measure 114 and promoting it to voters, including forming the political action committee ("PAC") Safe Schools, Safe Communities Oregon ("Safe Schools"), which ultimately expended over $2.1 million in support of Measure 114. Having invested considerable organizational resources to achieve Measure 114's enactment, the Alliance now seeks to defend against Plaintiffs' suit seeking to undo its work and strike down the Measure.

Intervention as of right is warranted. First, this Motion is timely and will not cause undue delay or prejudice to the other parties: the lawsuit was initiated less than three weeks ago, the Amended Complaint was filed eight days ago, no Defendant has filed an answer, and other than ruling on an emergency motion, the Court has made no substantive rulings. Second, as noted above, the Alliance has a significant interest in the subject of this action that will be significantly impaired absent intervention. Third, there is no assurance that the Alliance's interest can be fully represented by the existing Defendants, especially in light of *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which established a new legal standard for analyzing Second Amendment claims. The Court would benefit from the Alliance's perspective

on applying this new framework to the Measure. Further, the Alliance has unique and valuable expertise with respect to firearms and gun violence.

Alternatively, permissive intervention is also appropriate. The Alliance's defense of Measure 114 has common questions of law and fact with this litigation—namely, whether Measure 114 is constitutional—and permissive intervention's other requirements are either met or inapplicable. Indeed, supporters of ballot measures regularly have been allowed to intervene under similar circumstances in courts throughout the Ninth Circuit. Accordingly, the Alliance requests that this Court permit it to intervene as a defendant.

## II. STATEMENT OF FACTS

### A. Measure 114 Seeks to Reduce Gun Violence

Measure 114 seeks to reduce gun violence and increase public safety by improving Oregon's firearm laws in three primary ways. Measure 114 Preamble. First, the Measure requires a completed background check on all gun sales. *Id.* §§ 4, 6. Second, the Measure requires purchasers of a firearm to obtain a permit. *Id.* §§ 6–9. Third, the Measure prohibits, with certain exceptions, the manufacture, sale, or use of LCMs, which allow more than 10 shots to be fired from a gun without reloading. *Id.* §11(2). There are a number of exceptions to this regulation, including that existing owners of LCMs may keep them. *Id.*

### B. The Alliance Played a Leading Role in the Measure 114 Campaign

The Alliance is a Portland-based nonprofit organization dedicated to ending gun violence and promoting a culture of gun ownership that balances rights with responsibilities. Declaration of Thomas Wheatley ("Wheatley Decl.") ¶ 2. It was formed in 2013 in the wake of the Sandy Hook Elementary School shooting that killed 26 people, including 20 children. *Id.* The Alliance collaborates with experts, civic leaders, and citizens at the local and national level to identify and

develop innovative, evidence-based solutions to the crisis of gun violence. *Id.* The Alliance also promotes these solutions in Oregon through political organizing, advocacy, and community education. *Id.*

Over the years, the Alliance has successfully supported several gun safety measures in Oregon. *Id.* ¶ 3. These include efforts that contributed to the Oregon Legislature's 2015 passage of the Oregon Firearms Safety Act, SB 941, which significantly expanded background checks for firearm transfers in the state. *Id.* In 2017, the Alliance also lobbied for and supported the passage of Oregon's Red Flag Law, SB 719, which allows individuals to request Extreme Risk Protection Orders so that a court may order the removal of firearms from gun owners who are at serious risk of harming themselves or others. *Id.*

The Alliance also works closely with its partner organization in Washington State, the Alliance for Gun Responsibility (the "Washington Alliance"). *Id.* ¶ 4. The two organizations have collaborated extensively in promoting ballot measures aimed at enacting common-sense gun safety measures. *Id.* The Alliance has also worked with the Washington Alliance to raise significant funds to support gun safety efforts in Oregon, including Measure 114. *Id.*

