FILED 28 DEC '22 11:12 USDC-ORP

Petitioner:
David Morello
17 N Maple ST. # 14
Northampton, MA, 01062
(413)-303-9047
Interested private party

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

KATERINA B. EYRE, TIM FREEMAN,
MAZAMA SPORTING GOODS, NATIONAL
SHOOTING SPORTS FOUNDATION, and
OREGON STATE SHOOTING
ASSOCIATION,

                          Plaintiffs,

                  v.

ELLEN F. ROSENBLUM, Attorney General
of Oregon, and TERRI DAVIE, Superintendent
of the Oregon State Police,

                  Defendants.

Case No. 3:22-cv-1862


CURED MOTION TO APPEAR AS
AMICUS CURIAE AND TO FILE
MEMORANDUM IN OPPOSITION
TO MEASURE 114

**PAGE 1- TITLE PAGE-AMENDED MOTION TO APPEAR AS AMICUS CURIAE
AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

TABLE OF CONTENTS

Title Page..................................................................................................pg. 1
Table of Contents....................................................................................pg. 2
Motion for Amicus Curiae.......................................................................pg. 3
Memorandum...........................................................................................pg. 3
    Syllabus..........................................................................................pg. 3-5
    Authorities (Amendeed)................................................................pg. 5-6
    Facts...........................................................................,.................pg. 6-8
    Points of Issue...............................................................................pg. 8
        Ex-Post Facto.....................................................................pg. 8
        Fee Charged to Exercise Right...........................................pg. 8
        What is Due Process...........................................................pg. 9
        Criminalizing a Right.........................................................pg. 10
        Forced to Surrender Rights.................................................pg. 10-11
        Private Information Released..............................................pg. 11
        Prior Restraint …...............................................................pg. 12-13
        Beyond Infringement.........................................................pg. 13
        History and Text................................................................pg. 14
        Restricting Ability to Act, Incurred Liability....................pg. 15-17
        Rights vs Privileges (Amended).........................................pg. 17
        "In Common Use"..............................................................pg. 18-19
        Dangerous Precedent.........................................................pg. 19-20
        Subject to Abuse................................................................pg. 20-21
        Militias..............................................................................pg. 21-23
        "To Bear Arms" Defined....................................................pg. 23-24
        Redundancy (Amended)......................................................pg. 24-25
        Cites without Controversy (Amended)...............................pg. 25-26
        Subject to Infamous Punishment (Amended).....................pg. 26
        Consent is Constitutional (Amended)).................................pg. 26
    Closing Argument ...........................................................................pg. 26-29
    Appendix (Amended)......................................................................pg. 30-34

**PAGE 2 - TABLE OF CONTENTS - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM OPPOSING MEASURE 114**

## I. Motion

Petitioner respectfully prays for an order permitting the pro-se filing of the memorandum below in support of the constitutional challenge raised by plaintiffs in this case. Petitioner has a strong private interest in the outcome of this controversy. Petitioner is currently subject to an almost exactly similar firearms licensing and records keeping scheme, and seeks, with standing, leave to file the amicus memorandum below.

Petitioner has prepared a challenge against this existing licensing scheme over a long period of time, focusing on arguments yet to be heard in Second Amendment cases. Petitioner relies on facts set out in the original complaint filed by plaintiffs, and also opinions and cites not yet before the court in this case. Arguments presented that perfectly fit the controversy and are presented in final form after long preparation, are in this case a demonstrable material benefit to the court, and a necessary component of due process, wherein all valid arguments are heard before a decision is rendered.

## II. Memorandum

### Syllabus:

Petitioner is currently suffering under an almost exactly similar licensing and records keeping scheme as Oregon is attempting to implement. In petitioners state, one must have a firearms permit in order to purchase, transport, sell, carry, or possess any modern firearm and/or ammunition outside of the home. Firearms are subject to records keeping

**PAGE 3 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

and  sales must be reported. Backround checks and fingerprinting are required.

Petitioner shall raise and examine the following issues created by the passage of

Measure 114, any one of which is a constitutional violation and overreach by the state:

Ex-post facto statutes, prior restraint of First and Second Amendments, forced waivers of

multiple rights in order to exercise a right, the removal of a right without due process,

charged a fee to exercise a federally guaranteed right, criminalizing the simple

exercise of a right with threatened punishment extant, gross infringement of plaintiffs

Second amendment, restrictions not supported by history and text, statutory redundancy,

subject to infamous/violent punishment without conviction for infamous/violent crime.

 Also examined is Driving vs Bearing Arms, and  how the upholding of drivers license

and vehicle registration provides no avenue as a precedent to restrict the Second

Amendment.

 The implications of DeShaney relative to restriction of the Second Amendment will be

examined. One of the questions answered in the case was: "When is the government

liable for the well being of an individual?" The answer to that question as given by

SCOTUS is directly related to Second Amendment restrictions and will be examined.

 Petitioner believes that the "in common use" doctrine is flawed, and unconstitutionally

limits firearms types. Due to the dearth of firearms litigation, some questions remain

unsolved, as there are discrepancies between cites. One of these inconsistencies will be

examined, in challenge to the common use argument.


**PAGE 4 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

We will examine the different classes of militias, the disposition of the founders towards organized militias, and identify the parties named in the second amendment. Understanding the relationships and attitudes between the parties is an important component of the true meaning of the amendment.

The definition of "bearing arms" is important, and SCOTUS found in Heller that Justice Ginsberg accurately defined the term. The meaning of the term"to bear" has great significance on all aspects of firearms restrictions.

