

## PREAMBLE

Whereas the People of the State of Oregon have seen a sharp increase in gun sales, gun violence, and raised fear in Oregonians of armed intimidation, it is imperative to enhance public health and safety in all communities; and

Whereas the gun violence in Oregon and the United States, resulting in horrific deaths and devastating injuries due to mass shootings, homicides and suicides is unacceptable at any level, and the availability of firearms, including semiautomatic assault rifles and pistols with accompanying large-capacity ammunition magazines, pose a grave and immediate risk to the health, safety and well-being of the citizens of this State, particularly our youth; and

Whereas Oregon currently has no permit requirements for purchasing a semiautomatic assault firearm or any other type of weapon and studies have shown that permits-to-purchase reduce firearm-related injuries and death and studies further have shown that firearm ownership or access to firearms triples the risk of suicide and doubles the risk of homicide when compared to someone who does not have access, this measure will require that anyone purchasing a firearm must first complete a safety training course, successfully pass a full background check and, only then, will an individual be granted a permit-to-purchase a firearm, so that firearms are kept out of dangerous hands; and

Whereas large-capacity magazines are often associated with semiautomatic assault rifles, and can also be used with many semiautomatic firearms including shotguns and pistols, and estimates suggest that nearly 40% of crime guns used in serious violent crimes, including attacks on law enforcement officers, are equipped with large-capacity magazines; and

Whereas firearms equipped with large-capacity magazines increase casualties by allowing a shooter to continue firing for longer periods of time before reloading, thus explaining their use in all 10 of the deadliest mass shootings since 2009, and in mass shooting events from 2009 to 2018 where the use of large-capacity magazines caused twice as many deaths and 14 times as many injuries, including the 2015 shooting at Umpqua Community College in Roseburg, Oregon in which 10 people were killed and 7 more were injured; and

Whereas restrictions on high-capacity magazines during the 10-year federal ban from 1994-2004 and the ban in over nine (9) states and the District of Columbia have been found to reduce the number of fatalities and injuries in shooting incidents, this measure will enhance the safety of residents, particularly children, of this state by prohibiting the manufacture, sale, or transfer of large-capacity ammunition magazines and regulate the use of such magazines that are currently owned;

Now, therefore:

**Be It Enacted by the People of the State of Oregon**

**SECTION 1.** Sections 2 to 11 of this 2022 Act are added to and made a part of ORS 166.210 to 166.490.

**SECTION 2.** The People of the State of Oregon find and declare that regulation of sale, purchase and otherwise transferring of all firearms and restriction of the manufacture, import, sale, purchase, transfer, use and possession of ammunition magazines to those that hold no more than 10 rounds will promote the public health and safety of the residents of this state and this Act shall be known as the Reduction of Gun Violence Act.

## DEFINTIONS

**SECTION 3.** Definitions. As used in sections 3 to 10 of this 2022 Act:
  (1) "Criminal background check" has the same meaning given to this term in ORS 166.432(1)(a) to (e).
  (2) "Department" means the Department of State Police.
  (3) "Gun dealer" means a person engaged in the business, as defined in 18 U.S.C. 921, of selling, leasing or otherwise transferring a firearm, whether the person is a retail dealer, pawnbroker or otherwise.
  (4) "Permit" or "permit-to-purchase" mean an authorization issued to a person to purchase or acquire a firearm, provided all other requirements at the time of purchase or acquisition are met.
  (5) "Permit Agent" means a county sheriff or police chief with jurisdiction over the residence of the person making an application for a permit-to-purchase, or their designees.
  (6) "Transfer" has the meaning given that term in ORS 166.435(1)(a).
  (7) "Transferor" means a person who is not a gun dealer or licensed as a manufacturer or importer under 18 U.S.C. 923

PAGE - 1   New sections are in **boldfaced** type. Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

and who intends to deliver a firearm to a transferee.

### PERMIT-TO-PURCHASE PROCESS

**SECTION 4.**

(1)(a) A person may apply for a permit-to-purchase a firearm or firearms under this section to the police chief or county sheriff with jurisdiction over the residence of the person making the application, or their designees, hereinafter referred to as "permit agent".

(b) A person is qualified to be issued a permit-to-purchase under this section if the person:

(A) Is not prohibited from purchasing or acquiring a firearm under state or federal law, including but not limited to successfully completing a criminal background check as described under paragraph (e) of this subsection;

(B) Is not the subject of an order described in ORS 166.525 to 166.543;

(C) Does not present reasonable grounds for a permit agent to conclude that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence;

(D) Provides proof of completion of a firearm safety course as defined in subsection (8) of this section; and

(E) Pays the fee described in paragraph (b) of subsection (3) of this section.

(c) An application for a permit under this section must state the applicant's legal name, current address and telephone number, date and place of birth, physical description, and any additional information determined necessary by department rules. The application must be signed by the applicant in front of the permit agent.

(d) The permit agent shall verify the applicant's identity with a government-issued form of identification bearing a photograph of the applicant.

(e) The applicant must submit to fingerprinting and photographing by the permit agent. The permit agent shall fingerprint and photograph the applicant and shall conduct any investigation necessary to determine whether the applicant meets the qualifications described in paragraph (b) of this section. The permit agent shall request the department to conduct a criminal background check, including but not limited to a fingerprint identification, through the Federal Bureau of Investigation. The Federal Bureau of Investigation shall return the fingerprint cards used to conduct the criminal background check and may not keep any record of the fingerprints. Upon completion of the criminal background check and determination of whether the permit applicant is qualified or disqualified from purchasing or otherwise acquiring a firearm the department shall report the results, including the outcome of the fingerprint-based criminal background check, to the permit agent.

