Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

_____

OREGON FIREARMS FEDERATION,      )
INC., et al.,                    )
                                 )
            Plaintiffs,          )
                                 ) Case Nos.
      v.                         ) 2:22-cv-01815-IM
                                 ) 3:22-cv-01859-IM
KATE BROWN, et al.,              ) 3:22-cv-01862-IM
                                 ) 3:22-cv-01869-IM
            Defendants.          )
_____   )
                                 )
                                 )
      (Continued)                )
_____


                 * VIDEOCONFERENCE *
      VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION
                        OF
                  JASON J. MYERS
_____


               Witness located in:

                  Salem, Oregon



    * All participants appeared via videoconference *




DATE TAKEN:  February 1, 2023

REPORTED BY:  Tia B. Reidt, Washington RPR, CSR #2798
                    Oregon #22-0001

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Page 2

```
1   _____

2              (Continued)              )
                                        )
3    MARK FITZ, et al.,                 )
                                        )
4               Plaintiffs,             )
          v.                            )
5                                       )
     ELLEN F. ROSENBLUM, et al.,        )
6                                       )
                Defendants.             )
7    _____       )
     KATERINA B. EYRE, et al.,          )
8                                       )
                Plaintiffs,             )
9         v.                            )
                                        )
10   ELLEN F. ROSENBLUM, et al.,        )
                                        )
11              Defendants.             )
     _____       )
12   DANIEL AZZOPARDI, et al.,          )
                                        )
13              Plaintiffs,             )
          v.                            )
14   ELLEN F. ROSENBLUM, et al.,        )
                                        )
15              Defendants.             )
16   _____

17

18

19

20

21

22

23

24

25
```

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Page 3

1                                APPEARANCES

2

3     For the State of Oregon Defendants:

4                    HARRY WILSON
                     MARKOWITZ HERBOLD
5                    1455 SW Broadway, Suite 1900
                     Portland, OR 97201
6                    (503) 972-5076
                     HarryWilson@markowitzherbold.com

7

8     For the non-intervenor defendants, governor, the
      Attorney General, and the superintendent of the Oregon
9     State Police:

10                   BRIAN MARSHALL
                     OREGON DEPARTMENT OF JUSTICE
11                   SPECIAL LITIGATION UNIT
                     100 SW Market Street
12                   Portland, OR 97201
                     (971) 673-1800
13                   Brian.S.Marshall@doj.state.or.us

14

      For Oregon State Sheriffs' Association and the witness:
15

16                   ELMER DICKENS
                     OREGON STATE SHERIFFS' ASSOCIATION
17                   PO Box 635
                     Carlton, OR 97111
18                   (503) 704-1052
                     Elmerdickens@live.com

19

      Videographer:
20

21                   MICHAEL HENRY
                     BUELL REALTIME REPORTING
22                   1325 Fourth Avenue, Suite 1840
                     Seattle, WA 98101
23                   (206) 287-9066
                     Info@BuellRealtime.com

24

25                        *   *   *   *   *

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 3 of 15

Page 14

1    Q.  If -- if the courts in Oregon ultimately

2    determine that Measure 114 is constitutional, will the

3    Oregon State Sheriffs' Association take any further

4    action to advise its members that Measure 114 is not

5    constitutional?

6        A.  I'm not sure I can answer that question

7    because it hasn't happened, and so the question isn't

8    before the board.

9        Q.  Are you personally aware of any sheriff's

10   office that intends to refuse to implement Measure 114

11   on the grounds that it is unconstitutional?

12       A.  I cannot answer that question.  I'm not aware.

13       Q.  Not aware.  Okay.

14           Has OSSA taken a position on whether

15   Measure 114 is constitutional under the Oregon

16   constitution?

17       A.  No.  That position statement was under the

18   federal constitution.

19       Q.  And I'm sorry to go backward for just a

20   moment, but, Sheriff Myers, just so I understand your

21   previous testimony, to your knowledge, you're not aware

22   of any sheriff's office that intends to refuse to

23   implement Measure 114 on the basis that it is

24   unconstitutional; correct?

