Petitioner:
David Morello
17 N Maple ST. # 14
Northampton, MA, 01062
Interested private party

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| OREGON FIREARMS FEERATION *et al*, | Case No. 2:22-cv-01815-IM |
| Plaintiffs, | SUPPLEMENT & CORRECTIONS TO DOCUMENT NUMBER ECF [65] : AMICUS CURIAE MEMORANDUM |
| v. | IN OPPOSITION TO MEASURE 114 ORIGINALLY FILED AS DOC. NO. 49, CASE NO. 3:22-cv-1862 ON 12-28-2022 |
| BROWN *et al*, | |
| Defendants. | |

**PAGE 1- TITLE PAGE-SUPPLEMENT & CORRECTIONS TO MOTION TO APPEAR AS AMICUS CURIAE/FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

## Preamble

With leave granted to file, Petitioner first apologizes for typographical errors within document number "ECF [65]," and submits the corrections set out below to finally perfect the memorandum. Petitioner also wishes to expand upon specific arguments, for precision, and add final challenges opposing Measure 114, and prays the court grants leave to correct and amend his memorandum.

## Corrections to Document Number ECF [65]

### (Amicus Curiae Memo, Origin; 3:22-cv-1862, Doc. No. 49)

1. Petitioner Contact Information; corrected phone #: (413)-341-6199

2. On pg. 5, "Bruen v. New York" Should read: "NYSRPA v. Bruen, et al"

3. All instances of "U.S" should read: "U.S."

4. The last sentence on page 26 should read: "Petitioner demonstrated similar consent in Heller and Heller II."

5. The first phrase of line 6 on page 2 should read: "Authorities (Amended)..."

6. Line 5 of page 9 should read: "...and would act as a restraint on large segments of society, creating an armed class of ..."

7. The first phrase of Line 4 of page 6 should read: "Marbury v. Madison"

8. The first phrase of Appendix 1.5 (pg.30) should read " Massachusetts

Constitution, Article XVII:"

9. Line 5 of Appendix 12.2 should read: "subject for the same offence to be twice put in jeopardy"
10. Line 2 of the last paragraph of Pg. 10 should begin: "another right. Applicants..."

## Supplements to Document Number ECF [65]:

### Additional Authorities

597 U.S. 5, (2022),

OREGON STATE LAWS, 163.275, 164.075

TITLE 18, U.S.C., SECTIONS 241, 242

### History & Text

Petitioner wishes to expand his treatment of History and Text. On page 15 of Document Number ECF [65], the following cite is presented ""The surety statutes *presumed that individuals had a right to public carry* (emphasis added) that could be burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.'" 597 U.S. 50-51 (2022)" (Appendix 14.1).

Expanding on that cite, even one found likely to commit mayhem was not disarmed under the surety statutes described in the Bruen decision. Rather, one who was judged, via due process, to be likely to commit a crime was *not* disarmed, but instead was required to post a monetary bond as surety for his or her good behavior while carrying

firearms (Appendix 14.2). Also, the surety statutes only applied to *carrying in public*, not possession in the home or residence, or purchasing, transporting, and selling, etc. History and text does not even support disarming those found likely to commit mayhem, much less regular law-abiding people.

There is simply no history or text, federally or at any state or commonwealth level, that supports firearms permit and record keeping schemes during the formative years. In point of fact, history and text *only* supports the free exercise of the Second Amendment, without government interference, lest the state could produce actual evidence that an *individual* posed a *real* danger of committing some sort of mayhem. And even in those cases, the individual in question was *not* disarmed or even required to have a permit, but rather required to post a monetary bond *only if he were to carry in public (Appendix 14.3)*. If "history and text" is to be the guide, then permitting and records keeping schemes for firearms ownership have no relevant historic or textual precedent. The precedents that do exist clearly negate the idea of permits and registration of firearms.

### Backround Checks, Fingerprinting, Etc

Petitioner believes that backround checks and fingerprinting are also subject to the same challenges set out and described within the pages below, referred from Document Number ECF [65], that apply to firearms permits and registration, etc. The exact challenges applicable are; Charged a fee to exercise a right (pg. 8), Forced waivers of First, Second, Fourth, Fifth, and Fourteenth Amendment rights (pg. 10), Prior restraint

PAGE 4 – SUPPLEMENT TO MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114

(pg. 12), restricting ability to act (pg. 15), rights vs. privileges (pg. 17), subject to abuse (pg. 20), redundancy (pg. 24), and subject to infamous punishment (pg. 26). See the relevant pages cited above from document number ECF [65], for detailed explanations of these violations.

