**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Hannah K. Hoffman, OSB #183641**
HannahHoffman@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
(503) 295-3085

    Special Assistant Attorneys General for Defendants

**Ellen F. Rosenblum, OSB #753239**
Attorney General
**Brian Simmonds Marshall, OSB #196129**
Senior Assistant Attorney General
Brian.S.Marshall@doj.state.or.us
**DEPARTMENT OF JUSTICE**
100 SW Market Street
Portland, OR 97201
(971) 673-1880

    Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TINA KOTEK, et al.,<br><br>    Defendants,<br><br>and | Case No. 2:22-cv-01815-IM (lead case)<br>          3:22-cv-01859-IM (trailing case)<br>          3:22-cv-01862-IM (trailing case)<br>          3:22-cv-01869-IM (trailing case)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

| |
|---|
| OREGON ALLIANCE FOR GUN SAFETY, |
| Intervenor-Defendant. |
| MARK FITZ, et al., |
| Plaintiffs, |
| v. |
| ELLEN F. ROSENBLUM, et al., |
| Defendants. |
| KATERINA B. EYRE, et al., |
| Plaintiffs, |
| v. |
| ELLEN F. ROSENBLUM, et al., |
| Defendants, |
| DANIEL AZZOPARDI, et al., |
| Plaintiffs, |
| v. |
| ELLEN F. ROSENBLUM, et al., |
| Defendants. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

Introduction ........................................................................................................................... 2

Legal Standard ...................................................................................................................... 2

Argument ............................................................................................................................... 2

I.     Plaintiffs' facial and as-applied challenges to Measure 114's permit-to-purchase provisions should be rejected for the reasons stated in defendants' Motion for Summary Judgment and Trial Brief. ..................................... 2

     A.     The Supreme Court has already concluded that permit requirements are consistent with the nation's tradition of firearm regulation. .................................. 3

     B.     Measure 114's mental-health-review provision is consistent with *Bruen* and *Heller*. ............................................................................................................ 4

     C.     Measure 114 does not result in unconstitutional delays. ...................................... 6

     D.     Measure 114 does not and cannot require the FBI to complete a fingerprint background check. ................................................................................ 7

     E.     The fee to obtain a permit is constitutional. ........................................................... 8

     F.     OSP is prepared to implement Measure 114 now. .................................................. 8

     G.     Plaintiffs' have not brought claims against Measure 114's revisions to Oregon's existing background check laws and, in any event, any such challenge is unripe and the revisions are constitutional. ........................................ 9

II.     Measure 114's restrictions on large-capacity magazines does not violate the Second Amendment. ............................................................................................. 10

III.     The LCM restrictions do not violate the Takings Clause in the Fifth Amendment. .................................................................................................................. 12

IV.     Plaintiffs' Due Process challenge fails because Measure 114 is not retroactive and is not unconstitutionally vague. ............................................................ 13

Conclusion .......................................................................................................................... 15

## INTRODUCTION

For the reasons stated below and in defendants' Trial Brief and Motion for Summary Judgment and to Dismiss Plaintiffs' Facial and As-Applied Challenges to Implementation of Measure 114, the Court should deny plaintiffs' Motion for Summary Judgment.

## LEGAL STANDARD

Plaintiffs did not identify a legal standard applicable to motions for summary judgment. Defendants ask the Court to incorporate the standard in defendants' Motion for Summary Judgment. (ECF 163 at 6.)[1]

## ARGUMENT

The Court should deny plaintiffs' Motion for Summary Judgment ("Pls.' Mot. for Summ. J." (ECF 165)) for the reasons stated in defendants' prior briefing. Defendants addressed most of plaintiffs' summary judgment arguments in their own Motion for Summary Judgment against plaintiffs' Facial and As-Applied Challenges to Implementation of Measure 114 ("Defs.' Mot. for Summ. J." (ECF 163)) and Trial Brief ("Defs.' Tr. Br." (ECF 167)). Where defendants have already addressed plaintiffs' arguments, defendants will briefly identify plaintiffs' arguments and then point to and briefly summarize defendants' arguments from those other two briefs.

