# Deposition of 30(b)(6) Wendy Landers

# Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)

# May 5, 2023



**206.287.9066 | 800.846.6989**
1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101
www.buellrealtime.com
email: info@buellrealtime.com



Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)　　30(b)(6) Wendy Landers

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

```
OREGON FIREARMS FEDERATION,)
INC.,                      )
                           )
        Plaintiffs,        )
                           )
     vs.                   )Case 2:22-cv-01815-IM
                           )     2:22-cv-01859-IM
TINA KOTEK, et al,         )     2:22-cv-01862-IM
                           )     2:22-cv-01869-IM
                           )
        Defendants.        )
```

DEPOSITION OF 30(b)(6) WENDY LANDERS

THE DEPOSITION OF WENDY LANDERS was taken as a witness on behalf of the Plaintiffs, pursuant to Federal Rules of Civil Procedure, at 12:15 p.m., Friday, the 5th of May 2023, at the offices of the Oregon State Police, 3565 Trelstad Avenue SE, in the City of Salem, County of Marion, State of Oregon, before Traci R. Moore, Professional Court Reporter in and for the State of Oregon.

BUELL REALTIME REPORTING, LLC
206.287.9066 | 800.846.6989

EX.1 Scott Decl.
Page 2 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM   Document 186-1   Filed 05/17/23   Page 3 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)     30(b)(6) Wendy Landers

Page 2

```
 1
 2                     APPEARANCES
 3
 4   FOR THE PLAINTIFF EYRE:
 5        JURISLAW LLP
          By:  Shawn M. Lindsay
 6        shawn@jurislawyer.com
          Three Centerpointe Drive
 7        Suite 160
          Lake Oswego, Oregon 97035
 8        (503) 986-1475
 9
     FOR THE PLAINTIFF OREGON FIREARMS FEDERATION:
10
          VAN NESS WILLIAMSON
11        By:  Leonard W. Williamson
          l.williamson@vwlp.com
12        960 Liberty Street SE
          Suite 100
13        Salem, Oregon 97302
          (503) 365-8800
14
15   FOR THE DEFENDANTS:
16        MARKOWITZ HERBOLD PC
          By: Harry B. Wilson
17        harrywilson@markowitzherbold.com
          1455 Southwest Broadway
18        Suite 1900
          Portland, Oregon 97201-1900
19
20   ALSO PRESENT:  Wendy Landers
21
22
23
24
25
```

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

EX.1 Scott Decl.
Page 3 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM   Document 186-1   Filed 05/17/23   Page 4 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)     30(b)(6) Wendy Landers

Page 3

```
 1              G E N E R A L   I N D E X
 2                      WITNESSES
 3   ALL WITNESSES:                              PAGE:
 4     Wendy Landers for Plaintiffs:
         Examination by MR. LINDSAY              4:8
 5
                         EXHIBITS
 6
     NO.:       DESCRIPTION:                     PAGE:
 7
     For Plaintiffs:
 8
     Exhibit
 9   118        State of Oregon Permit to
                Purchase Application:
 9              For Identification              6:24
10
11
...
25
```

BUELL REALTIME REPORTING, LLC
206.287.9066 | 800.846.6989

EX.1 Scott Decl.
Page 4 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM   Document 186-1   Filed 05/17/23   Page 5 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)                    30(b)(6) Wendy Landers

Page 14

1   agent through mail?
2        A.   Uh-huh.
3        Q.   Fax?
4        A.   Uh-huh.
5        Q.   Or hand delivery?
6        A.   Uh-huh.
7        Q.   Tell me how you would process this.
8   I'm assuming that you manually maybe scan it,
9   maybe suck the data off somehow?
10       A.   Right.
11       Q.   Tell me what that process looks like.
12       A.   Yeah.  So at this time we don't have a
13  system that we would use.  We have been very open
14  about that.  It would be a manual process.  We
15  would have staff reviewing the information and
16  then manually searching the same systems that we
17  would search for FICS background, as well as the
18  return they would get on that positive
19  identification for any record that exists.
20            Our plan at this time, and we're ready
21  to do it tomorrow if we are told to, would be to
22  have spreadsheets for tracking this information
23  and, frankly, keeping paper copies until we are
24  able to stand up a system.
25       Q.   So it sounds like that this might be

