**Steven C. Berman** OSB No. 951769
Email:  sberman@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:      (503) 227-6840

**William J. Taylor, Jr.** (*pro hac vice* application forthcoming)
Email:  wtaylor@everytown.org
EVERYTOWN LAW
450 Lexington Ave, P.O. Box 4184
New York, NY 10017
Telephone:     (646) 324-8124
Facsimile:      (917) 410-6932

*Attorneys for Everytown for Gun Safety Action Fund*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al., | Case No. 2:22-cv-01815-IM *(Lead Case)* |
| Plaintiffs, | Case No. 3:22-cv-01859-IM *(Trailing Case)* |
| | Case No. 3:22-cv-01862-IM *(Trailing Case)* |
| v. | Case No. 3:22-cv-01869-IM *(Trailing Case)* |
| TINA KOTEK, et al., | |
| Defendants. | ***AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS** |
| MARK FITZ, et al., | |
| Plaintiffs, | |
| v. | |
| ELLEN F. ROSENBLUM, et al., | |
| Defendants. | |

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 1 of 25

KATERINA B. EYRE, et al.,

Plaintiffs,

v.

ELLEN F. ROSENBLUM, et al.,

Defendants.

DANIEL AZZOPARDI, et al.,

Plaintiffs,

v.

ELLEN F. ROSENBLUM, et al.,

Defendants.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 2 of 25

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ............................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 2

ARGUMENT .................................................................................................................................. 3

    I.      Plaintiffs Have Not Met Their Burden To Establish that the Second
            Amendment's Plain Text Covers Their Conduct and Will Not Be Able to Do
            So at Trial ............................................................................................................ 3

    II.     The Correct Historical Analysis Centers on the Reconstruction Era and
            Encompasses Consistent 20th-Century Regulations ............................................ 7

    III.    This Court Should Reject Any Effort To Dismiss the State's Historical
            Analogues as "Outliers" ..................................................................................... 16

CONCLUSION ............................................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
  910 F.3d 106 (3d Cir. 2018) ................................................................................ 2

*Barnett v. Raoul*, No. 3:23-cv-00209,
  Dkt. 54 (S.D. Ill. Mar. 16, 2023) ......................................................................... 1

*Bevis v. City of Naperville, Ill.*,
  No. 1:22-cv-04775, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023), *appeal docketed*, No.
  23-1353 (7th Cir. Feb. 23, 2023) ......................................................................... 15

*Bevis v. City of Naperville, Ill.*,
  No. 23-1353, 2023 WL 3190470 (7th Cir. Apr. 18, 2023) ................................. 1, 15

*Bevis v. City of Naperville, Ill.*,
  No. 23-1353, Dkt. 89 (7th Cir. May 10, 2023) ...................................................... 1

*Boland v. Bonta*,
  No. 23-55276, Dkt. 19 (9th Cir. May 5, 2023) ...................................................... 1

*Davenport v. Wash. Educ. Ass'n*,
  551 U.S. 177 (2007) .............................................................................................. 18

*Defense Distributed v. Bonta*,
  No. 2:22-cv-06200, 2022 WL 15524977 (C.D. Cal. Oct. 21, 2022), *adopted by* 2022
  WL 15524983 (C.D. Cal. Oct. 24, 2022) ............................................................... 6

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Security*,
  No. 1:22-cv-00951, 2023 WL 2655150 (D. Del. Mar. 27, 2023), *appeal docketed*, No.
  23-1633 (3d Cir. Apr. 7, 2023) ............................................................................ 14

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .................................................................................... *passim*

*Dobbs v. Jackson Women's Health Org.*,
  142 S. Ct. 2228 (2022) ......................................................................................... 18

*Drummond v. Robinson Twp.*,
  9 F.4th 217 (3d Cir. 2021) ..................................................................................... 8

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ...................................................................... 7, 8, 12

*Friedman v. City of Highland Park*,
  784 F.3d 406 (7th Cir. 2015) ............................................................................... 18

## TABLE OF AUTHORITIES—Continued

*Gould v. Morgan*,
  907 F.3d 659 (1st Cir. 2018) ........................................................................ 7

*Hanson v. District of Columbia*,
  No. 1:22-cv-02256, 2023 WL 3019777 (D.D.C. Apr. 20, 2023) ................................. 6, 14, 15

*Heller v. District of Columbia* (*Heller II*),
  670 F.3d 1244 (D.C. Cir. 2011) ............................................................... 13

*Herrera v. Raoul*,
  No. 1:23-cv-00532, 2023 WL 3074799 (N.D. Ill. Apr. 25, 2023), *appeal docketed*, No.
  23-1793 (7th Cir. Apr. 26, 2023) .......................................................... 14, 15

*Kanter v. Barr*,
  919 F.3d 437 (7th Cir. 2019) ..................................................................... 9

*Kennedy v. Bremerton School District*,
  142 S. Ct. 2407 (2022) ............................................................................ 4

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ............................................................... 5, 7, 11, 12, 18

*Nat'l Ass'n for Gun Rts. v. City of Naperville, Ill.*,
  No. 22A948, 2023 WL 3485430 (U.S. May 17, 2023) ............................................ 15

*Nat'l Ass'n for Gun Rts. v. City of San Jose*,
  No. 5:22-cv-00501, 2022 WL 3083715 (N.D. Cal. Aug. 3, 2022) ............................... 4

*Nat'l Rifle Ass'n v. Bondi*,
  61 F.4th 1317 (11th Cir. 2023), *pet'n for reh'g en banc filed* (Mar. 30, 2023) ......................... 7

*New York State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) ..................................................................... *passim*