With respect to Measure 114 specifically, the Alliance conducted preliminary polling, which informed the drafting of various gun safety proposals, including Measure 114. *Id.* ¶ 5. Once Measure 114 had qualified for the ballot, the Alliance took a leading role in coordinating support for the Measure and promoting it to the voters of Oregon. *Id.* The Alliance formed Safe Schools, a ballot measure PAC with the purpose of ensuring that Measure 114 was approved by the voters of Oregon. *Id.* ¶ 6. The Alliance also brought together members of its partner organizations to form a steering committee for the PAC. *Id.* Mr. Wheatley, senior advisor to the Alliance, played an active leadership role on the steering committee. *Id.* ¶ 7. The Alliance helped lead the steering

OREGON ALLIANCE FOR GUN SAFETY'S
MOTION TO INTERVENE AS DEFENDANT - 4

committee in other ways too, including by recruiting key staff members for the campaign and developing the campaign strategy that the steering committee ultimately adopted and followed. *Id.*

In addition, the Alliance coordinated the efforts of many of the campaign's allies. *Id.* ¶ 8. For example, the Alliance reached out to law enforcement leaders, healthcare workers, national partners, and survivors of gun violence to assemble a diverse coalition of supporters; organized press conferences to promote Measure 114, including one with an expert from Johns Hopkins University; oversaw the extensive drafting process for 30 different voter pamphlet statements signed by over 150 community leaders and organizations in support of Measure 114; prepared campaign allies to meet with newspaper editorial boards to gain endorsements; and tapped the Alliance's extensive list of supporters' emails to educate Oregonians on Measure 114 and how they could help the campaign effort. *Id.* Mr. Wheatley also managed the paid advertising efforts for the campaign, including running ads on streaming platforms and social media and sending direct mailers to over 300,000 households. *Id.* ¶ 9, Ex. A. In total, the campaign spent approximately $2.1 million, including $1.8 million in paid advertising, in support of Measure 114. *Id.* The voters of Oregon responded by passing Measure 114 with 50.7% of the vote.

    **C. The Alliance Seeks Intervention Eight Days after Plaintiffs Filed Their First Amended Complaint**

On November 18, 2022, Plaintiffs filed their Complaint in this matter challenging the legality of Measure 114 under the Second, Fifth, and Fourteenth Amendments of the U.S. Constitution, and articles I (Section 27) and XI (Section 15) of the Oregon Constitution. ECF No. 1. On November 23, 2022, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("Emergency Motion") seeking an injunction prohibiting implementation of Measure 114. ECF No. 5. On November 28, 2022, a First Amended Complaint was filed. ECF No. 13. On November 30, 2022, Defendants filed a response to the Emergency

Motion. ECF No. 15. The Court held a hearing on the Emergency Motion on December 2, and issued a ruling on December 6, denying the Emergency Motion with respect to the LCM regulations and facial challenge to the permitting provision, and staying implementation of the permitting provisions for thirty days. ECF No. 39 at 4. The Court's ruling emphasized the preliminary stage of the proceedings. *Id.* at 25 n.16 ("This Court reiterates that the record at the TRO stage is a limited one, and this finding is made on this limited record alone."). No discovery has been propounded in this case.

### III. ARGUMENT

#### A. Legal Standards

A party may intervene in an action either as a matter of right or by permission. Fed. R. Civ. P. 24. This rule "has received a liberal construction in favor of applications for intervention." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (cleaned up). Intervention is warranted here under either standard.

#### B. The Alliance Is Entitled to Intervene as of Right

Under Federal Civil Rule of Procedure 24(a), "[o]n timely motion, the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." (emphasis added.) From this rule, the Ninth Circuit has set out "four requirements for intervention as of right: [1] timeliness; [2] an interest relating to the subject of the action; [3] practical impairment of the party's ability to protect that interest; and [4] inadequate representation by the parties to the suit." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397

(9th Cir. 1995) (cleaned up). This rule "is construed broadly in favor of the applicants." *Id*. Because each requirement is met here, the Alliance has a right to intervene under Rule 24(a).