History and text will be revisited. Founding era constitutions will be cited to clarify the meaning of the right to bear arms, and the underlying rationales that the constitutional authors used to fashion the Constitution.

### Authorities:

The First, Second, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution

Article I Section 10 Clause I of the U.S. Constitution (Appendix pg. 34: 12.1)

Article 1 Sections 9 & 27 of the Oregon Constitution (Appendix pg. 30)

Massachusetts  Constitution Article XVII (Founding Era Text, Appendix pg. 30)

Heller vs District of Columbia, 554 U.S. 1, 2, 8, 10, 19, 25, 26, 36, 63 (2008)

Bruen vs New York, 597 U.S. 5, 6, 44, 45, 50, 51, 52 (2022)

Murdock v. Pennsylvania, 319 U.S. 105,  (1943)

Miller, Appellant, v. United States, 230 F.2d 486 (5th Cir. 1956)

**PAGE 5 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

Simmons vs United States, 390  U.S. 377,  394 (1968)

DeShaney v. Winnebago, 489 U.S. 189 (1989)

McDonald v. City of Chicago, 561 U.S., 780 (2010)

New York Times Co. v. United States, 403 U.S. 713 (1971)

Marbury v. United States, 5 U.S. (1 Cranch) 137 (1803)

Heller II, 1:08-cv-01289 No. 14-7071

10 USC § 246, The Militia

## Facts:

1. The second amendment belongs to The People. (U.S. Constitution).

2. The People are diverse from THE UNITED STATES MILITIA (10 USC § 246).

3. The constitutional meaning of "The People" means people in their individual capacity.

   554 U.S. 1 (2008)

4. The Oregon Constitution states that the right to bear arms is in defense of

   "themselves."  (Article 1, Section 27, Clause 1)

5. "A" well-regulated militia is diverse from "THE" MILITIA" and its

   components (10 USC § 246).

6. "Regulated" is synonymous with "organized." (websters, etc).

7. The founders were distrustful of government and especially of organized  militias

   (civics class).

8. Government always seeks ever greater power and requires frequent checks on

**PAGE 6 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

its avarice for control. (civics class).

9. The judiciary is not affiliated with the executive or legislative branch (civics class).

10. A prime function of the judiciary is to act as a check against executive, legislative, and democratic overreach (civics class).

11. The open carry of firearms is a also a first amendment issue, as many open carry as a form of protest or communication of pro-second amendment ideology.

12. The People have an individual right to bear arms not solely related to The Militia. 554 U.S. 1 (2008), 10 USC § 246, US Constitution.

13. Military *and* civilian weapons are protected by the Second Amendment. 554 U.S. 8 (2008)

14. The People have an individual right to carry concealed or openly. 554 U.S. 10 (2008), 597 U.S. 50, 51 (2022).

15. Requiring a permit means the permitted activity is illegal, requiring an exemption to conduct.

16. By signing and submitting a permit application, the applicant waives, *at minimum*, his or her first, second, fourth, fifth, and Fourteenth Amendment rights.

17. No permit is constitutional for the simple individual exercise of any other right.

18. An activity that requires a permit is a privilege, not a right.

19. No interest balancing rationale is relevant to the exercise of a right. 554 U.S. 63 (2008)

**PAGE 7 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

20. A right may only be removed by constitutional due process. Second Amendment

    constitutional and statutory due process for removal equals conviction for infamous

    or violent crime, court adjudicated finding of mental incompetence, or subject to an

    active protective order.

21. The state may not force or coerce surrenders of rights.

22. There were no firearms permits in Oregon until 1989. (HB 3470).

23. Civil cases only require a preponderance of evidence to prevail.

## Ex-Post Facto Statutes

 As to the plaintiffs arguments, Petitioner adds that criminalizing the possession of items

that were purchased while still legal, violates the Federal Constitution in that no state

shall pass any ex post-facto law. US Constitution, Article 1, Section 10, Clause 1. Any

ex-post facto law violates the Federal Constitution. A law forcing businesses to dispose

of their inventory when that inventory was legal when purchased, and making it illegal to

sell inventory that was legal to sell when purchased, are ex post facto statutes and violate

the constitutional rights of private parties and gun store owners.

### Charged a Fee to Exercise a Right

 *"A State may not impose a charge for the enjoyment of a right granted by the Federal*

*Constitution."* Murdoc Vs Pennsylvania 319 U.S. 105 (1943). The Second Amendment is

guaranteed by the Federal Constitution. Therefore imposing a charge to exercise it

**PAGE 8 – AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

violates the constitution. Measure 114 imposes fees payable not only to the state, but also to private contractors acting as licensed agents of the state, who conduct the required firearms classes required by Measure 114. Both examples are cumulative violations of rights by agents of the state. These fees would be exorbitant to those on fixed incomes and would act as a restraint on large segment of society, creating an armed class of people, and an unarmed class of people. Petitioner is on a fixed income, and the fees presented sound outrageous. The passage of Measure 114 would create just the sort of select militia warned of in Heller. An armed class and a disarmed class who cannot afford to purchase their right from the state (appendix 7.2 through 7.6).

## What is Due Process

By making the possession, transport, carrying, and purchasing of firearms and ammunition illegal, barring an exemption,  the state is attempting to remove the right to keep and bear arms.

 We have already defined due process for the removal of the second amendment right: "Second Amendment constitutional and statutory due process for removal equals conviction for infamous or violent crime punishable by more than x years, court adjudicated finding of mental incompetence, or subject to an active protective order" Without evidence that any of the aforementioned conditions apply to the plaintiffs, Measure 114 grossly violates plaintiffs second amendment right by removing the ability of plaintiffs to exercise the right as they would exercise any other individual right.