(2)(a) If during the background check, the department determines that:

(A) A purchaser is prohibited from possessing a firearm under ORS 166.250 (1)(c), the department shall report the attempted application for a permit, the purchaser's name and any other personally identifiable information to all federal, state and local law enforcement agencies and district attorneys that have jurisdiction over the location or locations where the attempted application for a permit was made and where the permit applicant resides;

(B) Based on the judgment of conviction, the permit applicant is prohibited from possessing a firearm as a condition of probation or that the permit applicant is currently on post-prison supervision or parole, the department shall report the attempted application for a permit to the permit applicant's supervising officer and the district attorney of the county in which the conviction occurred.

(C) The permit applicant is prohibited from possessing a firearm due to a court order described in ORS 166.255 (1)(a), the department shall report the attempted application for a permit to the court that issued the order.

(D) The permit applicant is under the jurisdiction of the Psychiatric Security Review Board, the department shall report the attempted application for a permit to the board.

(b) Reports required by paragraphs (A) to (D) of subsection (2)(a) shall be made within 24 hours after the determination is made, unless a report would compromise an ongoing investigation, in which case the report may be delayed as long as necessary to avoid compromising the investigation.

(c) On or before January 31 of each year, beginning in 2024, the department shall annually publish a report indicating for each county the number of applications made to any permit agent, the number of permits-to-purchase issued and the number of permits-to-purchase denied and the reasons for denial. The department may, by rule, include any additional

PAGE - 2    New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

Exhibit A
Page 2 of 12

information that it determines would be helpful to ensuring the permit-to-purchase process is being administered in a consistent and equitable manner.

(3)(a) Within 30 days of receiving an application for a permit under this section, if the permit agent has verified the applicant's identity and determined that the applicant has met each of the qualifications described in paragraph (1)(b) of this section, the permit agent shall issue the permit-to-purchase.

(b) The permit agent may charge a reasonable fee reflecting the actual cost of the process but shall not exceed $65, including the cost of fingerprinting, photographing and obtaining a criminal background check.

(4)(a) The department shall develop:

(A) A standardized application form for a permit under this section; and

(B) A form in quadruplicate for use by permit agents in issuing permits under this section.

(b) The issuing permit agent shall maintain a copy of each permit issued under this section.

(c) The person named in a permit shall:

(A) Maintain a copy of the permit as long as the permit is valid.

(B) Present a copy of the permit to the gun dealer or transferor of a firearm when required under ORS 166.412, 166.435, 166.436 or 166.438.

(5)(a) The permit agent shall report the issuance of a permit under this section to the department, and shall provide to the department a copy of the permit and any information necessary for the department to maintain an electronic searchable database of all permits issued under this section. A permit agent revoking a permit shall report the revocation to the department at the time that notice of the revocation has been sent to the permit holder.

(b) The department shall maintain the electronic database described in paragraph (a) of this subsection by ensuring that new permits are added to the database, renewed permits are assigned a new expiration date, and expired or revoked permits are marked expired or revoked but retained in the database.

(6)(a) A permit-to-purchase issued under this section does not create any right of the permit holder to receive a firearm.

(b) A permit-to-purchase issued under this section is not a limit on the number of firearms the permit holder may purchase or acquire during the time period when the permit is valid.

(7)(a) A permit-to-purchase issued under this section is valid for five years from the date of issuance, unless revoked.

(b) A person may renew an unexpired permit issued under this section by repeating the procedures set forth in subsection (1) of this section, except:

(A) A full finger print set does not need to be taken again if the original set has been retained by the permit agent or is otherwise available; and

(B) The training course does not need to be completed, provided the course previously taken fully complies with each of the requirements set forth in subsection 8 of this section.

(c)The permit agent may charge a reasonable fee for renewal of the permit, reflecting the actual cost of the process but shall not exceed $50, including the cost of obtaining a criminal background check and photographing.

(8) As used in this section, "proof of completion of a firearm safety course" means the following:

(a) Proof of completion of any firearms training course or class available to the general public that is offered by law enforcement, a community college, or a private or public institution or organization or firearms training school utilizing instructors certified by a law enforcement agency, and that includes the components set forth in paragraph (c) of this subsection; or

(b) Proof of completion of any law enforcement firearms training course or class that is offered for security guards, investigators, reserve law enforcement officers, or any other law enforcement officers, and that includes the components set forth in paragraph (c) of this subsection;

(c) A firearms training course or class required for issuance of a permit-to-purchase must include:

(A) Review of federal and state laws in place at the time of the class and other safe practices related to ownership, purchase, transfer, use and transportation of firearms;

(B) Review of federal and state safe storage laws in place at the time of the class and other safe practices related to safe storage, including reporting lost and stolen guns;

PAGE - 3     New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

Exhibit A
Page 3 of 12

(C) Prevention of abuse or misuse of firearms, including the impact of homicide and suicide on families, communities and the country as a whole; and

(D) In-person demonstration of the applicant's ability to lock, load, unload, fire and store a firearm before an instructor certified by a law enforcement agency. This requirement may be met separately from the other course requirements in subpargagraphs (A), (B) and (C) of paragraph (c), which may be completed in an on-line course, provided the on-line course has been conducted by a trainer certified by law enforcement.

(d) Proof of successful completion of a training course in order to meet the requirements for a concealed handgun license issued under ORS 166.291 and 166.292 may be submitted for a permit as a substitute for the requirements in paragraph (c) of this subsection, provided the completed course included each of the components set forth in paragraph (c) of this subsection.

(9) The department may adopt rules to carry out the provisions of this section.