25       A.  Yes, I'm not aware.

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 4 of 15

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 31

1      Q.   So who -- what kind of individuals -- what
2   roles of individuals are members of the permit agent
3   workgroup?
4      A.   Well, we thought it was important that
5   these -- the workgroup be made up of subject matter
6   experts.  So they're folks that will actually be doing
7   the job.
8           And so for OSSA, the representatives are civil
9   managers with CHL experience.  And they come from both
10  large, medium, and small sheriff's offices.
11          And on the chief side, we have kind of
12  similar -- there are records supervisors, although the
13  chiefs have no experience with issuing CHL.  We're
14  trying to get that kind of subject matter expert, that
15  level of individual that would be responsible for this
16  and/or has responsibilities for similar kind of
17  programs.
18     Q.   When you say "chiefs," you're referring to
19  the -- to Oregon police chiefs; correct?
20     A.   Yeah, the Chief's Association, yes.
21     Q.   Okay.
22          What is the status of the process map?
23     A.   We -- so that group has met probably about
24  four or five times.  They are to the point -- they're
25  very close to finishing their work product, which I

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                                    Jason J. Myers

                                                                              Page 32

1   just mentioned was a 22-page process that I have in

2   front of me.

3           It's very in-depth, because there are a lot of

4   steps and a lot of liability if any of those steps are

5   missteps.  So they are to the point where they are just

6   about ready to finalize their recommendation.

7       Q.  And who will that recommendation be made to?

8       A.  That recommendation will go to the OSSA and

9   OACP executive committees.

10      Q.  And do you expect those committees to vote on

11  the recommendation?

12      A.  Yes.  I'm sure there will be a discussion.

13  I'm sure that there will be questions.  There may be

14  even suggestions that items go back to the workgroup

15  for further detail or changes.  But I anticipate, in a

16  process like this, that will occur -- it's entirely up

17  to those bodies to determine and, you know, eventually

18  vote and approve whatever the recommendations are.

19      Q.  What is the effect of an approval by OSSA?

20      A.  Well, I think it's important to be consistent

21  throughout the state.  So having those two bodies

22  review the work and make sure that it meets the letter

23  intent of the measure and is applied consistently

24  across the state.  So I think having that oversight is

25  very important to ensure fairness to individuals that

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 6 of 15

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 39

1    will be shortly.

2          Q.   Got it.   And the second phase, you mentioned,

3    is approval.   That's just the discussion and

4    potentially voting with the OSSA and OACP executive

5    committees that we just discussed; correct?

6          A.   That is correct.

7          Q.   Has a -- will those committees discuss the

8    recommendation together or separately?

9          A.   My vision is to do it together.   I think

10   there's -- it's important for chiefs and sheriffs --

11   again, for consistency and working off the same sheet

12   of music -- that they have this discussion together and

13   make decisions together because they're equally married

14   to this, for lack of better words, in terms of the

15   process.   So, yes, that is my vision as to how to work

16   together.

17         Q.   Has that meeting been scheduled?

18         A.   It has not, because we're again -- as soon as

19   it's finalized, we will work to schedule that meeting

20   as soon as possible.

21         Q.   Okay.

22              And Phase III is implementation.   You

23   mentioned a few things that might need to occur there.

24   Two of them that I managed to scratch down were

25   training and technical assistance.

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 7 of 15

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 40

1      Are there other implementation items that --

2  or are there other items that go into implementation

3  other than training and technical assistance?

4      A.  Those are the two items.  I said information

5  sharing, education, training, and technical assistance.

6  It's the way I see it.  Because some offices -- some

7  sheriff's offices have experience with CHL.  It may be

8  a little easier.  And then you have agencies like

9  police departments that have no experience.  So it just

10 varies on their levels of sophistication or knowledge.