Petitioner sees a round dozen violations of rights just looking at the single issue of a backround check. Times two for permits, and add a dozen for registration, another for fingerprinting, and Measure 114 inflicts forty-eight violations of the U.S. Constitution upon the people, as described in the references above.

## Charges & Fees

Petitioner raised the issue of large segments of society affected by charges and fees. As a supplement, even if only one of the people are unable to afford the permit process, the permit process is unconstitutional. It is actually irrelevant the number of people who cannot afford the charges and fees. It only takes one financially stressed man or woman to render Measure 114 unconstitutional.

## Color of Law & Violations of Criminal Statutes

*1. Deprivation of Rights:* Section 242 of Title 18 U.S. Code makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. Defendants are attempting to engage in deprivation of the Second Amendment. (Appendix 16.0)

**PAGE 5 - SUPPLEMENT TO MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114 2.**

*Coercion:* (ORS 163.275). Requiring Permits, registration, backround checks and fingerprinting to exercise the Second Amendment coerces plaintiffs to waive rights, which plaintiffs have a legal right to abstain from. It also coerces abstinence of the exercise of the Second Amendment right with threats of prosecution extant. Defendants are attempting to engage in both listed Activities. (Appendix 15.1-15.1(a)).

3. *Extortion:* (ORS 164.075) Defendants are utilizing threats of prosecution and incarceration, or the withholding of a right to induce performance. (Appendix 16.2)

4. *Conspiracy:* (Section 241 of Title 18 U.S. Code) Defendants are working in conjunction to implement Measure 114. They are engaged in a conspiracy to deprive rights, to coerce the surrender of rights, to coerce the abstinence of the exercise of a right, and to induce performance in the form of fees and waivers of rights, via threats of removing a right, prosecution and incarceration. (Appendix 16.1)

## Supplemental Conclusion

Petitioner believes that he has demonstrated sufficient multitudes of violations, including infamously criminal activities, described in Document Number ECF [65], and in this supplement, to render unavoidable the declaration that requiring firearms permits, registration, fingerprinting, backround checks and fees to exercise the Second Amendment blatantly violates numerous amendments of the Constitution of the United

States, and of the State of Oregon, and that such practices are infamously criminal enterprises.

Petitioner is confident that he could continue identifying challenges nearly ad-infinitum, but now rests, and leaves further findings to the wisdom of the court.

Respectfully,
David Morello
Amicus Curiae Petitioner
Signed _____ Date 2/3/22

## Supplemental Appendix

**14.1:** 597 U.S. 5 (2022) *"Common-Law Offenses.* As during the colonial and founding periods, the common-law offenses of "affray" or going armed "to the terror of the people" continued to impose some limits on firearm carry in the antebellum period. But there is no evidence indicating that these common-law limitations impaired the right of the general population to peaceable public carry"

**14.2:** 597 U.S. 5 (2022) *"Surety Statutes.* In the mid-19th century, many jurisdictions began adopting laws that required certain individuals to post bond before carrying weapons in public. Contrary to respondents' position, these surety statutes in no way represented direct precursors to New York's proper-cause requirement. While New York presumes that individuals have no public carry right without a showing of heightened need, the surety statutes presumed that individuals had a right to public carry that could be burdened only if another could make out a specific showing of "reasonable cause to fear an injury, or breach of the peace." Mass. Rev. Stat., ch. 134, §16 (1836). Thus, unlike New York's regime, a showing of special need was required only after an individual was reasonably accused of intending to injure another or breach the peace. And, even then, proving special need simply avoided a fee."

**14.3:** 597 U.S. 5 (2022) "In sum, the historical evidence from antebellum America does demonstrate that the manner of public carry was subject to reasonable regulation, but none of these limitations on the right to bear arms operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose. Pp. 42–51."

**PAGE 7 – SUPPLEMENT & APPENDIX TO MOTION TO APPEAR AS AMICUS CURIAE AND TO FILE MEMORANDUM IN OPPOSITION TO MEASURE 114**

**15.1:** Coercion: Oregon State Law 163.275 (1)   A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled or induced or engages in conduct contrary to the compulsion or inducement, the actor or another will:

...(e) ...cause criminal charges to be instituted against the person;..."

**15.1(a):** ""Induce" means to influence or persuade [a] person to do something that person otherwise would not have done..." State v. Pedersen, 242 Or App 305, 255 P3d 556 (2011)

**16.0** TITLE 18, U.S.C., SECTION 242: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, ... shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

**16.1:** 18 U.S. Code § 241 - Conspiracy against rights "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death."

**16.2:** Oregon State Law 164.075 "A person commits the crime of extortion when the person compels or induces another person to either deliver property or services to the person or to a third person..."