**I.  Plaintiffs' facial and as-applied challenges to Measure 114's permit-to-purchase provisions should be rejected for the reasons stated in defendants' Motion for Summary Judgment and Trial Brief.**

Three of plaintiffs' four complaints allege both facial and as-applied challenges to the permit-to-purchase provision of Measure 114. (Defs.' Tr. Br. at 11 (listing which complaints have which challenges).) Section I of plaintiffs' motion addresses the permit-to-purchase provisions and raises both facial and as-applied challenges. (Pls.' Mot. for Summ. J. at 23-40.) Plaintiffs' challenges are as follows: (1) all permit-to-purchase regulations are always

---

[1] All page numbers for Court-filed documents are to the Court's docket page numbers at the top of the page.

**Page 2 -  DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

unconstitutional (*id.* at 23-27, §§ I.A-B); (2) even if a permit-to-purchase regulation could be constitutional, Measure 114 is not constitutional because it creates, including through its mental-health-review provision, a "may issue" instead of a "shall issue" regime (*id.* at 27-29, § I.C); (3) allowing up to 30 days for a permit is always unconstitutional (*id.* at 31-32, § I.D(b)); (4) the permit agents will not issue a permit because the FBI will not run fingerprint checks (*id.* at 36-37, § I.D(c)(1)); (5) the fees for permits are unconstitutionally high (*id.* at 29-30, § I.D(a)); (6) the Oregon State Police ("OSP") will use Excel files instead of a database to process applications and does not have enough employees to process applications (*id.* at 35-36, § I.D(c)(1)); and (7) Measure 114's revisions to Oregon's existing background check statutes might result in unconstitutional delays.  (*Id.* at 37-38, § I.D.(c)(2).)  Each of these challenges fail.

      A.      **The Supreme Court has already concluded that permit requirements are consistent with the nation's tradition of firearm regulation.**

Defendants addressed the first challenge in their Trial Brief, Section I.A.  (Defs.' Tr. Br. at 15-20).  In short, this challenge is foreclosed by both *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022) and *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  In each, the Supreme Court held that licensing regimes are facially constitutional.  *See Bruen*, 142 S. Ct. at 2138 n.9; *id.* at 2162 (Kavanaugh, J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice."); *see also Heller*, 554 U.S. at 626 (stating the opinion did "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]").

Plaintiffs argue that the Court should treat permits to purchase firearms differently than permits to carry them.  But nothing in the text of the Second Amendment nor in the *Bruen* opinion suggests that result.  The policy justification that plaintiffs offer—that people at least

**Page 3 -**   **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

ought to be able to obtain guns even if they cannot carry them—is strange. They do not explain why people who are not fit to carry firearms must nevertheless be allowed to obtain them. It is also incongruous with *Bruen's* explanation that permitting regimes "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Bruen*, 142 S. Ct. at 2138 n.9. Furthermore, as defendants explained, the United States has a historical tradition of requiring permits and licenses to purchase or possess firearms.

> **B.     Measure 114's mental-health-review provision is consistent with *Bruen* and *Heller*.**

Defendants addressed plaintiffs' argument regarding the mental-health-review provision in their Motion for Summary Judgment (Defs.' Mot. Summ. J. at 16-17) and Trial Brief, Section I.B. (Defs.' Tr. Br. at 20-23). Measure 114's mental-health-review provision establishes an objective test. It is also nearly identical to Oregon's existing mental-health-review provision for concealed handgun licenses, which Oregon sheriffs—including plaintiffs in this litigation—already apply fairly and objectively. (*Id.*) Moreover, the *Bruen* Court cited and approved Oregon's concealed-license provision and other courts nationwide have approved similar provisions. 142 S. Ct. at 2138 n.9; see id. at 2123 n.1 (citing Oregon law).[2]

Plaintiffs further argue that Measure 114 is unconstitutional because it is a "may issue" instead of a "shall issue" regulation. They contend that Measure 114 is like the "suitability" statutes that the Supreme Court abrogated in *Bruen*. (Pls.' Mot. for Summ. J. at 27-29, § I.C.) But Measure 114 is nothing like the suitability statutes the Supreme Court abrogated. Suitability statutes require a permit agent to assess whether an applicant is "suitable" to possess a firearm,

---

[2] Plaintiffs contend that this Court should ignore as "dicta" the *Bruen* Court's express endorsement of Oregon's identical CHL statute. Not so, as the Ninth Circuit has explained: "Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold." *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014)(citation omitted).