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

EX.1 Scott Decl.
Page 5 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)   30(b)(6) Wendy Landers

Page 15

1  given to a FICS Unit employee, that unit employee
2  would enter that manually into the FICS
3  background check application?
4       A.   We -- we would not use that
5  application.  We would need to stand up our own
6  system.  We
7  would -- but we would be using -- we would be
8  hitting the same databases that we hit for FICS.
9            So, we can access databases outside of
10 the FICS system as needed.  So, we access it
11 through what's called LEDS.  And so all of our
12 folks are LEDS certified, and they would get into
13 the LEDS system and query those databases.
14      Q.   When you say "stand up your own
15 system," what does that mean?
16      A.   So we would need to work with vendors,
17 probably go out for RFP and select a vendor to
18 build a permit to purchase software for us to
19 use.
20      Q.   Okay.  That sounds like that would take
21 some time?
22      A.   It would take some time.
23      Q.   Okay.  I think you just said, though,
24 that you are ready and prepared to process
25 applications --

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

EX.1 Scott Decl.
Page 6 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)                                    30(b)(6) Wendy Landers

Page 16

1    A.    Uh-huh.
2    Q.    -- now?
3    A.    Yes.
4    Q.    How would you do that before this
5 standing up of your own system?
6    A.    It would be a manual process.  It
7 would -- I envision an employee would have an
8 application and fingerprint, and they would be
9 sitting at their assigned area and accessing into
10 the LEDS database and entering the information
11 that they have in front of them.
12         And then reviewing those returns, much
13 like our FICS system does our FICS system returns
14 from databases, and it's all there for the FICS
15 employee to review.  And then they would be able
16 to make a determination or realize if they need
17 additional information in order to reach that
18 determination.
19    Q.    How long would that process take?
20    A.    It -- it depends, but I don't know that
21 I have an exact time, but I -- I have asked this
22 question of staff, and it sounds that it would
23 take anywhere from five to ten minutes to process
24 through those systems on a manual entry.
25    Q.    Meanwhile, background checks are going

BUELL REALTIME REPORTING, LLC
206.287.9066 l 800.846.6989

EX.1 Scott Decl.
Page 7 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM   Document 186-1   Filed 05/17/23   Page 8 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)                    30(b)(6) Wendy Landers

Page 17

1   on?
2       A.   Uh-huh.
3       Q.   Regular background checks.  So, this is
4   an additional major assignment given to the
5   FICS Unit?
6       A.   Correct.
7       Q.   How would you prioritize to purchase
8   applications compared to background check
9   requests?
10      A.   So, if Ballot Measure 114 were to come
11  to fruition tomorrow, we would immediately work
12  on recruitment.  We've already drafted a position
13  description.  We're ready to open recruitments
14  and immediately start hiring staff so that we can
15  fit the need.
16      Q.   Is this in addition to the 30 employees
17  that you currently have --
18      A.   Yes.
19      Q.   -- allocated, and the 17?
20      A.   Yes, that would be in addition.
21      Q.   So, have you received budget for this
22  additional staff or --
23      A.   No, we have not.
24      Q.   How many staff would you intend to
25  recruit?