*Ocean State Tactical, LLC v. Rhode Island*,
  No. 1:22-cv-00246, 2022 WL 17721175 (D.R.I. Dec. 14, 2022), *appeal docketed*, No.
  23-1072 (1st Cir. Jan. 18, 2023) ..................................................... 3, 4, 5, 6

*Rehaif v. United States*,
  139 S. Ct. 2191 (2019) ............................................................................ 2

*Rupp v. Becerra*,
  401 F. Supp. 3d 978 (C.D. Cal. 2019) *vacated and remanded*, No. 19-56004, 2022 WL
  2382319 (9th Cir. June 28, 2022) ............................................................... 2

## TABLE OF AUTHORITIES—Continued

*United States v. Greeno*,
   679 F.3d 510 (6th Cir. 2012) ................................................................... 8

*United States v. Meyer*,
   No. 4:22-cr-10012, 2023 WL 3318492 (S.D. Fla. May 9, 2023) ........................................... 11

*United States v. Rowson*,
   No. 1:22-cr-00310, 2023 WL 431037 (S.D.N.Y. Jan. 27, 2023) ......................................... 9, 14

*United States v. Tilotta*,
   No. 3:19-cr-04768, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) ........................................... 6

**Other Authorities**

Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* (1998) ............................... 10

Brief for Independent Institute as Amicus Curiae, *New York State Rifle & Pistol Ass'n v. Bruen*, No. 20-843 (U.S.) ........................................................................... 12, 13, 17

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205 (2018) ........................ 12, 16, 17

Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation* (Jan. 15, 2021), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917 .................................. 11

Kurt T. Lash, *Respeaking the Bill of Rights: A New Doctrine of Incorporation*, 97 Ind. L.J. 1439 (2022) ........................................................................... 9

Transcript of Oral Argument, *New York State Rifle & Pistol Ass'n v. Bruen*, No. 20-843 (U.S. Nov. 3, 2021) ........................................................................... 13

## INTEREST OF AMICUS CURIAE

Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund; hereafter "Everytown") is the nation's largest gun-violence-prevention organization, with nearly ten million supporters across the country, including almost 200,000 in Oregon. Everytown was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after a gunman murdered twenty children and six adults at an elementary school in Newtown, Connecticut. The mayors of 12 Oregon cities are members of Mayors Against Illegal Guns. Everytown also includes a large network of gun-violence survivors who are empowered to share their stories and advocate for responsible gun laws, as well as a national movement of high school and college students working to end gun violence.[1]

Over the past several years, Everytown has devoted substantial resources to researching and developing expertise in historical firearms legislation. Everytown has drawn on that expertise to file more than 60 amicus briefs in Second Amendment and other firearms cases, offering historical and doctrinal analysis, as well as social science and public policy research, that might otherwise be overlooked. *See, e.g.*, *Bevis v. City of Naperville, Ill.*, No. 23-1353, Dkt. 89 (7th Cir. May 10, 2023); *Boland v. Bonta*, No. 23-55276, Dkt. 19 (9th Cir. May 5, 2023); *Barnett v. Raoul*, No. 3:23-cv-00209, Dkt. 54 (S.D. Ill. Mar. 16, 2023). Several courts have expressly relied on Everytown's amicus briefs in deciding Second Amendment and other

---

[1] No party's counsel authored this brief in whole or part and, apart from Everytown, no person contributed money to fund its preparation or submission.

Page 1 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

firearms cases. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 112 n.8 (3d Cir. 2018); *Rupp v. Becerra*, 401 F. Supp. 3d 978, 991-92, 992 n.11 (C.D. Cal. 2019), *vacated and remanded*, No. 19-56004, 2022 WL 2382319 (9th Cir. June 28, 2022); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2210 n.4, 2211 n.7 (2019) (Alito, J., dissenting).

## INTRODUCTION AND SUMMARY OF ARGUMENT

The challenged provisions of Oregon Ballot Measure 114—both (i) its restrictions on large-capacity magazines and (ii) its requirement of a permit to purchase firearms—are constitutional under the approach to Second Amendment cases established in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), for the reasons set out in Defendants' Trial Brief, Dkt. 167 (May 15, 2023) ("State Trial Br."), and Intervenor-Defendant Oregon Alliance for Gun Safety's Trial Brief, Dkt. 176 (May 15, 2023) ("Alliance Trial Br.").[2] Everytown submits this amicus brief to expand on three methodological points. *First*, on the initial, textual inquiry of the *Bruen* framework, Plaintiffs have the burden, and they have not met that burden, nor will they be able to do so at trial. *Second*, in applying the historical inquiry of the *Bruen* framework—asking whether the regulation is "consistent with the Nation's historical tradition of firearm regulation," 142 S. Ct. at 2130—the Court should center its analysis on 1868, when the Fourteenth Amendment was ratified, not 1791. Moreover, 1868 is not a cutoff; examining "legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is also "a critical tool of constitutional interpretation." *District of*

---

[2] This amicus brief addresses only some aspects of Plaintiffs' Second Amendment claims, with a particular focus on Measure 114's large-capacity magazine restrictions. The Court should deny Plaintiffs' motion for summary judgment for the reasons set out in Defendants' Response to Plaintiffs' Motion for Summary Judgment, Dkt. 185 (May 17, 2023), and should enter judgment for Defendants after trial for the reasons that the State and the Alliance have set out in their trial briefs and that the evidence will demonstrate at trial.