### 1. The Alliance's intervention is timely

In evaluating timeliness, the Ninth Circuit considers: (1) the stage of the proceedings; (2) the prejudice to the other parties; and (3) the reason for and length of delay before moving for intervention. *See Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007). Here, the Alliance seeks intervention less than three weeks after the lawsuit was initiated, eight days after the operative complaint was filed, and before any discovery has occurred. The case is in its earliest stages and the Alliance has acted quickly and diligently. The Motion is timely. *See, e.g.*, *Babbitt*, 58 F.3d at 1397 (holding that motion to intervene filed four months after initial complaint was timely). In fact, the Alliance's counterpart in Washington was recently granted intervention in two federal lawsuits challenging a Washington law involving comparable restrictions on LCMs under similar circumstances. *Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE, 2022 WL 10428165, at *6 (W.D. Wash. Oct. 18, 2022) (granting intervention to the Washington Alliance to intervene as a defendant in challenge to Washington statute restricting LCMs, which the Washington Alliance supported; motion "was filed within six weeks of the filing of Plaintiff's initial complaint"); *Brumback v. Ferguson*, No. 1:22-cv-03093-MKD, ECF No. 19 (E.D. Wash. Sept. 27, 2022) (same; motion was filed 13 days after filing of complaint). Likewise, intervention here will enable the Alliance to participate from the case's early stages without disrupting or delaying the proceedings or prejudicing any party.[1]

---

[1] Although this Court issued a ruling on Plaintiffs' Emergency Motion earlier today, intervention at this early stage of the case would not prejudice any party. ECF No. 39 at 25 n.16 ("This Court reiterates that the record at the TRO stage is a limited one, and this finding is made on this limited record alone. Nothing this Court finds at this stage is later binding on this Court once the parties have had more time to develop the evidentiary record.").

### 2. The Alliance has an interest in the subject of this action

The Alliance has a demonstrable interest in defending Measure 114 that is more than sufficient. It is well-established that a "public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Babbitt*, 58 F.3d at 1397 (environmental group that supported listing of local snail as endangered species had right to intervene in defense of listing decision); *see also Sagebrush Rebellion*, 713 F.2d at 527 ("[W]e [previously] held that a public interest group was entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported."); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) ("[A] public interest group that has supported a measure (such as an initiative) has a 'significant protectable interest' in defending the legality of the measure.") (cleaned up). As in these cases, here the Alliance devoted significant resources supporting enactment of Measure 114 and helped lead the initiative campaign in support of the Measure. Wheatley Decl. ¶¶ 5–10 ("[T]he passage of Measure 114 [w]as [the Alliance's] most significant accomplishment in recent years . . . ."). Given this extensive involvement and investment in Measure 114, the Alliance has a significant interest in defending it. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) ("[T]he cases in which we have allowed public interest groups to intervene generally share a common thread . . . these groups were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose.").

### 3. The lawsuit's outcome may significantly impair the Alliance's interest

By extension, the Alliance's interests may be significantly impaired by the outcome of this matter, in which Plaintiffs seek to invalidate and permanently enjoin Measure 114. Typically, after finding that a proposed intervenor has "a significant protectable interest, [courts] have little

difficulty concluding that the disposition of the case may . . . affect it." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). The Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes," holding that "'[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Bio. Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes). Thus, circuit precedent establishes that "an adverse court decision on . . . a measure may, as a practical matter, impair the interest held by the public interest group" that "supported" it. *Prete*, 438 F.3d at 954 (citing *Sagebrush Rebellion*, 713 F.2d at 528); *see also Jackson v. Abercrombie*, 282 F.R.D. 507, 517 (D. Haw. 2012) (allowing intervention of group that had campaigned to enact statute and constitutional amendment because an "adverse decision would impair [its] interest in preserving" the laws). The Alliance, too, meets the impairment requirement.

### 4. The Alliance's interest may not be fully represented by Defendants

To evaluate the adequacy-of-representation requirement, the Ninth Circuit "examines three factors": (1) "whether the interest of a present party is such that it will *undoubtedly* make all of a proposed intervenor's arguments"; (2) "whether the present party is capable and willing to make such arguments"; and (3) "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (cleaned up and emphasis added).

Traditionally, the Ninth Circuit has applied a "presumption of adequacy of representation" when "an applicant for intervention and an existing party share the same ultimate objective," such as "when the government is acting on behalf of a constituency that it represents." *Id.* (cleaned up). However, the Supreme Court recently indicated that "this presumption applies only when interests

overlap fully." *Berger v. N.C. State Conf. of NAACP*, 142 S. Ct. 2191, 2201 (2022). In contrast, where "the absentee's interest is similar to, but not identical with, that of one of the parties, that normally is not enough to trigger a presumption of adequate representation." *Id.* (cleaned up).