**PAGE 9 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

## Criminalizing a Right

Requiring permits to purchase, possess, carry or transport firearms, ammunition, and accessories criminalizes the exercise of a constitutional right. 114 would ban firearms completely, lest one consents to applying for a permit and/or registration. To be clear, Measure 114 makes the exercise of a right a crime. A permit/license is an exemption to commit an act that is illegal. However, *"The claim and exercise of a constitutional right cannot thus be converted into a crime."* Evelyn Miller, Appellant, v. United States of America, Appellee, 230 F.2d 486 (5th Cir. 1956).

Oregon 114 violates rights by criminalizing the carrying, possession, purchase, sale, and transport of arms, ammunition, and accessories; activities protected under the Second Amendment.

## Forced Surrender of Rights

Under 114, the state would force the surrender of multiple rights in order to exercise another right Applicants that submit a completed firearms permit surrender their first amendment right which includes the right to not speak in print, and surely silence can be a form of protest, rendering the submission of personal information about oneself a voluntary surrender of their first amendment. Applicants surrender their second amendment right by assigning the government as its custodian to dispense. They surrender their fourth amendment right by giving up personal information voluntarily,

**PAGE 10 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

their Fifth Amendment right by supplying evidence against themselves, and the Fourteenth amendment right by waiver of each of the above rights. One who does not waive these rights by completely filling out and signing a firearms permit application and serving it to a state agent is prohibited from exercising their second amendment right by the banning of buying, possessing, transporting, and carrying of modern firearms without a state issued permit. One may not be forced to waive one right in order to exercise another. *"Nearly fifty years ago, this Court found it 'intolerable that one constitutional right should have to be surrendered in order to assert another."* Simmons v. United States, 390 U.S. 377, 394 (1968)." So we see that permitting, records keeping and backround checks not only infringe upon the Second Amendment, but also undermine the First, Fourth, Fifth, and Fourteenth Amendments. This cite is five times applicable, and Second Amendment permitting, backround checks and records keeping schemes more intolerable by a similar degree of magnitude (Appendix pg. 30: 2.1).

## Private Information Leaked

New York and more recently, California gun owners personal information was released to the public. It was all over the news. This is due to the breaching of the Fourth Amendment by requiring the waiver of one right, the fourth amendment, in order to exercise another, the second amendment. In this case the government failed to protect information in their custody, which the government does have an obligation to protect, proving that the government, for all its power, is incapable of protecting anything, even

**PAGE 11 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

when the obligation to protect exists. This disclosure of gun owners private information

displays perfectly the wisdom of refusing to waive any right, especially ones fourth

amendment right to privacy.

### Prior Restraint

Requiring permits to exercise ones second amendment places a prior restraint on the

exercise of the right. Petitioner's Hobsons Choice dilemma is un-refutable evidence of

the extant restraint. Petitioner is unable to exercise his second amendment right due to his

belief that permits are unconstitutional, and his unwillingness to waive multiple rights by

submitting an application. Prior restraint of the exercise of a right violates the

constitution. In *New York Times v. U.S.*, 403 U.S. 713 (1971), the United States

government tried to stop the New York Times and the Washington Post from publishing

classified government documents. The Supreme Court held that the government's urging

of "security" did not trump the newspapers' freedom of press as guaranteed by the First

Amendment. The relevance of this case is that the *denial of prior restraint based on*

*security (or public safety)* by the court used the term *"infringed"* (appendix pg. 31: 3.4),

making the case directly applicable to the Second Amendment, and supporting the

argument against infringement. This is also upheld by McDonald: *"The constitutional*

*right to bear arms in public for self-defense is not "a second-class right, subject to an*

*entirely different body of rules than the other Bill of Rights guarantees" McDonald, 561*

*U. S., at 780."* Permitting schemes also place a prior restraint on ones first amendment

**PAGE 12 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

directly, for fear of revocation for the wrong speech, ideology, etc. Petitioner admits to

being a sarcastic troll  in online comments. Due to sarcastic online trolling petitioner is

in fear that if he were to apply for a permit, it would be denied for sarcastic, morbid

humor expressed online or elsewhere. Petitioner has already self censored numerous

times in relation to this fear. Petitioner's Online trolling is restrained by the existence of a

permitting scheme, and petitioner wishes to fully exercise his First Amendment without

fear of retaliation against his Second, which cannot be done where a permitting scheme

exists, due to self censorship of sarcastic expression for fear of sarcasm being taken

literally and out of context to portray the authors as "dangerous." Under a permit scheme,

sarcastic expression could be used by the state to revoke permits and seize firearms,

forcing the permit holder to appeal to reinstate, adding expense, effort, and time fighting

frivolous revocations, to the already unconstitutional permitting scheme. The bearing of

arms by the people increases the security of the free state, and does not present

inevitable, direct, and immediate danger to the United States.  As the exercise of the

Second Amendment does not meet the criteria set forth by the courts as justification,

bearing arms may not be restricted by prior restraint. And due to the prior restraint

firearms permitting schemes inevitably place on free expression via self censorship for

fear of revocation or denial,  firearms permitting schemes also operate as a prior restraint

of the First Amendment.