**PERMIT-TO-PURCHASE DUE PROCESS APPEAL**

**SECTION 5.** (1) If the application for the permit-to-purchase is denied, the permit agent shall set forth in writing the reasons for the denial. The denial shall be placed in the mail to the applicant by certified mail, restricted delivery, within 30 days after the application was made. If no decision is issued within 30 days, the person may seek review under the procedures in subsection (5) of this section.

(2) Notwithstanding subsections (1) to (3) of section 4 of this 2022 Act, and subject to review as provided in subsection (5) of this section, a permit agent may deny a permit-to-purchase if the permit agent has reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence.

(3)(a) Any act or condition that would prevent the issuance of a permit-to-purchase is cause for revoking a permit-to-purchase.

(b) A permit agent may revoke a permit by serving upon the permittee a notice of revocation. The notice must contain the grounds for the revocation and must be served either personally or by certified mail, restricted delivery. The notice and return of service shall be included in the file of the permit holder. The revocation is effective upon the permit holder's receipt of the notice.

(4) Any peace officer or corrections officer may seize a permit-to-purchase and return it to the issuing permit agent if the permit is held by a person who has been arrested or cited for a crime that can or would otherwise disqualify the person from being issued a permit. The issuing permit agent shall hold the permit for 30 days. If the person is not charged with a crime within the 30 days, the permit agent shall return the permit unless the permit agent revokes the permit as provided in subsection (3) of this section.

(5) A person denied a permit-to-purchase or whose permit is revoked or not renewed may petition the circuit court in the petitioner's county of residence to review the denial, nonrenewal or revocation. The petition must be filed within 30 days after the receipt of the notice of denial or revocation.

(6) The judgment affirming or overturning the permit agent's decision shall be based on whether the petitioner meets the criteria that are used for issuance of a permit-to-purchase and, if the petitioner was denied a permit, whether the permit agent has reasonable grounds for denial under subsection (2) of this section. Whenever the petitioner has been previously sentenced for a crime under ORS 161.610 (Enhanced penalty for use of firearm during commission of felony) or for a crime of violence for which the person could have received a sentence of more than 10 years, the court shall grant relief only if the court finds that relief should be granted in the interest of justice.

(7) Notwithstanding the provisions of ORS 9.320 (Necessity for employment of attorney), a party that is not a natural person, the state or any city, county, district or other political subdivision or public corporation in this state, without appearance by attorney, may appear as a party to an action under this section.

(8) Petitions filed under this section shall be heard and disposed of within 15 judicial days of filing or as soon as practicable thereafter.

(9) Filing fees for actions shall be as for any civil action filed in the court. If the petitioner prevails, the amount of the filing fee shall be paid by the respondent to the petitioner and may be incorporated into the court order.

(10) Initial appeals of petitions shall be heard de novo.

PAGE - 4      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

Exhibit A
Page 4 of 12

**(11) Any party to a judgment under this section may appeal to the Court of Appeals in the same manner as for any other civil action.**
**(12) If the governmental entity files an appeal under this section and does not prevail, it shall be ordered to pay the attorney fees for the prevailing party.**

### REQUIRES PERMITS FOR LICENSED DEALER SALES

<u>**SECTION 6.**</u> ORS 166.412 is amended to read:

(1) As used in this section:

(a) "Antique firearm" has the meaning given that term in 18 U.S.C. 921;

(b) "Department" means the Department of State Police;

(c) "Firearm" has the meaning given that term in ORS 166.210, except that it does not include an antique firearm;

(d) "Firearms transaction record" means the firearms transaction record required by 18 U.S.C. 921 to 929;

(e) "Firearms transaction thumbprint form" means a form provided by the department under subsection (11) of this section;

(f) "Gun dealer" means a person engaged in the business, as defined in 18 U.S.C. 921, of selling, leasing or otherwise transferring a firearm, whether the person is a retail dealer, pawnbroker or otherwise; and

(g) "Purchaser" means a person who buys, leases or otherwise receives a firearm from a gun dealer.

(2) Except as provided in subsection[s (3)(c) and] (12) of this section, a gun dealer shall comply with the following before a firearm is delivered to a purchaser:

(a) The purchaser shall present to the gun dealer current identification meeting the requirements of subsection (4) of this section **and a valid permit issued under section 4 of this 2022 Act**.

(b) The gun dealer shall complete the firearms transaction record and obtain the signature of the purchaser on the record.

(c) The gun dealer shall obtain the thumbprints of the purchaser on the firearms transaction thumbprint form and attach the form to the gun dealer's copy of the firearms transaction record to be filed with that copy.

(d) The gun dealer shall**,** [request] by telephone **or computer, verify that the purchaser has a valid permit-to-purchase a firearm issued under section 4 of this 2022 Act and request** that the department conduct a criminal history record check on the purchaser and shall provide the following information to the department:

(A) The federal firearms license number of the gun dealer;

(B) The business name of the gun dealer;

(C) The place of transfer;

(D) The name of the person making the transfer;

(E) The make, model, caliber and manufacturer's number of the firearm being transferred;

(F) The name and date of birth of the purchaser;

(G) The Social Security number of the purchaser if the purchaser voluntarily provides this number to the gun dealer; and

(H) The type, issuer and identification number of the identification presented by the purchaser.

(e) The gun dealer shall receive a unique approval number for the transfer from the department and record the approval number on the firearms transaction record and on the firearms transaction thumbprint form.

(f) The gun dealer may destroy the firearms transaction thumbprint form five years after the completion of the firearms transaction thumbprint form.

(3)(a) Upon receipt of a request of the gun dealer for a criminal history record check, the department shall immediately, during the gun dealer's telephone call or by return call:

(A) Determine, from criminal records and other information available to it, whether the purchaser is disqualified under ORS 166.470 from completing the purchase; and

(B) Notify the gun dealer when a purchaser is disqualified from completing the transfer or provide the gun dealer with a unique approval number indicating that the purchaser is qualified to complete the transfer.