11     Q.  My understanding is that Measure 114 allows

12 sheriffs in local police departments to assign a

13 designee to carry out the responsibilities of

14 processing applications and issuing permits.

15     Has there been any discussion of either

16 sheriffs or police departments designating each other

17 as the permit agent for their jurisdiction perhaps

18 under some kind of cost-sharing agreement?

19     A.  Not at -- not at the association level that

20 I'm aware of.  I'm certain there's probably discussions

21 at the local level, but I cannot answer that because

22 I've not been privy to those conversations.

23     Q.  Okay.

24     Are you aware of any reason why a sheriff or

25 police department couldn't, if they reached an

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 8 of 15

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 45

1  have taken that online training; is that correct?

2      A.  That is correct.

3      Q.  So to go back to that in-person demonstration

4  component, what is the status of the workgroup's work

5  on that component of Measure 114?

6      A.  So the workgroup finalized its

7  recommendations, and we set a meeting that was going to

8  be held between both OSSA and the OACP executive

9  committees.  And that meeting was held a couple weeks

10 ago.

11         Unfortunately, the OACP's executive committee,

12 because of a foul-up in scheduling, wasn't able to

13 attend.  But we went ahead with that meeting because it

14 was in my declaration that it was going to happen.

15         And so the OSSA executive committee reviewed

16 the recommendations and had some items that they wanted

17 the workgroup to take a look at again and/or readdress.

18 And so those items were sent back to the workgroup,

19 which has met and addressed all of those issues and has

20 finalized their work product.

21         And so that one is very close.  The work

22 product is just being vetted.  It was captured by the

23 chair and put into the documents, and now that

24 information is being vetted right now.  And once that

25 is approved by the workgroup, that will be going before

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 9 of 15

Page 46

1    the joint OSSA and OACP executive committees.

2            I will note there are two, kind of, areas that

3    are outstanding that we -- they're difficult because

4    the measure didn't articulate on those items, but they

5    are very, very critically important.

6            Q.  Yeah.  What are those two areas?

7            A.  The first area is around proficiency, what

8    constitutes proficiency.  There's no indication in

9    there.  So if it takes a person two hours to take this

10   in-person demonstration, does that mean they're

11   proficient or not proficient?  It's subjective.

12           The other item is around individuals with

13   disabilities.  There is no -- the measure is silent on

14   ADA issues or any kind of ADA accommodations, and that

15   is an area of high litigation.  So that's an area that

16   is of great concern as we were putting this together.

17           What happens if we have a person that comes in

18   that, for all other purposes other than maybe they

19   don't have arms and can't handle a firearm but, for all

20   other purposes, could, under the Second Amendment,

21   purchase a firearm?  There's no other issues other than

22   they have an ADA issue.  How do we give that individual

23   an accommodation?

24           So those are the two outstanding areas that we

25   think create a little bit of -- or, in some cases, a

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 54

1     Q.  Got it.

2          And then the liability that the other

3     workgroup is considering, it concerns potentially

4     refusing to issue or issuing a permit to someone who

5     either may not be appropriate to have a permit or

6     should have received a permit; is that right?

7     A.  That's correct.

8     Q.  And are you aware of any other liabilities

9     that the workgroups have considered?

10    A.  No, I'm not.

11    Q.  Once the in-person demonstration proposal is

12    approved by OSSA and OACP's executive committees, what

13    will happen next with that recommendation?

14    A.  So it will be similar to the permit agent

15    workgroup.  It will kind of be that Phase III, which is

16    the implementation phase.  So that would be information

17    sharing, training, and technical assistance.

18         And that one is going to be both for law

19    enforcement and, depending on the potential for other

20    entities to be certified, what does that look like, and

21    how do we ensure that those entities receive the same

22    information, same training, same forms, and that

23    they're following those so that there's consistency?

24    Q.  And so the recommendation that is approved by

25    OSSA and OACP, executive committees would be

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 11 of 15

Page 55

1   promulgated to the members of each association along

2   with the training and information sharing that you

3   discussed; correct?