**Page 4 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

without any guidance on what constitutes a suitable person. *See, e.g.*, Haw. Rev. Stat. 134-9 (limiting concealed carry licenses to applicants that "[a]ppear to be a suitable person to be so licensed").

Measure 114 contains no such unbounded terms. Rather, the Measure requires permit agents to assess whether an applicant "present[s] reasonable grounds" to conclude that the applicant is reasonably likely to be a danger to themselves, others, or the community at large. Measure 114 § 4(1)(b)(C). "Present[s] reasonable grounds" requires the permit agent to rely on tangible, external sources to make an objective decision. It does not permit arbitrary denials based on whim or appearance. Indeed, the *Bruen* Court included Oregon's CHL license statute, which contains the same requirement, in its list of state laws that do *not* "grant[] licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Bruen*, 142 S. Ct. at 2123 (2022).

Furthermore, Measure 114 provides a robust, evidence bound, judicial review process. If the applicant disagrees with the permit agent's decision, they may file an expedited appeal to the local circuit court, Measure 114 § 5(5), (8), and the circuit court must determine "whether the permit agent ha[d] reasonable grounds for denial." (*Id.* § 5(6).) The circuit court reviews the decision *de novo* (*id.* § 5(10)), and it examines the relevant factual record to assess the permit agent's decision. *See Concealed Handgun License for Stanley v. Myers*, 276 Or. App. 321, 332 (2016) (explaining review for identical CHL standard). This, of course, includes the right of the applicant "to present evidence." *Id.* In other words, Measure 114 does not establish a subjective, unbounded "suitability" standard; it requires permit agents to rely on a well-establish standard of dangerousness, based on objective facts, and it subjects their decision to expedited judicial review. As discussed in defendants' Trial Brief, Oregon's sheriffs, including Sheriff Pixley, who

**Page 5 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

is a plaintiff in this matter, use this well-established standard and objective evidence when making nearly identical determinations for CHL applicants. (Defs.' Tr. Br. at 21-22.)

      **C.**      **Measure 114 does not result in unconstitutional delays.**

Defendants addressed plaintiffs' challenge to wait times in their Trial Brief. (Defs.' Tr. Br. § II.B, 28-30.) In short, plaintiffs have not established any evidence that any permit applicant will experience a lengthy wait time to obtain a firearm, let alone that all applicants will. Measure 114 itself does not mandate any waiting period to obtain a permit. In fact, it sets a 30-day maximum for permit agents to issue permits and allows appeal to the circuit court for delays that stretch any longer. Measure 114 § 5(1). Plaintiffs' argument that Measure 114 will result in unconstitutional delays is speculation, which provides no basis to sustain a facial challenge. *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 866 (9th Cir. 2009), *aff'd sub nom. Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582 (2011) ("a speculative, hypothetical possibility does not provide an adequate basis to sustain a facial challenge").

In *Silvester v. Harris*, the Ninth Circuit addressed and upheld a more burdensome waiting period. 843 F.3d 816 (9th Cir. 2016). The state law at issue required that firearm purchasers wait a *minimum* of ten days for *each* firearm purchase. *Id.* at 818. The Ninth Circuit upheld the law, holding that it had a "very small" effect on the exercise of Second Amendment rights. *Id.* at 827. Here, Measure 114 contemplates that an applicant's application will be in process for a *maximum* of 30 days and will then have a five-year permit to purchase *unlimited* firearms. Plaintiffs respond that *Silvester* applied the intermediate scrutiny test that the Supreme Court abrogated in *Bruen*. (Pls.' Mot. for Summ. J. at 32.) But that misses the point. In *Bruen*, the Court noted the possibility that "lengthy wait times" for a permit could "deny ordinary citizens" their Second Amendment rights, but provided no additional guidance on what constituted a "lengthy wait time" in this context. 142 S. Ct. at 2138 n.9. *Bruen* thus does not disturb the

**Page 6 -**    **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Ninth Circuit conclusion that such a wait is a minimal burden, never mind support plaintiffs' position that such a wait will "deny ordinary citizens" their Second Amendment rights.