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

EX.1 Scott Decl.
Page 8 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM    Document 186-1    Filed 05/17/23    Page 9 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)    30(b)(6) Wendy Landers

Page 19

1    A.    Absolutely, yes.
2    Q.    And you have the budgeting for that?
3    A.    We have not been given the budget, but
4    we would need to uphold the law.  And the law
5    would say that's something we're responsible for,
6    so we would start the recruitment process.
7    Q.    Do you have surplus to cover those
8    labor costs?
9    A.    I don't know that I could answer that
10   question.  That would be a question that I need
11   to speak with my budget folks.
12   Q.    Who is that that would be able to
13   answer that question?
14   A.    I would probably lean towards Jenny
15   Cribbs (phonetic).  She's our CFO.
16   Q.    Of the Oregon State Police?
17   A.    Uh-huh.
18   Q.    You don't know whether you have surplus
19   dollars to cover those labor costs?
20   A.    We do have -- we do have moneys, but I
21   wouldn't be able to speak to what that looks like
22   exactly.
23   Q.    That would take a little while to
24   recruit and train some staff, correct?
25   A.    That is a correct statement.

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

EX.1 Scott Decl.
Page 9 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM   Document 186-1   Filed 05/17/23   Page 10 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)  30(b)(6) Wendy Landers

Page 21

1  Z drive at this moment, but we would work with IT
2  immediately to find the most ideal spot to hold
3  that sort of data.
4      Q.  It would be one master file or multiple
5  copies?
6      A.  It would be one master that I envision
7  would have a backup daily that we could go to if
8  something were to happen.
9      Q.  Who would have access to that file?
10     A.  So, that would be managers or
11 supervisors that are working in the permit to
12 purchase program, as well as the staff that would
13 need the information.
14     Q.  And so multiple staff would be entering
15 information simultaneously on that Excel file?
16     A.  It could be.  It could be a situation
17 like that, yes.  I -- I have thought about, you
18 know, how do we do this?
19         It could be that we have -- everybody
20 has their own and it's submitted to the -- excuse
21 me -- to the manager or supervisor who then
22 uploads everything into the master folder that
23 everyone could then look at, because I understand
24 that it would probably be difficult for an Excel
25 spreadsheet to be opened by 20 people at the same

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

EX.1 Scott Decl.
Page 10 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM   Document 186-1   Filed 05/17/23   Page 11 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)                    30(b)(6) Wendy Landers

Page 22

1  time entering data.
2       Q.   So, it could be that 20 different
3  employees have their own Excel file on their
4  individual computer system?
5       A.   Uh-huh.
6       Q.   And what I'm hearing is that somebody
7  would gather those files and consolidate them
8  somehow?
9       A.   Yes.
10      Q.   It sounds like a lot of manual
11 inputting?
12      A.   Yeah, it would be.
13      Q.   On those individual employee computer
14 work stations or on the master Z drive, what
15 administrative safeguards would there be?
16      A.   Again, we would work with our IT to
17 find the best way to protect the data and make
18 sure that we are maintaining the data.
19      Q.   That hasn't been done today?
20      A.   That has not been done today, but I
21 don't think that's a heavy lift for us to do.
22      Q.   The Excel spreadsheet doesn't exist
23 today?
24      A.   We have the Excel spreadsheet, but
25 there's no data.

BUELL REALTIME REPORTING, LLC
206.287.9066  l  800.846.6989

EX.1 Scott Decl.
Page 11 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65

Case 2:22-cv-01815-IM   Document 186-1   Filed 05/17/23   Page 12 of 12

Oregon Firearms Federation, Inc., et al. v. Kotek, et al. (Consolidated)   30(b)(6) Wendy Landers

Page 42

CERTIFICATE

I, Traci R. Moore, a Professional Court Reporter and Notary Public, hereby certify that said witness, WENDY LANDERS, personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were transcribed through computer-aided transcription, under my direction; and that the foregoing pages constitute a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof.

I further certify that review of the transcript was not requested.

Witness my hand at Portland, Oregon, this 12th day of May, 2023.

_____

Traci R. Moore

Professional Court Reporter

BUELL REALTIME REPORTING, LLC
206.287.9066 | 800.846.6989

EX.1 Scott Decl.
Page 12 of 12
b2da3fbe-1f38-4199-8e32-4bec4d3aac65