*Columbia v. Heller*, 554 U.S. 570, 605 (2008) (second emphasis added). And, as *Bruen* instructs, where, as here, the challenged law implicates "unprecedented societal concerns or dramatic technological changes," the Court should take "a more nuanced approach" to the historical inquiry. 142 S. Ct. at 2132. *Third*, *Bruen*'s analysis reveals that a small number of laws can be sufficient to establish this nation's tradition of firearm regulation, at least so long as there is not overwhelming affirmative evidence of an enduring tradition to the contrary. Although not directly implicated here, given the robust historical record before the Court we highlight that point in case the Court chooses to address it.

## ARGUMENT

**I.    Plaintiffs Have Not Met Their Burden To Establish that the Second Amendment's Plain Text Covers Their Conduct and Will Not Be Able to Do So at Trial**

*Bruen*'s framework requires both a textual inquiry and a historical inquiry. A court first must ask whether "the Second Amendment's plain text covers an individual's conduct." 142 S. Ct. at 2129-30.[3] If so, the court then moves on to ask whether the government has shown that its regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. *See generally id.* at 2134-38 (separating application of test into Part III.A (text) and Part III.B (history)). If not, the inquiry ends: self-evidently, if people, weapons, or conduct are outside the Second Amendment's protection, then the government may regulate them without infringing the Second Amendment. *See, e.g.*, *Ocean State Tactical, LLC v. Rhode Island*, No. 1:22-cv-00246, 2022 WL 17721175, at *16 (D.R.I. Dec. 14, 2022) (denying plaintiffs' motion for preliminary injunction in Second Amendment challenge to large-capacity magazine prohibition, and noting

---

[3] *Bruen*'s analysis makes clear that the "people" challenging a gun regulation, the "weapons" they put at issue, and their "proposed course of conduct" must *all* fall within the Second Amendment's plain text. *See id.* at 2134.

Page 3 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 9 of 25

that "[b]ecause of its holding that [large-capacity magazines] are neither 'Arms' within the meaning of the Second Amendment's text, nor weapons of 'self-defense,' the Court need not investigate whether the [challenged law]'s restrictions are consistent with the regulations of history"), *appeal docketed*, No. 23-1072 (1st Cir. Jan. 18, 2023).

As this Court has recognized, *see* Dkt. 39 at 24, the burden to satisfy the initial, textual inquiry is on the plaintiff challenging a law. *Bruen* makes this clear by indicating that a presumption that the Constitution protects a plaintiff's conduct arises only *after* ("when" or "because") the textual inquiry is satisfied. *See* 142 S. Ct. at 2126, 2141 n.11. If the burden were on the government throughout—in what would be an unusual departure from ordinary litigation principles—the Court would have said that the presumption exists from the outset. Placing the initial burden on the plaintiff also accords with the Court's approach to other constitutional rights. For example, just a week after *Bruen*, the Court announced in *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022), that "[u]nder this Court's precedents, a plaintiff bears certain burdens to demonstrate an infringement of [their] rights under the [First Amendment]. If the plaintiff carries these burdens, the focus then shifts to the defendant to [justify] … its actions[.]" *Id.* at 2421. Accordingly, multiple other courts have correctly joined this Court in reading *Bruen* to place the burden on plaintiffs to establish that the Second Amendment's plain text covers their conduct. Dkt. 39 at 24; *see, e.g.*, *Ocean State Tactical*, 2022 WL 17721175, at *2 ("[T]he plaintiffs have failed in *their burden* to demonstrate that LCMs are 'Arms' within the meaning of the Second Amendment's text." (emphasis added)); *Nat'l Ass'n for Gun Rts. v. City of San Jose*, No. 5:22-cv-00501, 2022 WL 3083715, at *8 (N.D. Cal. Aug. 3, 2022) ("If the conduct at issue is covered by the text of the Second Amendment, the burden then *shifts* to the

Page 4 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 10 of 25

government to show why the regulation is consistent with the Nation's historical tradition of firearm regulation." (emphasis added)).

Here, as to the challenge to Measure 114's large-capacity magazine restrictions, Plaintiffs have failed to satisfy their burden under *Bruen*'s textual inquiry and will not be able to do so at trial, because they have failed to establish and cannot establish that large-capacity magazines are among the "arms" that the Second Amendment protects. To fall within the Second Amendment's text, *Heller* established that a weapon must not only be a "bearable arm" or "[w]eapon[] of offence," but must also be one "in common use" and "typically possessed by law-abiding citizens for lawful purposes" like self-defense. *Heller*, 554 U.S. at 581-82, 625-27.[4] *Bruen* further confirmed that the inquiry should focus specifically on common use for the lawful purpose of self-defense.[5] As the State and the Alliance explain, *see* State Trial Br. at 24-28;

---

[4] Specifically, *Heller* began with dictionary definitions of "arms," including as "[w]eapons of offence, or armour of defence" and observed that the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms." 554 U.S. at 581-82. But it then made clear that the Second Amendment applies only to weapons "in common use" and "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes" like self-defense. *Id.* at 625-27; *see also id.* at 627 (noting that "M-16 rifles and the like" may be banned). And, as the Supreme Court subsequently explained its ruling, *Heller* "held that the Second Amendment protects the right to keep and bear arms *for the purpose of self-defense.*" *McDonald v. City of Chicago*, 561 U.S. 742, 749-50 (2010) (emphasis added).