Here, the Alliance's focused interest in promoting—and defending—sensible yet comprehensive firearm regulation diverges with state and local officials' broader duties to promote the public interest more generally. *See Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'") (quoting *WildEarth Guardians v. U.S. Forest Serv.,* 573 F.3d 992, 996 (10th Cir. 2009)); *see also Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003) ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors. . . . A government entity . . . is charged by law with representing the public interest of its citizens. [The intervenor], on the other hand, is seeking to protect a more narrow and 'parochial' . . . interest not shared by [all] citizens . . . .") (cleaned up). Indeed, here the current Defendants—the Governor and Attorney General of Oregon—have institutional interests and longstanding relationships with the local law enforcement agencies in which Measure 114 vests permitting authority. Measure 114 § 3(5) (defining "permit agent" as a "county sheriff or police chief"). Even at this early stage of the case, the "implementation challenges" raised by local law enforcement prompted Defendants to request a temporary stay of one aspect of Measure 114. ECF No. 34 at 1. In contrast to the Oregon Department of Justice—which represents the Oregon State Police and must necessarily maintain close working relationships with their "local law enforcement partners," *id.* at 2—the Alliance does not face such institutional constraints, and its interest lies solely in defending the constitutionality of Measure 114 and in ensuring all its

provisions are fully (and swiftly) implemented. Because the Alliance's interests do not "overlap fully" with the existing Defendants, the presumption of adequate representation does not apply.

Even if the presumption did apply, "[t]he burden of showing inadequacy of representation is *minimal* and satisfied if the applicant can demonstrate that representation of its interests *may* be inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned up and emphases added); *see Berger*, 142 S. Ct. at 2204 (burden is "minimal") (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Here, it is at least possible (if not probable) that the Alliance's interests will not be fully represented by the present Defendants. Although they may make some of the same arguments, that is by no means assured, and they are unlikely to capture the Alliance's unique perspective as a leading gun violence prevention organization in Oregon or articulate its particular positions on the Second Amendment's proper scope.

That is especially true in light of *Bruen*, which significantly altered the framework for adjudicating Second Amendment claims, scrapping the previously well-established two-step test and adopting in its stead a new text- and history-centered approach. 142 S. Ct. at 2126. As constitutional scholars have observed (including those who support *Bruen*'s outcome) as well as courts, how this new standard may apply in practice raises many questions, which will necessarily need to be addressed by future cases. *See, e.g.*, Randy Barnett, *A minor impact on gun laws but a potentially momentous shift in constitutional method*, SCOTUSblog (Jun. 27, 2022), https://www.scotusblog.com/2022/06/a-minor-impact-on-gun-laws-but-a-potentially-momentous-shift-in-constitutional-method/; *see also* Jake Charles, Bruen, Analogies, and the Quest for Goldilocks History, Duke Univ. Ctr. For Firearms Law, June 28, 2022, https://firearmslaw.duke.edu/2022/06/bruen-analogies-and-the-quest-for-goldilocks-history/ ("[A] mountain of scholarship will be devoted to unpacking Bruen's implications"); *see also*

*United States v. Charles*, No. MO:22-CR-00154-DC, 2022 WL 4913900, at *7 (W.D. Tex. Oct. 3, 2022) ("But how strict—or loose—an interpretation *Bruen* requires hasn't been clarified, leaving important questions."); *Brumback*, No. 1:22-cv-03093-MKD, ECF No. 19 at 22 (E.D. Wash. Sept. 27, 2022) ("Although this case does not involve a ballot initiative, it is recent and untested legislation that gives rise to Plaintiffs' claims. Further, this case takes place in the wake of important Supreme Court precedent and may present questions of first impression under the new *Bruen* standard."). The Alliance maintains that Measure 114 is constitutional under *Bruen*—just as it was under the two-step framework. *See Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated in light of Bruen*, 142 S. Ct 2111. At the same time, it is unlikely the present Defendants will interpret and apply the new and untested standard in precisely the same way as the Alliance. Thus, it cannot be said that any "present party . . . will *undoubtedly* make all of [the Alliance]'s arguments." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned up and emphasis added).