**PAGE 13 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

## Beyond Infringement

Criminalizing firearms by requiring permits is far beyond "infringement," under the
common understanding of the word as a "minimal intrusion" of a right. Therefore it
could be argued to be technically constitutional because banning isn't just an
infringement, it goes far beyond the definition of infringement, and therefore isn't an
infringement. Although it sounds like nonsense, it is a technically valid argument, as a
firearms ban sans permits and records keeping *is* far beyond the definition of
infringement. However, being as that the subject of the ban is an enumerated right, this
argument has no merit, and Amicus applicant prays the court will recognize even the
most draconian of firearms regulation to be included, along with actual minor
"infringements" in the constitutional definition of the word "infringement." And if the
Second Amendment right is not to be infringed, why are the courts not enforcing the right
by declaring arms regulation, any kind of which is an infringement, unconstitutional?
Petitioner prays the court defines "infringement" in the context of the Second
Amendment, and to declare statutes that are beyond infringement unconstitutional. At
some point, even the most restrictive  statute crossed the line called "Infringement," and
even if only for an instant, the right is infringed at the crossing, leaving all restrictions
that are beyond the infringement poisonous fruit, and therefore unconstitutional. Any
restriction undermines the right.

### History and text

History and text in the State regarding firearms permits is that no permit is or was required to buy, carry, possess, transport, or transfer firearms and ammunition, nor records kept by agents of the state of firearms ownership, until 1989. There were no Permitting/Records Keeping schemes prior to the passage of HB 3470. Oregon history supports the argument that firearms permits are unconstitutional as there were no firearms permits in the state throughout the period delineated in Heller vs DC, and ratified in Bruen, wherein the court also found that the history and text does not support permits: "The surety statutes *presumed that individuals had a right to public carry* (emphasis added) that could be burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.'" 597 U.S. 50-51 (2022).

 So, as we can see, there is no relevant history or text supporting the requirement for permits or records keeping by the government in order to exercise the second amendment right, nor does history and text support banning the exercise of the second amendment (which will soon be illegal in Oregon without an exemption permit) as it was "*presumed that individuals had a right to public carry*," rendering the permit and records keeping scheme in conflict with the history and text of the Second Amendment.

### Restricting Ability to Act, Liability Incurred

Any terminology used to rationalize second amendment restrictions, regardless of the

**PAGE 15 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

actual terminology used, is by nature to "protect against gun violence." Petitioner

believes that no reasonable person would believe otherwise. However, the government is

not compelled to protect and therefore has no compelling government interest in

protection. Unless it restricts the ability to act in ones own defense, in which case the

government must accept liability for any injuries and damages resulting from the

aforementioned restriction. In DeShaney we find: *"The affirmative duty to protect arises*

*not from the State's knowledge of the individual's predicament or from its expressions of*

*intent to help him, but from the limitation which it has imposed on his freedom to act on*

*his own behalf. See Estelle v. Gamble, supra, at 429 U.S. 103 (1989)"* 489 U.S. 189

(1989) The court found that the state was liable for the general well being of inmates. Not

because they were in custody, but due to the fact that their "ability to act in their own

behalf" was restricted.  Similarly, the state, by restricting ones ability to act in self

defense, incurs the liability for an individuals protection specifically corresponding to the

restricted ability to act in their own self defense.  The government may not restrict

plaintiffs ability to act in a way that leaves her unable to defend herself, without

rendering itself liable for the protection of the involuntarily disarmed Plaintiff. If the

court finds this argument invalid, then the court must address the fact that the state is

using the rationale of protection to seize the right of the people to defend themselves,

while simultaneously claiming that the state has no duty to protect the disarmed

individuals. The just solution is to remove the government from the protection "business"

**PAGE 16 – AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

by declaring firearms permits, record keeping, backround checks, ban of firearm types, accessories, purchases, possession, transport, and carrying unconstitutional.

## Rights vs Privileges

In Heller II, (2015) The DC Appellate court compared a right to a privilege to justify firearms registration by comparing the registration of automobiles to the registration of firearms (1:08-cv-01289, No. 14-7071 pg. 14). However, this is not a valid comparison. The right to travel is by common carrier. Driving a motor vehicle is a privilege. By comparing a privilege to a constitutionally enumerated right, in order to justify the registration of firearms, the court committed a reversible error. It may be argued that traveling is a right and traveling in a motor vehicle is restricted for the public good, setting precedent for permits. However, the *only* way this restriction of travel is rationalized is that the courts have ruled that the right to travel applies to common carriers. There is an alternative to driving that is available as a narrow avenue to restrict the right to travel. There is no alternative to bearing arms, as the courts have settled the definition of arms: "*...the Second amendment extends, prima facie, to all instruments that constitute bearable arms...*" (554 U.S. 8 2008). Petitioner notes that the use of the word "all" to describe "arms" settles any dispute over weapon types, such as pistols vs long guns, etc, and leaves open no other alternative route to exercise the right. Without any alternative to exercise the right, there is no window for the courts to justify permits, registration, record keeping etc, without violating the ability to exercise the amendment.

**PAGE 17 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

## "In Common Use"

The "in common use" terminology used by the courts to limit firearms types negates new technologies. Semi-automatic weapons were at one time not in common use. If the "common use" limitation were valid, The People would still be limited to muskets. The courts would never limit the first amendment only to be applicable to subjects commonly discussed, would they? No, they would not. Likewise, the "in common use" terminology limits the second amendment in an exactly similar unconstitutional fashion. Claiming that the second amendment is only applicable to weapons "in common use" conflicts with the ruling that the second amendment advances along with arms technologies; *"the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." (554 U.S. pg.8 2008).* Since precedent supports that technological advances are covered by the second amendment, the "in common use" requirement must be struck. The "in common use" idea is also based on the faulty concept that the right to bear arms is solely related to military service. The right to bear arms is not related to military service, as it is the right of the people in their individual capacity, whether qualified for the militia or not as held in Heller vs DC: *"Held: 1. The Second Amendment protects an individual right to possess a firearm unconnected with service in a militia..." (554 U.S. pg.1 2008).* To cement this prayer, we can ask the question: Would we ban a certain book, or ideology, because it wasn't popular? Of course, the answer is no. So then we must examine the

**PAGE 18 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

banning of any class of firearms, because it is not in common use, as exactly the same

scenario, leaving us with no choice but to find that banning firearms classes or types for

lack of common use is unconstitutional. The final argument sealing the issue is that

SCOTUS found that the second amendment applies to "all instruments that constitute

bearable arms " (554 U.S. pg.8 2008), eliminating the "in common use only" rationale.