(b) If the department is unable to determine if the purchaser is qualified or disqualified from completing the transfer within 30 minutes, the department shall notify the gun dealer and provide the gun dealer with an estimate of the time when the

PAGE - 5     New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

Exhibit A
Page 5 of 12

department will provide the requested information.

(c) **The dealer may not transfer the firearm unless the dealer receives a unique approval number from the department and, within 48 hours of completing the transfer, the dealer shall notify the state that the transfer to the permit holder was completed**. [~~If the department fails to provide a unique approval number to a gun dealer or to notify the gun dealer that the purchaser is disqualified under paragraph (a) of this subsection before the close of the gun dealer's next business day following the request by the gun dealer for a criminal history record check, the gun dealer may deliver the firearm to the purchaser.~~]

(4)(a) Identification required of the purchaser under subsection (2) of this section shall include one piece of current identification bearing a photograph and the date of birth of the purchaser that:

(A) Is issued under the authority of the United States Government, a state, a political subdivision of a state, a foreign government, a political subdivision of a foreign government, an international governmental organization or an international quasi-governmental organization; and

(B) Is intended to be used for identification of an individual or is commonly accepted for the purpose of identification of an individual.

(b) If the identification presented by the purchaser under paragraph (a) of this subsection does not include the current address of the purchaser, the purchaser shall present a second piece of current identification that contains the current address of the purchaser. The Superintendent of

State Police may specify by rule the type of identification that may be presented under this paragraph.

(c) The department may require that the gun dealer verify the identification of the purchaser if that identity is in question by sending the thumbprints of the purchaser to the department.

(5) The department shall establish a telephone number that shall be operational seven days a week between the hours of 8 a.m. and 10 p.m. for the purpose of responding to inquiries from gun dealers for a criminal history record check under this section.

(6) No public employee, official or agency shall be held criminally or civilly liable for performing the investigations required by this section provided the employee, official or agency acts in good faith and without malice.

(7)(a) The department may retain a record of the information obtained during a request for a criminal history record check for no more than five years**, except for the information provided to the dealer under subsection (2)(d) of this section, sufficient to reflect each firearm purchased by a permit holder, which must be attached to the electronic record of the permit stored by the department.  The department may develop a system for removal of the information in subsection (2)(d)(E) of this section, upon proof of sale or transfer of the firearm to another permit holder and for recording of the information to reflect the transfer of ownership to the permit of the new owner**.

(b) The record of the information obtained during a request for a criminal history record check by a gun dealer is exempt from disclosure under public records law.

(c) If the department determines that a purchaser is prohibited from possessing a firearm under ORS 166.250 (1)(c), the department shall report the attempted transfer, the purchaser's name and any other personally identifiable information to all federal, state and local law enforcement agencies and district attorneys that have jurisdiction over the location or locations where the attempted transfer was made and where the purchaser resides.

(d) If the department determines that, based on the judgment of conviction, the purchaser is prohibited from possessing a firearm as a condition of probation or that the purchaser is currently on post-prison supervision or parole, the department shall report the attempted transfer to the purchaser's supervising officer and the district attorney of the county in which the conviction occurred.

(e) If the department determines that the purchaser is prohibited from possessing a firearm due to a court order described in ORS 166.255 (1)(a), the department shall report the attempted transfer to the court that issued the order.

(f) If the department determines that the purchaser is under the jurisdiction of the Psychiatric Security Review Board, the department shall report the attempted transfer to the board.

(g) Reports required by paragraphs (c) to (f) of this subsection shall be made within 24 hours after the determination is made, unless a report would compromise an ongoing investigation, in which case the report may be delayed as long as necessary to avoid compromising the investigation.

(h) On or before January 31 of each year, a law enforcement agency or a prosecuting attorney's office that received a report pursuant to paragraph (c) of this subsection during the previous calendar year shall inform the department of any action that was taken concerning the report and the outcome of the action.

PAGE - 6    New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

Exhibit A
Page 6 of 12

(i) The department shall annually publish a written report, based on any information received under paragraph (h) of this subsection, detailing the following information for the previous year:

(A) The number of purchasers whom the department determined were prohibited from possessing a firearm under ORS 166.250 (1)(c), arranged by category of prohibition;

(B) The number of reports made pursuant to paragraph (c) of this subsection;

(C) The number of investigations arising from the reports made pursuant to paragraph (c) of this subsection, the number of investigations concluded and the number of investigations referred for prosecution, all arranged by category of prohibition; and

(D) The number of criminal charges arising from the reports made pursuant to paragraph (c) of this subsection and the disposition of the charges, both arranged by category of prohibition.

(8) A law enforcement agency may inspect the records of a gun dealer relating to transfers of firearms with the consent of a gun dealer in the course of a reasonable inquiry during a criminal investigation or under the authority of a properly authorized subpoena or search warrant.

(9) When a firearm is delivered, it shall be unloaded.

(10) In accordance with applicable provisions of ORS chapter 183, the Superintendent of State Police may adopt rules necessary for:

(a) The design of the firearms transaction thumbprint form;

(b) The maintenance of a procedure to correct errors in the criminal records of the department;

(c) The provision of a security system to identify gun dealers that request a criminal history record check under subsection (2) of this section; and

(d) The creation and maintenance of a database of the business hours of gun dealers.

(11) The department shall publish the firearms transaction thumbprint form and shall furnish the form to gun dealers on application at cost.

(12) This section does not apply to transactions between persons licensed as dealers under 18 U.S.C 923.

(13)(a) If requested by a transferor who is not a gun dealer, a gun dealer may request a criminal background check pursuant to ORS 166.435 or 166.438 and may charge a reasonable fee for providing the service.