4        A.   That's correct.

5        Q.   And once OSSA's members have that

6   recommendation, they can then make a decision about who

7   and whether to certify in-person demonstration

8   trainers; correct?

9        A.   Yes.

10       Q.   Yeah.

11            And just so -- I think you have been clear

12  about this.  But just to make sure that the record is

13  clear, OSSA itself will not certify in-person

14  demonstration trainers; is that right?

15       A.   I don't know that because the boards haven't

16  met and made that determination.  It's probable that it

17  won't, but I can't say that because that is a decision

18  that will be at the board -- at the executive committee

19  level.

20       Q.   Got it.

21       A.   So you would be asking me to answer a question

22  that they're the ones that make that decision of

23  determination.

24       Q.   Sure.  Fair enough.

25            And do you know if the workgroup is going to

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 12 of 15

Page 75

1   decisions that are preventing enforcement were to run

2   out or be vacated by other courts and the measure were

3   to go into effect, what -- is there any contingency

4   plan for how a sheriff's office would accept an

5   application and issue a permit?

6        A.  Well, since it does -- since nothing exists,

7   there's really no contingency plan because I think our

8   organization and the chiefs are working towards that,

9   but the pieces aren't in play.  So I don't know how you

10  do something when you don't have all of the components

11  to be able to effectuate it.

12       Q.  The first two items you mentioned are things

13  that we have talked a lot about, that's the process and

14  the in-person demonstration.  And I understand the

15  workgroups are working on that.

16            And, eventually, you know, I think it's -- you

17  would say it's fair to assume that there will be an

18  approval on a recommendation at some point; correct?

19       A.  Yes.

20       Q.  Okay.

21            So does that mean that the only -- you know,

22  the only legal impediment to Measure 114's eventual

23  implementation is the FBI issue?

24       A.  Legal impediment?  Yeah, that's the aspect I

25  see.  There are other impediments as well, and I think

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 13 of 15

Page 76

1    <u>I've stated those.</u>

2        Q.   Yeah.  Got it.

3            And those other impediments are just, you

4    know, the process isn't complete and the in-person

5    demonstration is impossible to take at present;

6    correct?

7        A.   Yeah.  And the resources don't exist in terms

8    of personnel because there was no funding that came

9    along with this.  So that is another impediment.

10           And, honestly, I believe that if, as you were

11   saying, everything was vacated and it's all systems go,

12   even if everything was stood up and working, the system

13   will be overwhelmed.  Because I know from experience in

14   watching this happen, individuals are going to descend

15   on this.  And it's probably going to be numbers that

16   are astronomical.

17           And so without the system being stood up,

18   without the resources, it will -- the system will be

19   overwhelmed just by the sheer vast numbers.  And I

20   think it's at OSP as well.  They don't have the

21   resources either.  So it's system-wide.  The resources

22   are not there.  So even if you have the systems in

23   place, that is still an impediment as well.

24       Q.   Got it.

25           And we haven't talked about resources yet.

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 14 of 15

Page 94

C E R T I F I C A T E

1

2

STATE OF WASHINGTON

3

COUNTY OF PIERCE

4

5

6          I, Tia Reidt, a Certified Court Reporter in and

7    for the State of Washington, do hereby certify that the

8    foregoing transcript of the deposition of JASON J.

9    MYERS, having been duly sworn, on February 1, 2023, is

10   true and accurate to the best of my knowledge, skill and

11   ability.

12          Reading and signing was requested pursuant to

13   FRCP Rule 30(e).

14          IN WITNESS WHEREOF, I have hereunto set my hand

15   and seal this 6th day of February, 2023.

16

17

18                          

19                    /S/ Tia B. Reidt
                      Tia B. Reidt, RPR, CCR #22-0001
20                    NOTARY PUBLIC, State of
                      Washington.
21                    My commission expires
                      5/15/2026.

22

23

24

25

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

**Ex. 8- Dodd Decl.**

**Page 15 of 15**