        **D.**        **Measure 114 does not and cannot require the FBI to complete a fingerprint background check.**

Defendants addressed plaintiffs' fingerprint-based background check argument in their Motion for Summary Judgment (Defs.' Mot. Summ. J. at 11-12) and Trial Brief. (Defs.' Tr. Br. at 27-28.) In short, plaintiffs are simply wrong; the plain text of Measure 114's § 4(1)(e) does not require the FBI to complete a criminal background check. OSP's other background checks will provide a basis to determine whether the applicant is qualified or disqualified, while the refusal of the FBI to conduct a fingerprint-based check provides no basis for a decision either way. The request by a permit agent, the determination by OSP, and the report from OSP to the permit agent are all possible despite the FBI's current refusal to conduct fingerprint-based background checks. Measure 114 § 4(1)(e). Further, plaintiffs' new speculation that permit agents will refuse issue the permit if OSP does not receive a report from the FBI (Pls.' Mot. Summ. J. at 37) is based on that same faulty reading of the statute; that Measure 114 requires the FBI to complete the background check. Plaintiffs have offered no evidence that permit agents would refuse to issue permits on this basis, nor did they allege this in their complaints. On the contrary, Sheriff Bowen made clear that if Measure 114 "goes into effect . . . I will do everything I possibly can to facilitate those steps needed to purchase a firearm." (Second Decl. of Becca Dodd ("2nd Dodd Decl."), Ex. 4, Bowen Dep. at 95:17-24 (ECF 164-4).)

Even if the Court determines that Measure 114 requires the FBI to run a criminal background check before a permit agent can issue a permit—a requirement that does not appear in the law's plain text—such a ruling would not invalidate Measure 114. An Oregon law cannot compel the FBI—a federal agency—to run background fingerprint checks, and any interpretation

**Page 7 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

that would impose such a requirement would create a legal nullity. *See Hughes v. State*, 314 Or. 1, 31 (1992) (unconstitutional legislative act is a nullity). Specifically, Measure 114 requires that any invalid or ineffective sections, subsections, sentences, or clauses be severed, rather than declaring the entire act invalid or unconstitutional. Measure 114 § 12. Accordingly, if the Court concludes that the law requires an FBI fingerprint check before a permit is issued, that requirement should be severed.

   **E. The fee to obtain a permit is constitutional.**

As explained in defendants' Trial Brief (Defs.' Tr. Br. at 24) and defendants' Motion for Summary Judgment (Defs.' Mot. for Summ. J at 18.), a modest fee for a permit to purchase an unlimited number of firearms is not unconstitutional, particularly as it reflects costs and is not a revenue generation fee. Alternatively, whether the fee is an unconstitutional hardship is a disputed issue of material fact and summary judgment therefore should be denied, especially as plaintiffs submitted no evidence as to what the fee will be or that the fee would be, much less whether such a fee would be unconstitutionally burdensome.

   **F. OSP is prepared to implement Measure 114 now.**

As defendants explained in their Trial Brief and Motion for Summary Judgment, OSP is ready to process applications immediately. (Decl. of Greg Scott ("Scott Decl."), Ex. 1 (Dep. of Wendy Landers ("Landers Dep.") at 14:20-21 ("we're ready to do it tomorrow"), 15:23-16:3 (confirming OSP is "ready and prepared to process applications . . . now"); Defs.' Tr. Br. at § II.A, 25-28; Defs.' Mot. for Summ. J. at 8-12.) Plaintiffs' assertion that OSP cannot implement Measure 114 because OSP has "no budget or authority" to hire necessary staff is untrue. (Pls.' Mot. for Summ. J. at 39.) OSP did not testify that they had no "authority" to hire staff; on the contrary, Ms. Landers was clear that OSP is "ready to open recruitments and immediately start hiring staff." (Landers Dep at 17:13-14.) And although OSP's budget has not

**Page 8 - DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

yet been approved by the legislature, it "does have money[]" and, because it is required to follow Measure 114, it "would start the recruitment process" if Measure 114 goes into effect and Oregonians begin to apply for permits in substantial numbers. (*Id.* at 19:2-6, 19:18-22.)