[5] *Bruen* did not spell out the textual inquiry with respect to "arms" in much detail, because New York did not dispute either that the "people" in that case ("two ordinary, law-abiding, adult citizens") or the arms they sought to carry ("handguns") fell within the Second Amendment's text. *See* 142 S. Ct. at 2134. But in applying that test, the Court's articulation—"[n]or does any party dispute that handguns are *weapons 'in common use' today for self-defense,*" *id.* (emphasis added)—indicated that the "arms" the Second Amendment covers are those commonly used for self-defense. This limitation coheres with the Supreme Court's repeated emphasis that "individual self-defense is the central component of the Second Amendment right." 142 S. Ct. at 2133 (cleaned up) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 599)); *see also id.* at 2132 (explaining that "the Second Amendment's definition of 'arms' … covers modern instruments that facilitate armed self-defense"); *Ocean State Tactical*, 2022 WL 17721175, at *11 (noting, in a Second Amendment challenge to a state law prohibiting large-capacity magazines, that the focus under

Page 5 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 11 of 25

Alliance Trial Br. at 5-17, Plaintiffs have not carried this burden here and will not be able to do so at trial.[6] That alone is enough to defeat Plaintiffs' claim. *See* Dkt. 39 at 24; *Ocean State Tactical*, 2022 WL 17721175, at *2, *11-15 (denying motion for preliminary injunction in challenge to large-capacity magazine law because "plaintiffs have failed in their burden to demonstrate that LCMs are 'Arms' within the meaning of the Second Amendment's text" and "have failed to prove that LCMs are weapons relating to self-defense"); *see also Hanson v. District of Columbia*, No. 1:22-cv-02256, 2023 WL 3019777, at *12 (D.D.C. Apr. 20, 2023) (concluding, under textual inquiry of *Bruen*'s framework, that "the Second Amendment does not cover LCMs because they are not typically possessed for self-defense").

In sum, because Plaintiffs have failed to carry their burden to establish that large-capacity magazines are protected by the Second Amendment's text and will be unable to carry that burden at trial, their Second Amendment challenge to Measure 114's large-capacity magazine restrictions fails and this Court should enter judgment for Defendants.[7]

---

*Bruen*'s plain-text inquiry "must be on whether the LCM Ban unduly impairs the right of an individual to engage in self-defense").

[6] With respect to any challenge to Measure 114's restrictions on the manufacture, importation, purchase, sale, or transfer of large-capacity magazines, the textual arguments here fall even further from the mark. *Cf. United States v. Tilotta*, No. 3:19-cr-04768, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022) (explaining that, "textually, the ordinary meaning of 'keep and bear' does not include 'sell or transfer'"); *Defense Distributed v. Bonta*, No. 2:22-cv-06200, 2022 WL 15524977, at *4 (C.D. Cal. Oct. 21, 2022) (concluding that the Second Amendment's plain text "quite-clearly" does not include any "implicit[]" right to "acquire and manufacture firearms" or "to purchase arms" (internal quotation marks omitted)), *adopted by* 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022).

[7] This approach to the textual inquiry would apply equally to Plaintiffs' challenge to Measure 114's permitting provision. But, as this Court has previously made clear, no extensive analysis is needed to uphold the permit-to-purchase law. *Bruen* controls, and "Measure 114's permit-to-purchase requirements track squarely with the objective criteria outlined in *Bruen*." Dkt. 39 at 32; *see* State Trial Br. at 6-9; Alliance Trial Br. at 22-25. Moreover, states remain free to impose "conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at

Page 6 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

II.    **The Correct Historical Analysis Centers on the Reconstruction Era and Encompasses Consistent 20th-Century Regulations**

If the Court proceeds to the second, historical inquiry, it should first conclude that the most relevant time period for that inquiry centers on 1868, when the Fourteenth Amendment was ratified and made the Second Amendment applicable to the states. And it should further conclude, particularly given the "dramatic technological changes" and "unprecedented societal concerns," *Bruen*, 142 S. Ct. at 2132, present in this case, that the historical inquiry also extends thereafter—including into the 20th century.

As to the choice between 1791 and 1868, the Eleventh Circuit recently explained that it is 1868 that controls. *See Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023) ("In short, because the Fourteenth Amendment is what *caused* the Second Amendment to apply to the States, the Reconstruction Era understanding of the right to bear arms—that is, the understanding that prevailed when the States adopted the Fourteenth Amendment—is what matters."), *pet'n for reh'g en banc filed* (Mar. 30, 2023). Several circuits reached that same conclusion in analyzing state and local laws under the Second Amendment at the first, historical step of the framework that applied prior to *Bruen*.[8] *See Gould*, 907 F.3d at 669 ("Because the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified)."); *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011) ("*McDonald* confirms

---

627; *see Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (expressly reaffirming that portion of *Heller*).

[8] Between *Heller* and *Bruen*, every federal court of appeals to address the issue concluded that analyzing Second Amendment claims should proceed in two steps: a historical step, in which courts examined whether the challenged law restricted conduct falling within the scope of the Second Amendment, as historically understood; and, if so, a scrutiny step, where courts examined the fit between the government's interest and the challenged law, usually under intermediate scrutiny. *See Bruen*, 142 S. Ct. at 2126-27; *Gould v. Morgan*, 907 F.3d 659, 668 (1st Cir. 2018) (citing cases), *criticized by Bruen*, 142 S. Ct. at 2124, 2126-27.

Page 7 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

Exhibit A
Page 13 of 25

that if the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified."); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (following *Ezell*); *see also Drummond v. Robinson Twp.*, 9 F.4th 217, 227 (3d Cir. 2021) ("[T]he question is if the Second *and Fourteenth* Amendments' ratifiers approved [the challenged] regulations …." (emphasis added)).