In addition, the Alliance has developed significant relevant expertise, particularly with respect to firearms, mass shootings, and gun violence prevention measures, and also has significant experience researching and interpreting firearms regulations. Wheatley Decl. ¶¶ 2–4; *Sagebrush Rebellion*, 713 F.2d at 528; *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV-09-1909-PHX-DGC, 2009 WL 4438933, at *5 (D. Ariz. Nov. 24, 2009) ("Both groups may also provide evidence concerning the impact of the Act that Defendants could not provide."). Under Rule 24(a)'s principles liberally favoring intervention, the Alliance should have an opportunity to have its legal arguments and subject-matter expertise heard in defense of the Measure it was instrumental in enacting.

### C. In the Alternative, the Court Should Grant Permissive Intervention

Permissive intervention also is warranted under Rule 24(b)(1): "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Further, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, permissive intervention is appropriate when (1) the applicant shares a common question of law or fact with the main action, (2) the applicant's motion is timely, and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

When the above threshold criteria are met, a court has broad discretion in granting intervention. *See Dep't of Fair Emp't & Hous. v. Lucent Techs.*, 642 F.3d 728, 741 (9th Cir. 2011). In exercising its discretion, courts in the Ninth Circuit generally examine several additional factors:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] . . . whether the intervenors' interests are adequately represented by other parties, . . . and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). These factors are "nonexclusive," *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998), and "[c]ourts are free to consider other factors in their analysis," *Mineworkers' Pension Scheme v. First Solar Inc.*, 722 F. App'x 644, 646 (9th Cir. 2018) (unpublished). All of these factors are either met or inapplicable.

#### 1. The Alliance's defense shares common questions of law and fact

A would-be permissive intervenor's defense must share a common question of law or fact with the main action. The defense need only "relate to the subject matter of the action . . . before the district court." *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993).

Courts in the Ninth Circuit routinely have held that public interest groups raise common questions of law and fact in lawsuits challenging measures those groups have supported. Indeed, the two federal district courts in Washington unanimously have held that the Alliance's counterpart in Washington raised common questions of law and fact in cases defending the constitutionality of initiatives and laws the counterpart supported. *See, e.g.*, *Sullivan*, 2022 WL 10428165, at *6 (allowing the Washington Alliance to intervene as defendant in lawsuit challenging statute regulating LCMs); *Brumback*, No. 1:22-cv-03093-MKD, ECF No. 19 at 23 (E.D. Wash. Sept. 27, 2022) (same); *Nw. Sch. of Safety v. Ferguson*, No. C14-6026 BHS, 2015 WL 1311522, at *2 (W.D. Wash. Mar. 23, 2015) (holding that the Washington Alliance presented common questions of law and fact in challenge to initiative requiring universal background checks for firearm purchases and transfers); *Mitchell v. State*, No. 3:18-cv-5931, ECF No. 19 (W.D. Wash. Jan. 2, 2019) (permitting the Washington Alliance's political committee to intervene in challenge to initiative requiring, among other things, enhanced background checks for purchases and sales of semiautomatic assault rifles); *Mitchell v. Atkins*, No. 3:19-cv-05106, ECF No. 35 (W.D. Wash. Apr. 2, 2019) (same); *see also Boardman v. Inslee*, No. C17-5255 BHS, 2017 WL 1957131, at *2 (W.D. Wash. May 11, 2017) (allowing intervention for sponsor of challenged initiative; the sponsor's "purpose for intervening [was] to raise a defense that shares common questions of both law and fact with the underlying claims: namely, the constitutionality of [the initiative].").