### Dangerous Precedent

Requiring permits to exercise a right is a dangerous precedent; opening the door for

permits to exercise any and all other rights. *"The constitutional right to bear arms in*

*public for self-defense is not "a second-class right, subject to an entirely different body*

*of rules than the other Bill of Rights guarantees" McDonald, 561 U. S., at 780."* If the

second amendment is not subject to a different set of rules, and the court upholds permits

for exercising the second amendment, then the court must explain why permits are not

constitutional for the simple exercise of any and *all* other rights, and do so without an

interest balancing argument (554 U.S. 63, 2008), as the rules are the same for *all*

amendments. Would the courts uphold charging a fee and issuing a license for the simple

exercise of ones first, fourth, fifth, fourteenth, or any other right? Would the courts

require a special permit to buy a megaphone and batteries to enhance their first

amendment expression, or locks for a home to protect the owners privacy, etc.? If not,

then the courts must find in similar fashion regarding right to bear arms and firearms

licensing and records keeping schemes, including ammunition, accessories, magazines,

**PAGE 19 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

transport, transfer, possession, carrying, and, as cited, concealed carry, else

the court opens the door for complete removal of rights by requiring permits to exercise

any constitutional right, immunity, or liberty. Either the Second Amendment is a right or

it isn't. The court must decide. The court must apply all restrictions against government

overreach that apply to any other individual exercise of a right to the second amendment

right to bear arms. Otherwise, the court would be claiming that rights are just privileges

to be dispensed with at the pleasure and whim of the government, or even the court. This

courts second amendment ruling may be cited in other amendment cases. Petitioner

prays the court will rule in such a fashion so as not to put *all* of our freedoms at risk.

Would the court uphold the following statute: "No person shall vote without a state

issued permit costing $175.00 and a civics course costing $150.00, and doing so will

result in in a felony charge.?" If permits and registration are upheld, the state could argue

"But we issue permits for firearms, which are a right to possess, so we can restrict voting

too." Petitioner frowns in exasperation at how the second amendment, which is uniquely

"not to be infringed," is chronically and continuously subject to infringements that would

never be accepted by the court if applied to other rights.

## Subject to Abuse

Not only are permitting schemes a dangerous precedent, they are subject to easy abuse.

Petitioner relies on Heller for this claim. The court spoke in depth of the dangers of

"select" militias, and rule by standing armies (Organized, well regulated Militias). We

**PAGE 20 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

will present a few of these cites in the following section defining the various militia

forms. Such schemes have historically been used for racial, religious, ideological, and

otherwise tyrannical exclusion from the exercise of a right, in order to oppress the rights

of segments of society. Furthermore, it allows the government to pierce the fourth

amendment, creating lists of probable gun owners. Add records keeping of firearms and

the government has a list of guns owned and who owns them, ripe for executive seizure

at any time.

## Militias

"A militia," as described in the constitution is not "The Militia," which is defined and

singular. The second amendment describes "a militia," which is one of a plurality, and as

yet not properly defined. It is described as "well regulated" but there is controversy as to

just what that means. A study of the definition of "well regulated" shows it is

synonymous with "organized." By synonymous definition, the "well regulated militia" is

an "organized militia." So we could posit the first words of the second amendment to

read as "An organized militia." This helps identify the parties described in the second

amendment. A reading of 10 USC 246 defines the "organized militia" as those men

currently serving in the navy, and national guard, and women already serving in the

national guard. That leaves the U.S. Army and police forces, that are well regulated,

organized militias, separate from the constitutional organized militia and the unorganized

militia. They are a standing army. Looking at Massachusetts article XVII, we are

**PAGE 21 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

informed that "in time of peace, armies are dangerous to liberty." This helps us

understand the founders disposition towards well regulated militias. And why The People

in their individual capacity are guaranteed the right to bear arms. It is as much a right to

be an individual deterrent to the potential forced unconstitutional rule of organized, well

regulated militias, as it is a right to individual self defense and hunting for sustenance.

Identifying the parties and their relationship shows that the founders would never have

allowed an organized militia to regulate the peoples second amendment. That is why, out

of all of the constitutional rights, the second amendment right is the only one specifically

to not be infringed, because the infringement would emanate from a well regulated

militia; the very threat the founders were primarily concerned with as a danger to

freedom (MA article XVII "armies are dangerous to liberty"). Petitioner relies on Heller I

to support this claim (appendix 7.1-7.6): *"The Antifederalists feared that the Federal*

*Government would disarm the people in order to disable this citizens' militia, enabling a*

*politicized standing army or a select militia to rule."* 554 U.S 2 (2008) Petitioner notes

that this sentence displays the divergence between the militia and the people, and that

disarming the people would also disarm the disorganized militia (10 USC 246). "*Stuart*

*Kings Charles II and James II succeeded in using select militias loyal to them to*

*suppress political dissidents, in part by disarming their opponents*" 554 U.S 19 (2008),

and "*history showed that the way tyrants had eliminated a militia consisting of all the*

*able-bodied men was not by banning the militia but simply by taking away the people's*

**PAGE 22 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

*arms, enabling a select militia or standing army to suppress political opponents"* 554 U.S 25 (2008), and *"During the 1788 ratification debates, the fear that the federal government would disarm the people in order to impose rule through a standing army or select militia was pervasive"* 554 U.S 25 (2008), and *"...the right helped to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke down"* 554 U.S 26 (2008), and *"the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that right—unlike some other English rights—was codified in a written Constitution."* 554 U.S 36 (2008), With these cites, we can see that congress was equally concerned with securing the free state, and the dangers posed by the organized militia required to secure it. Thus we have the peoples right to bear arms in their individual capacity, un-infringed by the government, in order to deter, among other things, that very same government from disarming the people, which is the exact issue at hand for adjudication.