(b) A gun dealer that requests a criminal background check under this subsection is immune from civil liability for any use of the firearm by the recipient or transferee, provided that the gun dealer requests the criminal background check as described in this section **and also provided that the dealer verifies that the recipient has a valid permit-to-purchase the firearm and the dealer has received a unique approval number from the department indicating successful completion of the background check**.

**(14) Knowingly selling or delivering a firearm to a purchaser or transferee who does not have a valid permit-to-purchase a firearm in violation of subsection 2(d) of this section, or prior to receiving a unique approval number from the department based on the criminal background check in violation of subsection 3(c) of this section, is a Class A misdemeanor.**

<u>**REQUIRES PERMITS FOR PRIVATE TRANSFERS**</u>

**SECTION 7.** ORS 166.435 is amended to read:

(1) As used in this section:

(a) "Transfer" means the delivery of a firearm from a transferor to a transferee, including, but not limited to, the sale, gift, loan or lease of the firearm. "Transfer" does not include the temporary provision of a firearm to a transferee if the transferor has no reason to believe the transferee is

prohibited from possessing a firearm or intends to use the firearm in the commission of a crime, and the provision occurs:

(A) At a shooting range, shooting gallery or other area designed for the purpose of target shooting, for use during target practice, a firearms safety or training course or class or a similar lawful activity;

(B) For the purpose of hunting, trapping or target shooting, during the time in which the transferee is engaged in activities related to hunting, trapping or target shooting;

(C) Under circumstances in which the transferee and the firearm are in the presence of the transferor;

(D) To a transferee who is in the business of repairing firearms, for the time during which the firearm is being repaired;

PAGE - 7    New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

Exhibit A
Page 7 of 12

(E) To a transferee who is in the business of making or repairing custom accessories for firearms, for the time during which the accessories are being made or repaired; or

(F) For the purpose of preventing imminent death or serious physical injury, and the provision lasts only as long as is necessary to prevent the death or serious physical injury.

(b) "Transferee" means a person who is not a gun dealer or licensed as a manufacturer or importer under 18 U.S.C. 923 and who intends to receive a firearm from a transferor.

(c) "Transferor" means a person who is not a gun dealer or licensed as a manufacturer or importer under 18 U.S.C. 923 and who intends to deliver a firearm to a transferee.

(2) Except as provided in ORS 166.436 and 166.438 and subsection (4) of this section, a transferor may not transfer a firearm to a transferee unless the transfer is completed through a gun dealer as described in subsection (3) of this section.

(3)(a) A transferor may transfer a firearm to a transferee only as provided in this section. Except as provided in paragraph (b) of this subsection, prior to the transfer both the transferor and the transferee must appear in person before a gun dealer, with the firearm **and a valid permit-to-purchase issued to the transferee under section 4 of this 2022 Act**, and request that the gun dealer perform a criminal background check on the transferee.

(b) If the transferor and the transferee reside over 40 miles from each other, the transferor may ship or deliver the firearm to a gun dealer located near the transferee or a gun dealer designated by the transferee, and the transferor need not appear before the gun dealer in person.

(c) A gun dealer who agrees to complete a transfer of a firearm under this section shall request a criminal history record check on the transferee as described in ORS 166.412 and shall comply with all requirements of federal law.

(d) If, upon completion of a criminal background check, the gun dealer:

(A) Receives a unique approval number from the Department of State Police indicating that the transferee is qualified to complete the transfer, the gun dealer shall notify the transferor, enter the firearm into the gun dealer's inventory and transfer the firearm to the transferee.

(B) Receives notification that the transferee is prohibited by state or federal law from possessing or receiving the firearm **or that the department is unable to determine if the transferee is qualified or disqualified from completing the transfer**, the gun dealer shall notify the transferor and neither the transferor nor the gun dealer shall transfer the firearm to the transferee. If the transferor shipped or delivered the firearm to the gun dealer pursuant to paragraph (b) of this subsection, the gun dealer shall comply with federal law when returning the firearm to the transferor.

(e) A gun dealer may charge a reasonable fee for facilitating a firearm transfer pursuant to this section.

(4) The requirements of subsections (2) and (3) of this section do not apply to:

(a) The transfer of a firearm by or to a law enforcement agency, or by or to a law enforcement officer, private security professional or member of the Armed Forces of the United States, while that person is acting within the scope of official duties.

(b) The transfer of a firearm as part of a firearm turn-in or buyback event, in which a law enforcement agency receives or purchases firearms from members of the public.

(c) The transfer of a firearm to:

(A) A transferor's spouse or domestic partner;

(B) A transferor's parent or stepparent;

(C) A transferor's child or stepchild;

(D) A transferor's sibling;

(E) A transferor's grandparent;

(F) A transferor's grandchild;

(G) A transferor's aunt or uncle;

(H) A transferor's first cousin;

(I) A transferor's niece or nephew; or

(J) The spouse or domestic partner of a person specified in subparagraphs (B) to (I) of this paragraph.

(d) The transfer of a firearm that occurs because of the death of the firearm owner, provided that:

(A) The transfer is conducted or facilitated by a personal representative, as defined in ORS 111.005, or a trustee of a trust created in a will; and

PAGE - 8    New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

Exhibit A
Page 8 of 12

(B) The transferee is related to the deceased firearm owner in a manner specified in paragraph (c) of this subsection.

(5)(a) A transferor who fails to comply with the requirements of this section commits a Class A misdemeanor.

(b) Notwithstanding paragraph (a) of this subsection, a transferor who fails to comply with the requirements of this section commits a Class B felony if the transferor has a previous conviction under this section at the time of the offense.