In addition, plaintiffs' contention that OSP's reliance on Microsoft Excel—one of the most popular, versatile, and well-known database programs in the world—is "obviously unworkable" is obviously unsupported: plaintiffs fail to identify a compelling reason why Excel cannot provide a platform to track permits. (Pls.' Mot. for Summ. J. at 14.) OSP's witness described how OSP plans to use an Excel spreadsheet in the early phase of Measure 114 implementation. (Landers Dep. at 21:14-22:9.) OSP's witness testified that this solution would be workable, and that OSP could consolidate permit information collected by different staff members into a single spreadsheet each day. (*Id.*)

### G.    Plaintiffs' have not brought claims against Measure 114's revisions to Oregon's existing background check laws and, in any event, any such challenge is unripe and the revisions are constitutional.

Plaintiffs have not challenged Measure 114's revisions to Oregon's existing background check statutes in their complaints. The complaints request that the Court find the law's "permitting provisions" unconstitutional, which are different in kind from the law's revisions to Oregon's existing background check provisions. (*Eyre* 1st Am. Compl. ¶ 98 (ECF 67); *OFF* 3rd Am. Compl. ¶ 133 (ECF 158)). That is, no claim in any complaint asks that the Court declare Measure 114's revisions to Oregon's background check statutes unconstitutional separate and apart from the law's permit-to-purchase provisions. And the revisions to Oregon's background check statutes can be implemented separately from the permit provisions.

In any event, plaintiffs cannot demonstrate that the revisions are unconstitutional. As this Court has already held, "'background checks,' like [Measure 114's revisions to Oregon's background check statutes], are constitutionally permissible." (1/5/2023 Order (ECF 70) at 5.)

**Page 9 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

And any claim that such checks will result in unconstitutional delays is speculative because the revisions are presently enjoined by the Harney County Circuit Court and have never gone into effect. Furthermore, as plaintiffs admit, OSP's existing background checks are approved automatically "approximately 40% of the time." (Pls.' Mot. for Summ. J. at 38.) Thus, plaintiffs have no evidence to show that the revisions will be implemented unconstitutionally in every instance, as required to mount a facial challenge. (Defs.' MSJ at 9 n.1.)

II.     **Measure 114's restrictions on large-capacity magazines does not violate the Second Amendment.**

Defendants address most of plaintiffs' arguments regarding large-capacity magazines ("LCMs") and the Second Amendment in their Trial Brief, which they incorporate herein.[3] (Defs.' Tr. Br. § III, 31-45.) As stated in that Brief, LCMs are not "Arms" and are not in common use for lawful purposes. (*Id*. at 32-36.) Furthermore, even if the Court concludes that they are, LCMs are a dramatic technological change and implicate new societal concerns. (*Id.* at 36-40.) Accordingly, the Court must evaluate whether restrictions on LCMs are consistent with this country's historical tradition of regulating dangerous weapons. For the reasons explained in defendants' Trial Brief, they are, and Measure 114's restrictions on LCMs pose a constitutionally comparable burden as other historic arms regulations.

Plaintiffs' new arguments are meritless. They contend that because fixed magazines are attached to a firearms, "[a] ban on fixed magazines is thus a ban on firearms themselves." (Pls.' Mot. for Summ. J. at 43.) But Measure 114 does not "ban" firearms containing fixed magazines. It merely requires that, to the extent such a fixed magazine constitutes a large-capacity magazine under the law, the magazine must be altered to accept ten or fewer rounds. Measure 114 §

---

[3] Defendants also incorporate, as cited and set forth in their Trial Brief, their expert declarations. (*See* ECF 116, 118-125.)