 *Bruen* does not alter that conclusion. The Supreme Court expressly left open the question "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868"—as opposed to 1791, when the Second Amendment was ratified—"when defining its scope." *Bruen*, 142 S. Ct. at 2138 (explaining that it did not need to resolve issue because public understanding "for all relevant purposes" in the case before it was the same in 1791 and 1868). Moreover, although *Bruen* disapproved the second, scrutiny-based step of the predominant framework lower courts had applied, it declared that "[s]tep one of" that framework "is broadly consistent with *Heller*." *Id.* at 2127. Accordingly, the step-one analyses in the cases just cited remain, as a general matter, good law.

 For the reasons set out by the State and the Alliance, and as the evidence will demonstrate at trial, this Court can uphold Measure 114's restrictions on large-capacity magazines under a historical analysis without deciding whether it should focus that analysis on the period around 1791 or the period around 1868. *See* State Trial Br. at 28-37; Alliance Trial Br.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

at 17-19.[9] But if this Court prefers to settle the issue the Supreme Court left open, it should conclude that 1868 is the correct focus.[10]

To begin with, in a case involving a state law, focusing on 1868 is the only way to answer the originalist question: How did the people understand the right at the time of its adoption? There was no right to keep and bear arms constraining the states under the U.S. Constitution until 1868; as *Bruen* observed, a state "is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." 142 S. Ct. at 2137. Thus, when the people chose to extend the Bill of Rights to the states in 1868, *their* understanding of the scope of each right should control the originalist analysis today. In a case against a state, to elevate a founding-era understanding of the right over the Reconstruction-era understanding would be to reject what the people understood the right to be at the time they gave it effect.

---

[9] Even if this Court were to focus on 1791 and conclude that history left the Second Amendment's meaning at that time unclear (contrary to the State's evidence), it should rely on 19th-century and 20th-century history to clarify that meaning. *See, e.g.*, State Trial Br. at 34-35; Dkt. 39 at 22 (finding that 20th-century regulations "confirm[] earlier historical trends offered by Defendants of legislative efforts to ban weapons that 'were developed with a focus on military applications and supplying military needs,' 'spread to ... civilian markets and use,' and then became commonly used for criminality rather than self-defense"); *infra* pp. 12-15.

[10] As the State has noted, given that "*Bruen* expressly allows states to enact shall-issue permit regimes that 'are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens,'" State Trial Br. at 7, this Court should uphold Measure 114's permit-to-purchase provision without undertaking any separate historical analysis at all. *Id.* at 6-9; *see* Alliance Tr. Br. at 22-25. Shall-issue regimes, as another district court recently explained, "implicitly reflect[] the longstanding practice of disqualifying categories of persons based on a shared characteristic[] indicative of unsuitability to possess firearms (that is, dangerousness)." *United States v. Rowson*, No. 1:22-cr-00310, 2023 WL 431037, at *22 n.23 (S.D.N.Y. Jan. 27, 2023); *see also Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting) ("History is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns."); State Tr. Br. at 9 ("[T]he historical record confirms that permit requirements are consistent with the nation's historic tradition of firearm regulation.")

Page 9 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

Exhibit A
Page 15 of 25

To be sure, if the public understanding of the Bill of Rights changed between 1791 and 1868, then "[o]riginalists seem," at first glance, to be "forced to either abandon originalism or accept a world in which we have two Bills of Rights, one applicable against the federal government and invested with 1791 meanings and one incorporated against the states and invested with 1868 meanings." Kurt T. Lash, *Respeaking the Bill of Rights: A New Doctrine of Incorporation*, 97 Ind. L.J. 1439, 1441 (2022). But *Bruen* rejected the possibility of different standards for the state and federal governments. *Bruen*, 142 S. Ct. at 2137 ("[W]e have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government."). Accordingly, originalists must justify applying either the 1868 understanding or the 1791 understanding (where they conflict) to all levels of government.

Existing doctrine does not resolve this choice between 1791 and 1868: *Bruen* noted prior decisions that had "assumed" that the scope for both state and federal governments "is pegged to the public understanding … in 1791." *Id*. But if the majority believed those decisions controlled the issue, it would have said so. Instead, the Court expressly left open the question whether 1868 or 1791 is the relevant focus, and pointed to "ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government)." *Id.* at 2138. And the Court then cited two scholars who support the 1868 view, Professors Akhil Amar and Kurt Lash, and none who supports the 1791 view. *See id.* (citing Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* xiv, 223, 243 (1998), and Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation*

Page 10 -   *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
          IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
          AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 16 of 25

(Jan. 15, 2021) (manuscript, at 2), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917
(now published at 97 Ind. L.J. 1439)).[11]

On Professor Amar's account, when the Fourteenth Amendment was ratified, then-
contemporary understandings of incorporated rights could transform their meaning not only
against the states, but also as to the federal government.[12] More recently, Professor Lash wrote—
as quoted in *Bruen*—"When the people adopted the Fourteenth Amendment into existence, they
readopted the original Bill of Rights, and did so in a manner that invested those original 1791
texts with new 1868 meanings." Lash, manuscript, at 2. On this view, too, 1868 meanings bind
both the state and federal governments.

There is good reason for this to be the leading originalist view: Insisting that the 1791
understanding should apply against states and localities would not make sense in light of the
Supreme Court's lengthy analysis in *McDonald* of the understanding of the right to keep and
bear arms around 1868. *See* 561 U.S. at 770-78 (plurality opinion); *id.* at 826-38 (Thomas, J.,
concurring in part and concurring in the judgment). It would be extraordinary if the public
understanding of the right in 1868 were so central to *whether* the right was incorporated against
the states, but irrelevant to *what* right was incorporated. That is presumably why the Seventh

---

[11] *See also, e.g.*, *United States v. Meyer*, No. 4:22-cr-10012, 2023 WL 3318492, at *2 n.4
(S.D. Fla. May 9, 2023) (noting that "Justice Thomas, writing for the majority in *Bruen*, signaled
an openness to the feedback-effect theory of the Fourteenth Amendment").