Several other courts within the Ninth Circuit have likewise permitted intervention for supporters of challenged ballot measures and legislation. *See, e.g.*, *Jackson*, 282 F.R.D. at 511–12 (granting permissive intervention and intervention as of right to group that had campaigned to enact statute and constitutional amendment; "HFF seeks to intervene to defend the constitutionality of Hawaii's marriage laws. Because this is the precise issue raised by Plaintiffs' claims, there are

common questions of law and fact . . . ."); *Doe v. Harris*, No. C12-5713 TEH, 2013 WL 140053, at *1 (N.D. Cal. Jan. 10, 2013) (granting permissive intervention to proponent of challenged ballot measure; "[T]he participation of official proponents in a suit challenging a ballot initiative may help ensure that the interests of the voters who approved the initiative are fully represented and that all viable legal arguments in favor of the initiative's validity are brought to the court's attention.") (cleaned up).

Here, the Alliance is no different: it seeks to defend the Measure, which it worked extensively to pass at the ballot box. The Alliance's proposed defense of Measure 114 addresses the exact issues raised by Plaintiffs' claims—i.e., whether Measure 114 is constitutional—and therefore shares common questions of law and fact with the allegations in this proceeding. The Alliance easily meets the first requirement for permissive intervention

### 2. The remaining requirements are met or inapplicable

The timeliness requirement is met for the same reasons explained above. *See supra* Section III.B.1; *EEOC v. Global Horizons, Inc.*, CV. No. 11-00257 DAE-RLP, 2012 WL 874868, at *3 (D. Haw. Mar. 13, 2012) (applying same timeliness standard in permissive intervention context).

The final requirement of "independent jurisdictional grounds" is inapplicable: it "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new [state-law] claims." *Freedom from Religion Found.*, 644 F.3d at 844. Here, the Alliance does not seek to assert any new state law claims in this federal-question case, and the requirement thus does not apply.

### 3. Additional factors weigh in favor of permissive intervention

In addition, several *Spangler* discretionary factors apply, weighing in favor of permitting intervention. Given the Alliance's involvement and investment in advancing LCM restrictions

generally and Measure 114 specifically, the Alliance has significant interests in defending the Measure. *Sullivan*, 2022 WL 10428165, at *5 ("[The Washington] Alliance has a significant interest in this case given its extensive work to pass the Act and to tackle gun violence."). The Alliance's participation also will significantly contribute to the full development and just and equitable adjudication of the underlying factual and legal issues in the suit. *See, e.g.*, *Nw. Sch. of Safety*, 2015 WL 1311522, at *2; *Doe v. Harris*, No. C12-5713 THE, 2013 WL 140053, at *1 (N.D. Cal. Jan. 10, 2013) ("Proponents seek only to ensure that their perspective on the matters at the heart of this litigation are given due consideration" and their "potential . . . to make such contributions outweighs the as yet abstract danger that delay or prejudice to the original parties could result"); *Sullivan*, 2022 WL 10428165, at *5 ("[The Washington] Alliance's expertise in firearms and Second Amendment litigation is likely to contribute to full development of the underlying factual issues and provide a useful perspective . . . ."). Similarly, here the Alliance's participation will ensure that the interests of Measure 114's supporters are fully represented and all applicable legal defenses are considered.

## IV. CONCLUSION

The Alliance respectfully requests that the Court grant its Motion to Intervene.[2]

///

///

---

[2] Given the expedited timeline of this case to date and this Court's ruling earlier today on the Emergency Motion, the Alliance is filing this Motion to Intervene today and will file a proposed answer to the First Amended Complaint within a week. *See* Fed. R. Civ. P. 24(c); *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009); *Spring Constr. Co., Inc. v. Harris*, 614 F.2d 374, 376–77 (4th Cir. 1980).

DATED this 6th day of December, 2022.

                                            PACIFICA LAW GROUP LLP

                                            *s/Jessica A. Skelton*
                                            Jessica A. Skelton, OSB #102714
                                            Zachary J. Pekelis, *Pro Hac Vice Motion Pending*
                                            Kai A. Smith, *Pro Hac Vice Motion Forthcoming*
                                            W. Scott Ferron, *Pro Hac Vice Motion Forthcoming*

                                            *Attorneys for Proposed Intervenor-Defendant*
                                            *Oregon Alliance for Gun Safety*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

DATED this 6th day of December, 2022.

_____
Erica Knerr