## "To Bear Arms" Defined

Justice Ginsberg argued that *"[s]urely a most familiar meaning is, as the Constitution's Second Amendment indicate[s]: 'wear, bear, or carry  upon the person or in the clothing or in a pocket.'"* This definition was affirmatively accepted in the prevailing opinion in Heller. (554 U.S. 10 2008). To prohibit or require permits for the carrying of concealed weapons violates the second amendment right to bear arms, as the term "bear arms"

**PAGE 23 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

includes concealed carry of firearms and ammunition (554 U.S. 10 2008). In bruen 597

U.S. (2022), the court found on pp 51-52 that a state could prohibit concealed carry only

if citizens retained their ability to carry openly. *"In fact, however, the history reveals a*

*Consensus that States could not ban public carry altogether. Respondents' cited opinions*

*agreed that concealed-carry prohibitions were constitutional only if they did not*

*similarly prohibit open carry."* However this cite violates the upholding of justice

Ginsbergs definition of "bear arms" as *"on ones person or in ones clothes or pocket"* by

the court in Heller vs DC. Therefore a controversy exists that upsets the precedent of this

ruling, as in Bruen, no controversy existed regarding open/concealed carry and whether

the one could cancel the other.  This cite also creates a conflict between the courts

rulings. In Heller, the court found that "in ones pocket" was included in the definition of

"bear arms," yet the court also found in Bruen that concealed carry could be banned as

long as open carry was not prohibited, even though carrying concealed was adjudicated

above to be covered by the second amendment. The court must clarify this conflict in

light of the upheld definition cited above from Heller.

## Redundancy

In Heller II (2015), the US District of DC Appeals Court opinion found that the periodic

re-registration of firearms was unconstitutional due to "redundancy." Because there were

already statutes regulating the recording of transfers of firearms, firearms re-registration

is redundant. There are already severe penalties for the possession, transport, carrying,

**PAGE 24 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

transfer, and transport of firearms and ammunition by prohibited persons sans firearms permits. The state also has at its disposal methods of flagging prohibited persons via the standard state issued drivers licenses and identification cards, again leaving permits redundant, especially when a method exists that doesn't prohibit the rights of the entire people in such a gross fashion as firearms permits and state records of firearms owners. Redundancy is sufficient to render a statute unconstitutional (1:08-cv-01289, DC Appeal No. 14-7071).

### Cites Based on "Silent Records"

However, the Appellate Court committed an error by claiming that initial registration of firearms was "consistent" with Heller I: "R*equiring the registration of all firearms is consistent with the Supreme Court's ruling in Heller I"* (Appendix pg 33: 9.1). However SCOTUS made no ruling regarding initial firearms registration or the initial issuance of firearms permits in the Heller case. Specifically citing lack of controversy, as litigant Heller didn't challenge permits, or initial registration, just the denial of a permit in Heller I (Appendix pg 32: 7.0), and in Heller II, only the periodic *re-registration* of arms was challenged (Appendix pg. 33: 9.3, pg. 34: 13.1)

The DC Appellate court also upheld initial registration of firearms in Heller II when there was no controversy over initial registration in the case (Appendix pg 33: 9.3). These rulings are invalidated prima facie by challenge, as there was no debate over the issues in either instance. No arguments for or against were heard, leaving in place a cite

**PAGE 25 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

generated without controversy from a silent record (in the literal sense) with no proper

due process. Also, the Appellate court used intermediate scrutiny, which petitioner

believes nullifies the entire opinion. (Appendix pg 31: 4.5, pg 33: 9.2).

### Subject to Infamous Punishment

Measure 114 subjects the people in general to a punishment reserved for infamous crimes

by way of removal of a right, which is a punishment reserved for infamous or violent

felons. In actuality, the measure could only be argued to be applicable to such people as

have been convicted of such offenses. Measure 114 instead imposes such punishment

upon the entire state population. This violates Fifth Amendment (Appendix pg. 34, 12.2)

### Consent is Constitutional

In Bruen, the parties all agreed that concealed-carry permits were

constitutional 597 U.S. 44-45 (2022). Therefore the cite "concealed carry

permits are constitutional" is without controversy, with no arguments heard.

It is nullified prima facie by challenge and it's own "silent record". Plaintiffs

and Petitioner do not consent, nor agree, that firearms permits and/or records

keeping schemes are constitutional, and introduce the previously lacking

controversy. Petitioner demonsrated the same consent in Heller and Heller II.

**PAGE 26 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

## Closing Argument

The parties in Bruen all agreed that the Second Amendment was not to be infringed.

Then they proceeded to argue on and on about whether or not to infringe upon the right.

The matter was settled. The parties agreed that the right to bear arms was not to be

infringed. Why the court did not immediately rule that any infringement was

unconstitutional, since both parties agreed that it was not to be infringed, demands

explanation. In this brief, petitioner has demanded that the court define "infringement"

precisely, so that we can all stop arguing about it (or actually get started on the process) .