**REQUIRES PERMITS FOR ALL TRANSFERS AT GUN SHOWS**

**SECTION 8.** ORS 166.436 is amended to read:

(1) The Department of State Police shall make the telephone number established under ORS 166.412 (5) available for requests for criminal background checks under this section from persons who are not gun dealers and who are transferring firearms at gun shows.

(2) Prior to transferring a firearm at a gun show, a transferor who is not a gun dealer [may request] **shall** by telephone **verify that the transferee has a valid permit-to-purchase a firearm under section 4 of this 2022 Act and request** that the department conduct a criminal background check on the recipient upon providing the following information to the department:

(a) The name , address and telephone number of the transferor;

(b) The make , model, caliber and manufacturer's number of the firearm being transferred;

(c) The name, date of birth , race, sex and address of the recipient ;

(d) The Social Security number of the recipient if the recipient voluntarily provides that number ;

(e) The address of the place where the transfer is occurring; and

(f) The type, issuer and identification number of a current piece of

identification bearing a recent photograph of the recipient presented by the recipient. The identification presented by the recipient must meet the requirements of ORS 166.412 (4)( a).

(3)(a) Upon receipt of a request for a criminal background check under this section, the department shall immediately, during the telephone call or by return call:

(A) Determine from criminal records and other information available to it whether the recipient is disqualified under ORS 166.470 from completing the transfer or is otherwise prohibited by state or federal law from possessing a firearm; and

(B) Notify the transferor when a recipient is disqualified from completing the transfer or provide the transferor with a unique approval number indicating that the recipient is qualified to complete the transfer. The unique approval number is a permit valid for 24 hours for the requested transfer. If the firearm is not transferred from the transferor to the recipient within 24 hours after receipt of the unique approval number, a new request must be made by the transferor.

(b) If the department is unable to determine whether the recipient is qualified for or disqualified from completing the transfer within 30 minutes of receiving the request , the department shall notify the transferor and provide the transferor with an estimate of the time when the department will provide the requested information.

**(c) The transferor may not transfer the firearm unless the transferor receives a unique approval number from the department and, within 48 hours of the completed transfer, the transferor shall notify the state that the transfer to the permit holder was completed.**

(4) A public employee or public agency incurs no criminal or civil liability for performing the criminal background checks required by this section, provided the employee or agency acts in good faith and without malice.

(5)(a) The department may retain a record of the information obtained during a request for a criminal background check under this section for the period of time provided in ORS 166.412 (7), **as amended by this 2022 Act**.

(b) The record of the information obtained during a request for a criminal background check under this section is exempt from disclosure under public records law.

(c) If the department determines that a recipient is prohibited from possessing a firearm under ORS 166.250 (l)(c), the department shall report the attempted transfer, the recipient's name and any other personally identifiable information to all federal, state and local law enforcement agencies and district attorneys that have jurisdiction over the location or locations where the attempted transfer was made and where the recipient resides.

PAGE - 9    New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

Exhibit A
Page 9 of 12

(d) If the department determines that, based on the judgment of conviction, the recipient is prohibited from possessing a firearm as a condition of probation or that the recipient is currently on post-prison supervision or parole, the department shall report the attempted transfer to the recipient's supervising officer and the district attorney of the county in which the conviction occurred.

(e) If the department determines that the recipient is prohibited from possessing a firearm due to a court order described in ORS 166.255 (1)(a), the department shall report the attempted transfer to the court that issued the order.

(f) If the department determines that the recipient is under the jurisdiction of the Psychiatric Security Review Board, the department shall report the attempted transfer to the board.

(g) Reports required by paragraphs (c) to (f) of this subsection shall be made within 24 hours after the determination is made, unless a report would compromise an ongoing investigation, in which case the report may be delayed as long as necessary to avoid compromising the investigation.

(h) On or before January 31 of each year, a law enforcement agency or a prosecuting attorney's office that received a report pursuant to paragraph (c) of this subsection during the previous calendar year shall inform the department of any action that was taken concerning the report and the outcome of the action.

(i) The department shall annually publish a written report, based on any information received under paragraph (h) of this subsection, detailing the following information for the previous year:

(A) The number of recipients whom the department determined were prohibited from possessing a firearm under ORS 166.250 (1)(c), arranged by category of prohibition;

(B) The number of reports made pursuant to paragraph (c) of this subsection;

(C) The number of investigations arising from the reports made pursuant to paragraph (c) of this subsection, the number of investigations concluded and the number of investigations referred for prosecution, all arranged by category of prohibition; and

(D) The number of criminal charges arising from the reports made pursuant to paragraph (c) of this subsection and the disposition of the charges, both arranged by category of prohibition.

(6) The recipient of the firearm must be present when the transferor requests a criminal back-ground check under this section.

(7)(a) Except as otherwise provided in paragraph (b) of this subsection, a transferor who receives notification under this section that the recipient is qualified to complete the transfer of a firearm, has the recipient fill out the form required by ORS 166.438 (1)(a) and retains the form as required by ORS 166.438 (2) is immune from civil liability for any use of the firearm from the time of the transfer unless the transferor knows, or reasonably should know, that the recipient is likely to commit an unlawful act involving the firearm.

(b) The immunity provided by paragraph (a) of this subsection does not apply:

(A) If the transferor knows, or reasonably should know, that the recipient of the firearm intends to deliver the firearm to a third person who the transferor knows, or reasonably should know, may not lawfully possess the firearm; or

(B) In any product liability civil action under ORS 30.900 to 30.920.