**Page 10 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

11(1)(d)(A). Notably, many fixed magazines are exempted from Measure 114 altogether because they are lever-action firearms with tubular magazines or use .22-caliber rimfire ammunition. *Id.* § 11(1)(d)(B)-(C). Regardless, plaintiffs do not identify a single firearm *anywhere* that has a fixed magazine that holds more than ten rounds and is not subject to one of Measure 114's exceptions, much less that any plaintiff owns such a hypothetical weapon. Plaintiffs' speculation about hypothetical, unidentified firearms does not support their facial challenge to Measure 114. *Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications" (quotation marks and citation omitted)). Moreover, no plaintiff has standing to raise this distinct challenge as no plaintiff has ever alleged or stated that they own a "fixed" LCM.

Plaintiffs also contend that the only historical arms regulation that the Supreme Court recognized in *Bruen* are restrictions on "dangerous and unusual" weapons and thus this is the *only* type of weapon that can ever be regulated consisted with the Second Amendment. (Pls.' Mot. for Summ. J. at 41-42.) But *Bruen* specifically instructed lower courts to assess new "historical analogies" when addressing Second Amendment challenges. 142 S.Ct. at 2132. The Court did not state or imply that it had elucidated the *only* category of firearm regulations consistent with history and tradition. Tellingly, no court has adopted plaintiffs' crabbed reading of *Bruen*. Regardless, there is a triable issue of material fact about whether LCMs are in common use for self-defense and thus not "dangerous and unusual." Plaintiffs' only evidence on this point is a hearsay survey from a non-witness—William English—that their own expert disavowed as unreliable. (Decl. of Harry Wilson Ex. 7 (ECF 175-7), Dep. of Gary Kleck at 76:8-12 ("I don't think you can rely on it.").) If this debunked survey is admissible at all (ECF

**Page 11 -  DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                JUDGMENT**

171), defendants will present evidence at trial—including testimony from plaintiffs' *own* witnesses—explaining why this survey does not establish anything.

**III.     The LCM restrictions do not violate the Takings Clause in the Fifth Amendment.**

Plaintiffs' argument concerning the Fifth Amendment fails to address what this Court has already stated, namely, that "property seized pursuant to the police power is not taken for public use and is not compensable under the Fifth Amendment." (Dec. 6, 2022 Op. and Order, ("TRO Order") (ECF 39) at 33.)  Plaintiffs instead elide this issue and focus instead on their amended pleadings that Measure 114's LCM restrictions are a regulatory taking.  (Pls.' Mot. for Summ. J. at 59.)  Plaintiffs' argument fails for the reasons explained in defendants' Trial Brief and elucidated by the Court.  (Defs.' Tr. Br. at 45-46.)

Plaintiffs add a new argument.  They assert that requiring licensed gun dealers to either make LCMs inoperative or sell them out-of-state is a "taking" under the Fifth Amendment because requiring a person to sell their physical property is a taking, according to *Black's Law Dictionary*.  (Pls.' Mot. for Summ. J. at 59.)  Plaintiffs' argument fails for a similar reason: The regulatory takings doctrine doesn't apply as a matter of law to this exercise of Oregon's police power over personal property.  But even if it did, plaintiffs are not deprived of all economically beneficial use of their property.  Magazines they currently own can be sold out of state, or they can be sold after being modified to comply with Measure 114's restrictions.  Measure 114 § 11(3).  If regulations for health and safety that resulted in diminishment in value of a business's equipment were always regulatory takings, then governments could never restrict the production and sale of any item the business had invested money into equipment to produce that item or had inventory of that item.  Plaintiffs' approach seeks to use the regulatory takings jurisprudence to create an end-run around the police powers of the state to criminally regulate the possession of certain items of personal property.