[12] *See* Amar, *The Bill of Rights*, at xiv (account is "attentive to the possibility" that a
"particular principle in the Bill of Rights may change its shape in the process of absorption into
the Fourteenth Amendment"); *id.* at 223 ("[W]hen we 'apply' the Bill of Rights against the states
today, we must first and foremost reflect on the meaning and spirit of the amendment of 1866,
not the Bill of 1789. … [I]n the very process of being absorbed into the Fourteenth Amendment,
various rights and freedoms of the original Bill may be subtly but importantly transformed[.]");
*id.* at 243 (arguing that "the Fourteenth Amendment has a doctrinal 'feedback effect' against the
federal government"); *see also id.* at 283 ("[W]ords inserted into the Constitution in 1791 must
be read afresh after 1866.").

Page 11 -  *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
          IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
          AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 17 of 25

Circuit, in an opinion by Judge Sykes, reads *McDonald* to have "confirm[ed] that when state- or local-government action is challenged, the focus of the original-meaning inquiry is carried forward in time; the Second Amendment's scope as a limitation on the States depends on how the right was understood when the Fourteenth Amendment was ratified." *Ezell*, 651 F.3d at 702.

Any claim that the founding era is the only relevant period is also inconsistent with the passage in *Bruen* instructing the lower courts on historical methodology through the example of sensitive-places restrictions. There, the Court indicated that restrictions on guns in legislative assemblies, polling places, and courthouses found in "18th- *and 19th-century*" laws are adequate to satisfy its historical analysis, 142 S. Ct. at 2133 (emphasis added)—an incomprehensible statement if it believed that the 18th century was the only relevant period. Notably, in the pages of the article and brief the Court cited for that proposition, all the 19th-century laws restricting guns in any of the three locations the Court listed were from the *late* 19th century.[13]

Finally, further confirmation that 1868 is the correct focus occurred in the *Bruen* oral argument, where the following exchange took place between Justice Thomas and former Solicitor General Paul Clement as counsel for the NRA's New York affiliate:

> JUSTICE THOMAS: [Y]ou mentioned the founding and you mentioned post-Reconstruction. But, if we are to analyze this based upon the history or tradition, should we look at the founding, or should we look at the time of the adoption of the Fourteenth Amendment, which then, of course, applies it to the states?
>
> MR. CLEMENT: So, Justice Thomas, I suppose, if there were a case where there was a contradiction between those two, you know, and the case arose in the states,

---

[13] *See* David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205, 244-47 (2018) (citing 1870 Louisiana law, 1874 and 1886 Maryland laws, 1873 Texas law, and 1874 decision upholding 1870 Georgia law); Br. for Indep. Inst. as Amicus Curiae at 11-17, *Bruen* (No. 20-843) (disputing relevance of 19th-century laws but (at 16 n.10) citing 1869 Tennessee, 1870 Texas, and 1890 Oklahoma laws that prohibited guns in (among others) polling places).

Page 12 -   *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 18 of 25

> I would think there would be a decent argument for looking at the history at the time of Reconstruction … and giving preference to that over the founding.

Tr. of Oral Arg. at 8:2-17, *Bruen* (No. 20-843). Mr. Clement and his new firm, Clement & Murphy, represent the *Eyre* Plaintiffs in this consolidated action.

In sum, any historical inquiry this Court chooses to conduct should focus on the period around 1868 rather than 1791. But 1868 is not a cutoff. *Heller* instructs that "examination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is also "a critical tool of constitutional interpretation." 554 U.S. at 605 (second emphasis added); *see also Bruen*, 142 S. Ct. at 2127-28 (quoting same).[14] *Bruen* clarified that, under this passage in *Heller*, materially later history that *contradicts* the established original meaning of the constitutional text at the relevant point in time would not change that meaning. *See* 142 S. Ct. at 2136-37 & 2154 n.28. But it emphasized that, conversely, "a regular course of practice can liquidate [and] settle the meaning of disputed or indeterminate terms [and] phrases in the Constitution." *Id.* at 2136 (cleaned up) (quoting a decision quoting James Madison).

Furthermore, *Bruen* recognized that new technologies or new societal concerns may "require a more nuanced approach" to the historical inquiry. *Id.* at 2132; *see also Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (explaining that "constitutional principles … must be faithfully applied not only to circumstances as they existed in 1787, 1791, and 1868, for example, but also to modern situations that were unknown to the Constitution's Framers"). If a modern technological

---

[14] Nor is 1868 a starting line for the inquiry. Both *Heller* and *Bruen* examined history preceding even 1791. *See Heller*, 554 U.S. at 592-93; *Bruen*, 142 S. Ct. at 2135-36, 2142-45. The State has thus correctly pointed to such history as well. *See, e.g.*, State Trial Br. at 33.

Page 13 -   *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 19 of 25

development or modern societal concern that warrants a modern firearms regulation did not exist in the time period a court is examining, then self-evidently there will be no historical laws addressing the development or concern to be found in that period.