Petitioner prays the court will rectify the situation, and, define "infringement" in a way

that allows plaintiffs to exercise their Second Amendment while simultaneously

exercising and reserving all of their other constitutional rights, which cannot be done

within a permitting and records keeping scheme. Petitioner prays the court will be open

to viewing the government with suspicion, as governments always seek ever more and

greater power, and always at the expense of the people's freedom. Permits and records

keeping schemes are obviously unconstitutional prima facie. They infringe on the right to

bear arms. Magazine restrictions infringe on the right to bear arms. Concealed carry

permits infringe on the right to bear arms. Restricting the transport, sale,  purchase and

possession of firearms undermines the right to bear arms. Yet here we are, arguing about

infringements.  Petitioner presents this brief as the effect of a permitting scheme.

Petitioner's rights are so violated that he has been motivated to prepare this document. As

**PAGE 27 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

judges and attorneys, I believe the court and its agents will acknowledge that preparing this document pro-se, with no formal legal training, has been a time consuming task. However, due to delays in booking classes, and the delays in processing permits in petitioners state, this brief has been completed in a fraction of the nine to twelve months it would have taken to plod through the application process for a firearms permit. And that is for a state with established procedures, etc.

I pray the court will perceive the danger to freedom of infringing against the Second Amendment, and order the cessation of, and declare the unconstitutionality of any and all infringements against the right. Any infringement is unconstitutional. It says so in plain, clear language in the U.S. Constitution: "...the right of the people to keep and bear Arms, *shall not be infringed*." The government has no jurisdiction in the matter. It may not take any action that would undermine the right of the people to possess, carry, transport, purchase, and sell firearms, ammunition, and accessories, without government interference.

Historical regulations cited by the state are invariably criminal acts such as threatening, frivolous discharges, statutory brandishing, intoxication, etc. Things that are already crimes with or without a firearm. The idea that the purchase, sale, transport, possession and carrying of firearms would be regulated by requiring permits and record keeping is completely foreign to the history and tradition of the United States. U.S. citizens were always intended to be armed, and dangerous if need be. It is the price of freedom and no

**PAGE 28 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

argument can prevail against the costs of freedom. Especially when those arguments

emanate from elements of a government attempting to disarm the people in violation of a

clearly worded constitutional right that reads "shall not be infringed."

 Petitioner has presented a multitude of constitutional violations brought about by

permitting/records-keeping schemes, any one of which, if given merit, renders such

schemes grotesquely repugnant to the Constitution of the United States. Any statute

repugnant to the Constitution is null and void ab-initio (Marbury vs Madison, Appendix

pg 34: 11.1).

In conclusion, there are only two relevant questions. "Is the second amendment an

individual right?" and "Who does it apply to?" The term "militia" announces a twofold

purpose for the codification of the amendment, but it really doesn't matter why the people

have the right to bear arms. It is the right of the people. That is purpose enough of its

own.

Respectfully,
David Morello
Amicus Curiae Petitioner
Signed _____ Date 12/24/2022

**PAGE 29 - AMENDED MOTION TO APPEAR AS AMICUS CURIAE AND TO
FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

## Appendix

1.1: Second Amendment of the U.S. Constitution: "A well regulated militia being necessary for the security of a free state, the right of the people to keep and bear arms shall not be infringed."

1.2: Fourteenth Amendment of the U.S. Constitution: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law."

1.3: Article 1 Section 27 of the Oregon Constitution: "The people shall have the right to bear arms for the defence of themselves, and the State, but the Military shall be kept in strict subordination to the civil power."

1.4: Article 1 Section 9 of the Oregon Constitution Unreasonable searches or seizures: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

1.5: Massachusetts Constitution Article Article XVII (founding era text): "The people have a right to keep and to bear arms for the common defense. And as, in time of peace, armies are dangerous to liberty, they ought not to be maintained without the consent of the legislature; and the military power shall always be held in an exact subordination to the civil authority, and be governed by it."

2.1: "it is intolerable that one constitutional right should have to be surrendered in order to assert another." Simmons v. United States, 390 U.S. 377, 394 (1968), Syllabus.

2.2: "JUSTICE GINSBURG wrote that "[s]urely a most familiar meaning is, as the Constitution's Second Amendment indicate[s]: 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person.' " We think that JUSTICE GINSBURG accurately captured the natural meaning of "bear arms."" 554 U.S. 10 (2008)"

3.1: "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." 554 U.S. 8 (2008)

**PAGE 30 - APPENDIX; MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

3.2: "The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees. McDonald, 561 U. S., at 780." 597 U.S. 6 (2022).

3.4: "27 'Nothing in this Act shall be construed to authorize, require, or establish military or civilian censorship or in any way to limit or *infringe* (emphasis added) upon freedom of the press or of speech as guaranteed by the Constitution of the United States and no regulation shall be promulgated hereunder having that effect.' 64 Stat. 987." 403 U.S. 713 part 27 (1971)

4.0: "Respondents' cited opinions agreed that concealed-carry prohibitions were constitutional" 597 U.S. 44-45 (2022)

4.1: "Even before the Civil War commenced in 1861, this Court indirectly affirmed the importance of the right to keep and bear arms in public. Writing for the Court in Dred Scott v. Sandford, 19 How. 393 (1857), Chief Justice Taney offered what he thought was a parade of horribles that would result from recognizing that free blacks were citizens of the United States. If blacks were citizens, Taney fretted, they would be entitled to the privileges and immunities of citizens, *including the right to keep and carry arms wherever they went* (emphasis added). Id., at 417" 597 U.S. 52 (2022).