**REQUIRES PERMITS FOR ALL TRANSFERS AT GUN SHOWS (2015 Amendment)**

**SECTION 9.** ORS 166.438 is amended to read:

(1) A transferor who is not a gun dealer may not transfer a firearm at a gun show unless the transferor:

(a)**(A) Verifies with the department that the recipient has a valid permit-to-purchase issued under section 4 of this 2022 Act;**

([A]**B**) Requests a criminal background check under ORS 166.436 prior to completing the transfer;

([B]**C**) Receives a unique approval number from the department indicating that the recipient is qualified to complete the transfer; and

([C]**D**) Has the recipient complete the form described in ORS 166.441; or

(b) Completes the transfer through a gun dealer.

(2) The transferor shall retain the completed form referred to in subsection (1) of this section for at least five years and shall make the completed form available to law enforcement agencies for the purpose of criminal investigations.

(3) A person who organizes a gun show shall post in a prominent place at the gun show a notice explaining the requirements of subsections (1) and (2) of this section. The person shall provide the form required by subsection (1) of this section to any person transferring a firearm at the gun show.

PAGE - 10    New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [struck through and bracketed] is intended to be omitted.

Exhibit A
Page 10 of 12

(4) Subsection (1) of this section does not apply if the transferee is licensed as a dealer under 18 U.S.C. 923.

(5)(a) Failure to comply with the requirements of subsection (1), (2) or (3) of this section is a Class A misdemeanor.

(b) Notwithstanding paragraph (a) of this subsection, failure to comply with the requirements of subsection (1), (2) or (3) of this section is a Class C felony if the person has two or more previous convictions under this section **at the time of the offense.**

(6) It is an affirmative defense to a charge of violating subsection (1) or (3) of this section that the person did not know, or reasonably could not know, that more than 25 firearms were at the site and available for transfer.

<u>SECTION 10.</u> **The amendments to ORS 166.412, 166.435, 166.436 and 166.438 by sections 3 to 9 of this 2022 Act apply to firearm transfers conducted on or after the effective date of this 2022 Act.**

### PROHIBITIONS/EXCEPTIONS TO LARGE-CAPACITY MAGAZINES

<u>SECTION 11.</u> **(1) As used in this section:**

**(a) "Armed Forces of the United States" has the meaning given that term in ORS 348.282.**

**(b) "Detachable magazine" means an ammunition feeding device that can be loaded or unloaded while detached from a firearm and readily inserted in a firearm;**

**(c) "Fixed magazine" means an ammunition feeding device contained in or permanently attached to a firearm in such a manner that the device cannot be removed without disassembly of the firearm action;**

**(d) "Large-capacity magazine" means a fixed or detachable magazine, belt, drum, feed strip, helical feeding device, or similar device, including any such device joined or coupled with another in any manner, or a kit with such parts, that has an overall capacity of, or that can be readily restored, changed, or converted to accept, more than 10 rounds of ammunition and allows a shooter to keep firing without having to pause to reload, but does not include any of the following:**

**(A) An ammunition feeding device that has been permanently altered so that it is not capable, now or in the future, of accepting more than 10 rounds of ammunition;**

**(B) An attached tubular device designed to accept, and capable of operating only with 0.22 caliber rimfire ammunition; or**

**(C) A tubular ammunition feeding device that is contained in a lever-action firearm.**

**(e) "Loaded" has the meaning given that term in ORS 166.360;**

**(f) "Person" means any natural person, corporation, partnership, fire or association.**

**(2) Notwithstanding ORS 166.250 to 166.470, and except as expressly provided in subsections (3) to (5) of this section, a person commits the crime of unlawful manufacture, importation, possession, use, purchase, sale or otherwise transferring of large-capacity magazines if the person manufactures, imports, possesses, uses, purchases, sells or otherwise transfers any large-capacity magazine in Oregon on or after the effective date of this 2022 Act.**

**(3) Subsection (2) of the section does not apply during the first 180 days following the effective date of this 2022 Act, with respect to:**

**(a) A licensed gun dealer that within 180 days of the effective date of this 2022 Act:**

**(A) Transfers or sells the large-capacity magazines in the gun dealer's inventory to a non-resident gun dealer or other transferee outside of this state;**

**(B) Purchases or acquires temporary custody from an owner of any large-capacity magazine for permanent removal from this state within the 180 days of the effective date of this 2022 Act;**

**(C) Permanently alters any large-capacity magazine in the gun dealer's inventory or custody so that it is not capable, upon alteration or in the future, of accepting more than 10 rounds of ammunition or permanently alter the magazine so it is no longer a; or**

**(D) Permanently disposes of the large-capacity magazines in the gun dealer's custody or inventory.**

**(b) A firearms manufacturer, properly licensed under federal, state and local law, that is a party to a contract, in existence and binding on the effective date of this 2022 Act, with an entity outside of this state, for the manufacture of large-capacity magazines, provided that:**

**(A) All manufacturing is completed no later than 180 days after the effective date of this 2022 Act; and**

**(B) The entity outside of Oregon receiving the large-capacity magazines is made aware in writing on or before the delivery of the ammunition devices of the restrictions pertaining to large-capacity magazines in this state as set forth in this 2022 Act.**

**(4) Subsection (2) of the section does not apply at any time to:**

PAGE - 11      New sections are in **boldfaced** type.  Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

Exhibit A
Page 11 of 12

   (a) A firearms manufacturer properly licensed under federal, state and local law that manufactures large-capacity magazines, provided:

   (A) The manufacturing is for exclusive sale or transfer to the Armed Forces of the United States or a law enforcement agency and solely for authorized use by that entity related to the official duties of the entity; and

   (B) Any large-capacity magazine, permitted to be manufactured under paragraph (a)(A) of this subsection after the effective date of this 2022 Act, shall include a permanent stamp or marking indicating that the large-capacity magazine was manufactured or assembled after the effective date of this 2022 Act. The stamp or marking must be legibly and conspicuously engraved or cast upon the outer surface of the large-capacity magazine. The department may promulgate such rules as may be necessary for the implementation of this section, including but not limited to rules requiring such large-capacity magazine be stamped with information indicating the limitation for use only by military and law enforcement or such other identification to distinguish clearly large-capacity magazines manufactured after the effective date of this 2022 Act. Except as provided in paragraph (3)(b) of this section, no large-capacity magazines without such stamp may be manufactured in this state after the effective date of this Act.