**Page 12 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                    JUDGMENT**

IV. **Plaintiffs' Due Process challenge fails because Measure 114 is not retroactive and is not unconstitutionally vague.**

Measure 114 is not retroactive. It does not punish past purchases, possession, or any acts that occurred before its effective date. Like other health and safety measures, it operates prospectively, as explained in defendants' Trial Brief. (Defs.' Tr. Br. at 48-49.) This Court already reached the same conclusion. (TRO Order at 37.) Plaintiffs have provided no argument as to how Measure 114 operates retroactively. (*See* Pls.' Mot. for Summ. J. at 63 (no explanation).) It is true that the Measure's restrictions will apply to magazines they acquired before the Measure's effective date. But the Measure does not punish them for any conduct prior to that date, it simply requires them to change their future conduct, either by modifying their magazines or by complying with the restrictions on using unmodified magazines acquired before the effective date.

Plaintiffs also advance a meritless void-for-vagueness challenge. (Pls.' Mot. for Summ. J. at 64-66.) Plaintiffs argue in their Motion for Summary Judgment that one of the exceptions to the LCM restrictions is unconstitutionally vague because Measure 114 does not define "ammunition" or "[p]ermanently alters" in Section 11(3)(a)(C).[4] (*Id*. at 64 (mis-citing provision as § 11(3)(c), which does not exist).) The first fatal problem with plaintiffs' argument is that they did not plead this claim. They alleged that a different provision of Measure 114 was vague, Section 11(1)(d). (*OFF* 3d Am. Compl. ¶ 166 (ECF 158); *Eyre* Am. Compl. ¶ 131 (ECF 67).)

---

[4] That section provides that "Subsection (2) of the section does not apply during the first 180 days following the effective date of this 2022 Act, with respect to: (a) A licensed gun dealer that within 180 days of the effective date of this 2022 Act: . . . (C) Permanently alters any large-capacity magazine in the gun dealer's inventory or custody so that it is not capable, upon alteration or in the future, of accepting more than 10 rounds of ammunition or permanently alter the magazine so it is no longer a[.]"

**Page 13 - DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Even if plaintiffs had pleaded that Section 11(3)(a)(C) is vague, their argument is unavailing. To prove a facial vagueness challenge, plaintiffs must establish that "no standard of conduct is specified at all," *i.e.*, that the challenged statute "'is impermissibly vague in *all* of its applications.'" *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1347 (9th Cir. 1984) (citations omitted; emphasis added). "As the Supreme Court has stated, 'under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws.'" *Id.* at 1346 (citation omitted). "This consideration limits the strong medicine of striking down statutes as facially vague." *Id.*

Plaintiffs have not made an argument that Section 11(3)(a)(C) is vague in all its applications, only that, at some hypothetical point in the future different sized ammunition may be developed that might possibly allow more rounds in existing 10-round cartridges. (Pls.' Mot. for Summ. J. at 64-65.) They also argue that the term "permanently alters" is vague because it is not clear whether that refers to any common owner of an LCM or to a "master gunsmith" with a "fully equipped machine shop[.]" (*Id*. at 65.) But the provision at issue is not so standardless as to be facially void in all applications.

Defendants responded to this argument in their Trial Brief. (Defs.' Tr. Br. at 48.) Moreover, such speculation about hypothetical future applications of Measure 114 is legally insufficient to state a facial challenge. *Hill*, 530 U.S. at 733 ("speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications" (quotation marks and citation omitted)). Nor does wild speculation support an as-applied challenge: "Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996).

**Page 14 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## CONCLUSION

For the reasons above and in defendants' other briefs, the Court should deny plaintiffs' Motion for Summary Judgment.

DATED: May 17, 2023.

        ELLEN ROSENBLUM
        ATTORNEY GENERAL
        FOR THE STATE OF OREGON

By: *s/ Harry B. Wilson*
      Harry B. Wilson, OSB #077214
      HarryWilson@MarkowitzHerbold.com
      Hannah K. Hoffman, OSB #183641
      HannahHoffman@MarkowitzHerbold.com
        *Special Assistant Attorneys General for Defendants*

      Brian Simmonds Marshall, OSB #196129
      brian.s.marshall@doj.state.or.us
        *Of Attorney for Defendants*

1450209