That is precisely the situation in this case. As the State explains, *see* State Trial Br. at 28-32, large-capacity magazine restrictions were adopted primarily in response to the exponential increase in the lethality of firearms and magazines—*i.e.*, "dramatic technological changes," *Bruen*, 142 S. Ct. at 2132—and the "unprecedented societal concern[]," *id.*, that followed, namely, an epidemic of mass shootings. *See* Dkt. 39 at 25-27 (in denying Plaintiffs' motion for a temporary restraining order, finding that large-capacity magazines "implicate a dramatic change in firearms technology" and "also implicate unprecedented societal concerns" arising from mass shootings); *Hanson*, 2023 WL 3019777, at *12-14 (reaching same conclusion in denying plaintiffs' preliminary injunction motion as to D.C. large-capacity magazine law).[15] A "more nuanced approach" to history and "a broader search for historical analogies" is thus fully warranted. *Bruen*, 142 S. Ct. at 2132; *Rowson*, 2023 WL 431037, at *24.

Here, state and local laws from the period beginning around Reconstruction and continuing into the 20th century—which are fully consistent with earlier regulations—establish the meaning of the right to keep and bear arms at the time of the Fourteenth Amendment's

---

[15] *See also Herrera v. Raoul*, No. 1:23-cv-00532, 2023 WL 3074799, at *7 (N.D. Ill. Apr. 25, 2023) (in denying preliminary injunction motion, finding that Illinois law and similar local ordinances restricting assault weapons and large-capacity magazines "responded to 'dramatic technological changes' and 'unprecedented societal concerns' of increasing mass shootings by regulating the sale of weapons and magazines used to perpetrate them"), *appeal docketed*, No. 23-1793 (7th Cir. Apr. 26, 2023); *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Security*, No. 1:22-cv-00951, 2023 WL 2655150, at *10-11 (D. Del. Mar. 27, 2023) (in denying preliminary injunction motion as to Delaware law, finding "that assault long guns and LCMs implicate dramatic technological change and unprecedented societal concerns for public safety"), *appeal docketed*, No. 23-1633 (3d Cir. Apr. 7, 2023).

Page 14 -   *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS

adoption, and demonstrate the constitutionality of Measure 114's large-capacity magazine

restrictions. Dkt. 39 at 25-27; *see, e.g.*, State Trial Br. at 33-35 (discussing late 19th-century- and

early 20th-century laws regulating particularly dangerous weapons and weapon features soon

after they emerged in the commercial market, which were consistent with earlier laws restricting

access to weapons and weapon features that demonstrably threaten public safety but have no

legitimate use for self-defense, such as blunt weapons, trap guns, and Bowie knives, as well as

earlier regulations restricting access to gunpowder); *Hanson*, 2023 WL 3019777, at *12-17

(finding that D.C.'s similar law restricting large-capacity magazines "is consistent with this

country's historical tradition of firearm regulation," and specifically noting that "it is appropriate

to apply 20th century history" to the analysis because it "does not contradict any earlier

evidence").[16] And, in any event, regardless of whether the Court concludes that the relevant

focus for its analysis is 1791 or 1868, it should consider this later historical evidence and the

---

[16] *See also Herrera*, 2023 WL 3074799, at *6-7 (holding that Illinois law and similar
local County ordinances restricting assault weapons and large-capacity magazines "are consistent
with the Nation's 'history and tradition' of treating particularly 'dangerous' weapons as
unprotected" under the Second Amendment, and, in analyzing the historical record, noting that
"laws regulating weapons, including various firearms, developed over time in response to the
type of harm those weapons presented"); *Del. State Sportsmen's Ass'n*, 2023 WL 2655150, at
*11-13 (finding that Delaware's "LCM and assault long gun prohibitions … are consistent with
the Nation's historical tradition of firearm regulation," stretching from "the Nation's early
history" to "analogous twentieth-century regulations"); *Bevis v. City of Naperville, Ill.*, No. 1:22-
cv-04775, 2023 WL 2077392, at *9-16 (N.D. Ill. Feb. 17, 2023) (finding that Illinois law and
similar local ordinance restricting assault weapons and large-capacity magazines are
"constitutionally sound" because "history and tradition demonstrate that particularly 'dangerous'
weapons are unprotected" under Second Amendment, and, in so finding, examining history
"from the 18th century through the late 19th and early 20th centuries"), *appeal docketed*, No. 23-
1353 (7th Cir. Feb. 23, 2023). In *Bevis*, the district court, the Seventh Circuit, and the Supreme
Court each also denied plaintiffs' motion for an injunction pending appeal. *See Bevis v. City of
Naperville, Ill.*, No. 23-1353, 2023 WL 3190470 (7th Cir. Apr. 18, 2023); *Nat'l Ass'n for Gun
Rts. v. City of Naperville, Ill.*, No. 22A948, 2023 WL 3485430 (U.S. May 17, 2023).

Page 15 -  *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 21 of 25

"regular course of practice" in the decades that followed to "settle" the meaning of the right as one that allows for regulations like Measure 114.

## III.    This Court Should Reject Any Effort To Dismiss the State's Historical Analogues as "Outliers"

Challengers in other recent Second Amendment cases have sought to dismiss historical regulations as "outliers" insufficient to establish a historical tradition under *Bruen*. *See, e.g.*, Pls.' Suppl. Br. at 14-15, *Teter v. Shikada*, No. 20-15948 (9th Cir. Sept. 16, 2022), Dkt. 67 (arguing that as many as fifteen historical laws should be dismissed as "outliers"). Plaintiffs here likewise assert that "a handful of late-in-time laws from 'outlier jurisdictions'" are insufficient to establish a historical tradition under *Bruen*. Plaintiffs' Motion for Summary Judgment or, in the Alternative, Trial Brief, Dkt. 165, at 14 (May 12, 2023); *see id.* at 40. Even if that assertion were correct, it is not implicated in this case, given the robust and extensive record of historical laws. *See, e.g.*, State Trial Br. at 33-35. But to the extent this Court chooses to address the issue, it should observe that a small number of laws can establish a tradition in light of *Bruen*'s discussion of the historical laws justifying sensitive places.