4.2: Blacks had procured great numbers of old army muskets and revolvers, particularly in Texas, and employed them to protect themselves with vigor and audacity S. Exec. Doc. No. 43, 39th Cong., 1st Sess., at 8. Seeing that government was *inadequately protecting them* (emphasis added), there [was] the strongest desire on the part of the freedmen to secure arms, revolvers particularly.

4.3 "the surety statutes presumed that individuals had a right to public carry that could be burdened only if another could make out a specific showing of "reasonable cause to fear an injury, or breach of the peace." (597 U.S. 5 (2022)

4.4 "That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes..." 597 U.S. 30 (2022).

4.5: "Thus, when Heller expressly rejected that dissent's "interest-balancing inquiry," 554 U. S., at 634 (internal quotation marks omitted), it necessarily rejected intermediate scrutiny." 597 U.S. (2022)

5.1: "The claim and exercise of a constitutional right cannot thus be converted into a crime." Evelyn Miller, Appellant, v. United States of America, Appellee, 230 F.2d 486 (5th Cir. 1956)

**PAGE 31 - APPENDIX; MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

5.2: "A State may not impose a charge for the enjoyment of a right granted by the Federal Constitution." Murdoc Vs Pennsylvania 319 U.S. 105 (1943)

6.1: DeShaney vs Winnebago Department of Social Service (1989), Estate of Sinthasomphone vs City of Milwaukee (1992), Castle Rock vs Gonzales (2005). "Neither the Constitution, nor state law, impose a general duty upon police officers or other governmental officials to protect individual persons from harm, even when they know the harm will occur," said Darren L. Hutchinson, a professor and associate dean at the University of Florida School of Law. "Police can watch someone attack you, refuse to intervene and not violate the Constitution." he pointed out.

6.2 "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." See Estelle v. Gamble, supra, at 429 U.S. 103 (1989).

7.0 "Respondent conceded at oral argument that he does not "have a problem with . . . licensing" and that the District's law is permissible so long as it is "not enforced in an arbitrary and capricious manner." Tr. of Oral Arg. 74–75. We therefore assume that petitioners' issuance of a license will satisfy respondent's prayer for relief and do not address the licensing requirement." 554 U.S. 59 (2008).

7.1: "We would not apply an interest-balancing approach to the prohibition of a peaceful neo-Nazi march through Skokie. The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views. The Second Amendment is no different." 554 US, 63 (2008).

7.2 "The Antifederalists feared that the Federal Government would disarm the people in order to disable this citizens' militia, enabling a politicized standing army or a select militia to rule." 554 U.S. 2 (2008)

7.3 "the Stuart Kings Charles II and James II succeeded in using select militias loyal to them to suppress political dissidents, in part by disarming their opponents." 554 U.S. 19 (2008)

7.4 "During the 1788 ratification debates, the fear that the federal government would disarm the people in order to impose rule through a standing army or select militia was pervasive" 554 U.S 25 (2008),

7.5 "...the right helped to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke down" 554 U.S 26 (2008),

**PAGE 32 - APPENDIX; MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

7.6 "the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that right—unlike some other English rights—was codified in a written Constitution." 554 U.S 36 (2008),

8.1: 10 USC §246. Militia: composition and classes

(a) The militia of the United States consists of all able-bodied males at least 17 years of age and, except as provided in section 313 of title 32, under 45 years of age who are, or who have made a declaration of intention to become, citizens of the United States and of female citizens of the United States who are members of the National Guard.

(b) The classes of the militia are—
(1) the organized militia, which consists of the National Guard and the Naval Militia; and
(2) the unorganized militia, which consists of the members of the militia who are not members of the National Guard or the Naval Militia.

9.1: 1:08-cv-01289, DC Appeal No. 14-7071 pg14 "'requiring the registration of all firearms' is consistent with the Supreme Court's ruling in Heller I)."

9.2 1:08-cv-01289, DC Appeal No. 14-7071 pg 2 (Heller II 2015) "We also determined that intermediate scrutiny, not strict scrutiny, is the proper yardstick"

9.3: 1:08-cv-01289, DC Appeal No. 14-7071 pg 23 (Heller II 2015) "He [Heller] does not argue the registration fees of $13 per firearm and $35 for fingerprinting"

9.4: 1:08-cv-01289, DC Appeal No. 14-7071 pg 23 "so it is with the basic registration requirement for long guns. See Heller II, 670 F.3d at 1254-55 (describing licensing schemes "such as [that] for... driving a car" as "self-evidently de minimis")"

10.1: U.S. Constitution First Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

10.2: U.S. Constitution Second Amendment: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

10.4: U.S. Constitution Fourth Amendment: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated..."

**PAGE 33 - APPENDIX; MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

11.1: Marbury v Maddison 5 U.S. (1 Cranch) 137 (1803), (ending paragraph of opinion): "Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void; and that courts, as well as other departments, are bound by that instrument."

12.1: Article 1, Section 10, Clause 1 of the US Constitution: "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, *ex post facto Law,* (emphisis added) or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

12.2: The Fifth Amendment of the US Constitution: "No person shall be held to answer for a *capital, or otherwise infamous crime* (emphasis added), unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be *compelled in any criminal case to be a witness against himself* (emphasis added), nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

13.1: 1:08-cv-01289, DC Appeal No. 14-7071 pg 23 "In his reply brief in this court, Heller argued for the first time that the registration requirement impinges upon the Second Amendmen... This assertion, however, is too little, too late. It comes too late because we do not ordinarily notice an argument that first appears in a reply brief."

**PAGE 34 - APPENDIX; MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**