   (b) A licensed gun dealer that sells or otherwise transfers large-capacity magazines to the Armed Forces of the United States or a law enforcement agency solely for authorized use by that entity, provided the large-capacity magazines have been engraved as provided in paragraph (a)(B) of this subsection.

   (c) Any government officer, agent or employee, member of the Armed Forces of the United States or peace officer, as that term is defined in ORS 133.005, that is authorized to acquire, possess or use a large-capacity magazine provided that any acquisition, possession or use is related directly to activities within the scope of that person's official duties.

   (5) As of the effective date of this 2022 Act, it shall be an affirmative defense, as provided in ORS 166.055, to the unlawful possession, use and transfer of a large-capacity magazine in this state by any person, provided that:

   (a) The large-capacity magazine was owned by the person before the effective date of this 2022 Act and maintained in the person's control or possession; or

   (b) The possession of a large-capacity magazine was obtained by a person who, on or after the effective date of this section, acquired possession of the large-capacity magazine by operation of law upon the death of a former owner who was in legal possession of the large-capacity magazine; and

   (c) In addition to either (a) or (b) of this subsection the owner has not maintained the large-capacity magazine in a manner other than:

   (A) On property owned or immediately controlled by the registered owner;

   (B) On the premises of a gun dealer or gunsmith licensed under 18 U.S.C. 923 for the purpose of lawful service or repair;

   (C) While engaging in the legal use of the large-capacity magazine, at a public or private shooting range or shooting gallery or for recreational activities such as hunting, to the extent permitted under state law; or

   (D) While participating in firearms competition or exhibition, display or educational project about firearms sponsored, conducted by, approved or under the auspices of a law enforcement agency or a national or state-recognized entity that fosters proficiency in firearms use or promotes firearms education; and

   (E) While transporting any large-capacity magazines in a vehicle to one of the locations authorized in paragraphs (c)(A) to (D) of this subsection, the large-capacity magazine is not inserted into the firearm and is locked in a separate container.

   (d) The person has permanently and voluntarily relinquished the large-capacity magazine to law enforcement or to a buyback or turn-in program approved by law enforcement, prior to commencement of prosecution by arrest, citation or a formal charge.

   (6) Unlawful manufacture, importation, possession, use, purchase, sale or otherwise transferring of a large-capacity magazine is a class A misdemeanor.

   **SECTION 12.** If any provision of this 2022 Act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of this Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable. The people hereby declare that they would have adopted this Chapter, notwithstanding the unconstitutionality, invalidity and ineffectiveness of any one of its articles, sections, subsections, sentences or clauses.

   **SECTION 13.** The provisions of this 2022 Act apply to all actions taken on or after the effective date of this 2022 Act, unless expressly stated otherwise herein. This 2022 Act may be known and cited as the Reduction of Gun Violence Act.

PAGE - 12    New sections are in **boldfaced** type. Matter in amended sections in **boldfaced** type is new; matter [~~struck through~~ and bracketed] is intended to be omitted.

RECEIVED
MAY 4, 2021 9:20am
Elections Division

Exhibit A
Page 12 of 12

**PISTOLS:**

**Berretta:**
APX; 92; 96A1; 92A1; Px4 Storm; 92X; 92A3; M9; M9A1; M9A3; M9A4

**Bersa:**
Thunder; TPRC; TPR; TPR380;

**Cannik:**
TP9; TP9SF; TP9SFX; METE; SFX Rival

**CZ:**
Accushadow; P10C; P10F; SP-01; P-01; CZ-75; CZ-75B; 75 Omega; P-07; P-09; Shadow

**FMK:**
9C1G2; Elite

**FN:**
509; FNX-9; FNX-45; High Power; Five-Seven; 502

**Glock:**
17; 19; 20; 21; 22; 23; 19x; 31; 32; 34; 35; 45; 41;

**Heckler & Koch (HK):**
P2000; MK-23; USP-9; USP-40; USP-45; P7; VP9; P30; VP40; P30SK; VP9SK

**IWI/Desert Eagle:**
Masada; Jericho 941; Baby Eagle

**Kel-Tec:**
P15; P17

**Ruger:**
P345; Max-9; Security-9; American; Ruger-5.7; LC9; P85; P90; P95

**Shadow Systems:**
CR920; MR920; XR920; DR920

**Sig Sauer:**
P226; P228; P229; P250; SP2022; P320; M17; M18; P365X; P365XL; P365 Macro; M11; M11A1; P320AXG;

**Smith & Wesson:**
5903; 5904; 5905; 5906; SW9VE; SW40VE; SD9VE; SD40VE; M&P-9C; M&P-9; M&P-40; M&P-45; M&P 2.0; CSX; Shield Plus; Equalizer;
**Springfield Armory:**
XD-9; XD-40; XD-45; XDm 9; XDm 40; Xdm 45; Hellcat, Prodigy, SA-35

**Staccato:**
CS; C2; P; XC; XL

**Taurus:**
Millennium; Millennium Pro; 24/7; GX4; G3C; G2; G2C; G3

**Walther:**
PPQ; Q4 SF; P99; PDP; Q5; WMP

**Wilson Combat:**
EDCX9; SFX9; Experior