Specifically, *Bruen* repeated *Heller*'s identification of "schools and government buildings" as sensitive places, 142 S. Ct. at 2133 (quoting *Heller*, 554 U.S. at 626), and then recognized that three additional, more specific locations (legislative assemblies, polling places, and courthouses) were also "'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment," *id.* But the sources the Court cited for the historical record justifying restrictions in those three locations identified *only two laws* naming legislative assemblies and *two laws* naming courthouses. *See* Kopel & Greenlee, 13 Charleston L. Rev. at

Page 16 -   *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 22 of 25

235, 246; Br. for Indep. Inst. as Amicus Curiae at 11-12, *Bruen* (No. 20-843).[17] Moreover, the

two laws both sources cited as prohibiting guns in legislative assemblies in the pages the Court

referenced were from a single colony, Maryland, and were enacted three years apart, in 1647 and

1650. *See* Kopel & Greenlee, 13 Charleston L. Rev. at 235; Br. for Indep. Inst. as Amicus Curiae

at 11-12, *Bruen* (No. 20-843).[18] Under *Bruen*'s sensitive places analysis, therefore, a small

number of laws can be sufficient to establish this nation's tradition of firearm regulation, at least

so long as there is not overwhelming affirmative evidence of an enduring tradition to the

contrary.[19]

Concluding that a small number of state and local laws can demonstrate a "public

understanding" of a limitation on the Second Amendment right is also consistent with bedrock

federalism principles that entitle a state to effectuate the policy choice of its citizens within

constitutional bounds. Local conditions matter. Just as states today may (or may choose not to)

---

[17] In addition, *Bruen* repeatedly used the singular when referring to the government's burden to produce "a" historical analogue. *See, e.g.*, *Bruen*, 142 S. Ct. at 2133.

[18] Notably, one of the Court's sources stated that, "[i]n general, Americans did not seem to mind people coming armed to attend or participate in legislative matters. The United States Congress had no rules against legislative armament, and through the mid-nineteenth century, it was common for Congressmen to be armed." Kopel & Greenlee, 13 Charleston L. Rev. at 235. Accordingly, the Court's reliance on this source further confirms that widespread acceptance of a practice of carrying guns as a matter of policy does not indicate that the practice was constitutionally protected. *See also infra* p. 17 (explaining that to infer constitutional protection from absence of regulation would run against basic principles of federalism).

[19] To be sure, *Bruen* expressed "doubt" that three colonial regulations "could suffice to show a tradition." 142 S. Ct. at 2142. But that tentative statement should not be given undue weight, given the Supreme Court's discussion of sensitive places. Moreover, that comment should be read in light of the Court's subsequent statement that it found an "'overwhelming weight of other evidence regarding the right to keep and bear arms'" that contradicted historical analogues to New York's proper-cause law. *See id.* at 2153-55 (quoting *Heller*, 554 U.S. at 632). Here, there is indisputably no such "overwhelming" evidence of a right to manufacture, sell, transfer, import, purchase, or possess large-capacity magazines or to purchase firearms without a permit.

Page 17 -    *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 23 of 25

"experiment[] with reasonable firearms regulations," *McDonald*, 561 U.S. at 785 (plurality opinion) (cleaned up), states historically may have chosen not to regulate certain weapons, people, or conduct, not because the public understood the right to keep and bear arms to prevent such regulations, but because of democratically supported policy choices. As Judge Easterbrook explained in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), "the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity," and "[t]he central role of representative democracy is no less part of the Constitution than is the Second Amendment." *Id.* at 412. And the fact that states have latitude to experiment with regulations that meet their unique needs means that states historically may well have chosen not to regulate to the limits of constitutional permissibility. *Cf., e.g.*, *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 185 (2007) ("The constitutional floor [by which the First Amendment restricts public-sector] unions' collection and spending of agency fees is not also a constitutional ceiling for state-imposed restrictions."). Accordingly, while state laws restricting firearms demonstrate that the people of those states understood the right to keep and bear arms to permit such restrictions, the absence of such laws in other states does not warrant any inference that their citizens considered such restrictions unconstitutional.[20]

---

[20] Indeed, any such inference would be untenable in light of the Court's statement, in a decision issued the day after *Bruen*—with five of the same Justices in the majority—that "the fact that many States in the late 18th and early 19th century did not criminalize" certain conduct "does not mean that anyone thought the States lacked the authority to do so." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2255 (2022).

Page 18 -  *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
             IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
             AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

Exhibit A
Page 24 of 25

**CONCLUSION**

The Court should deny Plaintiffs' motion for summary judgment and, at the conclusion of trial, enter judgment for the Defendants.


DATED this _____ day of May, 2023.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/_____
 **Steven C. Berman**, OSB No. 951769
 Email:  sberman@stollberne.com
 **Lydia Anderson-Dana**, OSB No. 166167
 Email: landersondana@stollberne.com

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

and

**William J. Taylor, Jr.** (*pro hac vice* application forthcoming)
Email:  wtaylor@everytown.org
EVERYTOWN LAW
450 Lexington Ave, P.O. Box 4184
New York, NY 10017
Telephone:     (646) 324-8124
Facsimile:     (917) 410-6932


*Attorneys for Everytown for Gun Safety Action Fund*


Page 19 -  *AMICUS CURIAE* BRIEF OF EVERYTOWN FOR GUN SAFETY ACTION FUND
       IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
       AND IN SUPPORT OF DEFENDANTS

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit A
Page 25 of 25