Shawn M. Lindsay
shawn@jurislawyer.com
Daniel J. Nichols
dan@jurislawyer.com
JurisLaw LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
Telephone: (503) 968-1475

*Attorneys for Eyre Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al., | Case No. 2:22-cv-01815-IM *(Lead Case)* |
| Plaintiffs, | Case No. 3:22-cv-01859-IM *(Trailing Case)* |
| v. | Case No. 3:22-cv-01862-IM *(Trailing Case)* |
| TINA KOTEK, et al., | Case No. 3:22-cv-01869-IM *(Trailing Case)* |
| Defendants. | CONSOLIDATED CASES |
| MARK FITZ, et al., | **RESPONSE IN OPPOSITION TO** |
| Plaintiffs, | **DEFENDANTS' MOTION TO EXCLUDE** |
| v. | **TESTIMONY** |
| ELLEN F. ROSENBLUM, et al., | |
| Defendants. | |
| KATERINA B. EYRE, et al., | |
| Plaintiffs, | |
| v. | |
| ELLEN F. ROSENBLUM, et al., | |
| Defendants. | |
| DANIEL AZZOPARDI, et al., | |
| Plaintiffs, | |
| v. | |
| ELLEN F. ROSENBLUM, et al., | |
| Defendants. | |

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

ARGUMENT ................................................................................................................... 1

I.     The Testimony of Massad Ayoob Is Based On Extensive Specialized Experience And Should Be Admitted. ................................................................ 1

II.    The Testimony Of Clayton Cramer Is Reliable And Relevant And Should Be Admitted. ................................................................................................... 4

III.   Defendants Are Incorrect That Ashley Hlebinsky Is Not Qualified To Testify About The Existence Of Firearm Regulations And Only Testimony Relating To Legal Interpretations Or Conclusions Must Be Excluded. .................................. 7

IV.    Dr. Kleck's Lack Of Raw Data In Its Original Form Does Not Justify Excluding His Testimony. ................................................................................................ 12

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ................................................................. 6, 11, 12

*Best v. Lowe's Home Centers, Inc.*,
   563 F.3d 171 (6th Cir. 2009) ...................................................................... 5

*Bolin v. Baker*,
   2015 WL 631290 (D. Nev. Feb. 13, 2015)...................................................... 4

*Bridgetown Condo. Homeowner's Ass'n v. Ford Dev., Inc.*,
   2009 WL 1743759 (D. Or. June 18, 2009)..................................................... 8

*Burkhart v. Wash. Metro. Area Transit Auth.*,
   112 F.3d 1207 (D.C. Cir. 1997)................................................................... 8

*Chaney v. Wadsworth*,
   2015 WL4388420 (D. Mont. July 15, 2015).................................................. 7

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ................................................................ 6, 12

*Cooper v. S. Co.*,
   390 F.3d 695 (11th Cir. 2004) .................................................................. 14

*Crow Tribe of Indians v. Racicot*,
   87 F.3d 1039 (9th Cir. 1996) ...................................................................... 8

*Downs v. Perstorp Components, Inc.*,
   126 F.Supp.2d 1090 (E.D. Tenn. 1999)......................................................... 5

*Duncan v. Becerra*,
   366 F.Supp.3d 1131 (S.D. Cal. 2019) ........................................................ 12

*Duncan v. Bonta*,
   142 S.Ct. 2895 (2022)............................................................................. 12

*Duncan v. Bonta*,
   19 F.4th 1087 (9th Cir. 2021) .................................................................. 12

*Guido v. L'Oreal, USA, Inc.*,
   2014 WL 6603730 (C.D. Cal. July 24, 2014) ............................................... 10

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) .................................................................... 11

*Hill v. Sw. Energy Co.*,
  858 F.3d 481 (8th Cir. 2017) ................................................................................... 7

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
  984 F.Supp.2d 1021 (C.D. Cal. 2013) ................................................................... 10

*In re Roundup Prod. Liab. Litig.*,
  390 F.Supp.3d 1102 (N.D. Cal. 2018) ..................................................................... 7

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
  318 F.Supp.2d 879 (C.D. Cal. 2004) ..................................................................... 10

*Indep. Living Res. v. Or. Arena Corp.*,
  982 F.Supp. 698 (D. Or. 1997) ................................................................................ 7

*Kennedy v. Collagen Corp.*,
  161 F.3d 1226 (9th Cir. 1998) ......................................................................... 3, 4, 9

*Kinser v. Gehl Co.*,
  184 F.3d 1259 (10th Cir. 1999) .............................................................................. 13

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................. 1

*McClellan v. I-Flow Corp.*,
  710 F.Supp.2d 1092 (D. Or. 2010) ........................................................................ 14

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995) .................................................................................... 4

*McHugh v. United States Auto. Ass'n*,
  164 F.3d 451 (9th Cir. 1999) ................................................................................... 8

*Munoz v. PHH Mortg. Corp.*,
  478 F.Supp.3d 945 (E.D. Cal. 2020) ....................................................................... 7

*Ocean State Tactical, LLC v. Rhode Island*,
  2022 WL 17721175 (D.R.I. Dec. 14, 2022) ........................................................... 11

*Pineda v. City & Cnty. of San Francisco*,
  280 F.R.D. 517 (N.D. Cal. 2012) ........................................................................... 14

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ................................................................................... 6

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014) ................................................................................... 3

*Sapiro v. Sunstone Hotels Invs., L.L.C.*,
   2006 WL 6255441 (D. Ariz. Aug. 24, 2006) .......................................................... 9

*SEC v. Das*,
   723 F.3d 943 (8th Cir. 2013) .............................................................................. 7

*Smith v. Ford Motor Co.*,
   626 F.2d 784 (10th Cir. 1980) .......................................................................... 14

*Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*,
   223 F.3d 585 (7th Cir. 2000) ............................................................................. 9

*United States v. Brinson*,
   791 F.App'x 33 (11th Cir. 2019) ........................................................................ 1

*United States v. Corey*,
   207 F.3d 84 (1st Cir. 2000) ............................................................................... 1

*United States v. Miller*,
   771 F.2d 1219 (9th Cir. 1985) .......................................................................... 14

*United States v. Romero-Lobato*,
   379 F.Supp.3d 1111 (D. Nev. 2019) .................................................................... 2

*United States v. Thompson*,
   2007 WL 2044725 (9th Cir. July 16, 2007) .......................................................... 1

## Rules

Fed. R. Civ. P. 37(c)(1) ........................................................................................ 14

Fed. R. Evid. 702 ......................................................................................... 10, 12

Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules........................... 1

Fed. R. Evid. 703 ................................................................................................ 13

Fed.R.Evid.705 ................................................................................................... 13

**ARGUMENT**

**I.    The Testimony of Massad Ayoob Is Based On Extensive Specialized Experience And Should Be Admitted.**

Defendants' challenge to the testimony of Massad Ayoob reflects a basic  misunderstanding of the testimony Mr. Ayoob will offer.  Defendants claim that Mr. Ayoob's testimony should be excluded because he has not provided a "systematic and scientific" analysis with a "large, randomly chosen sample" of self-defense incidents involving the firing of multiple rounds.  But Mr. Ayoob is not being offered to present quantifiable data on the frequency with which any particular number of rounds are fired in a self-defense situation.  Def.Daubert.3.  Mr. Ayoob is being offered "as a self-defense and weapons expert," who has extensive experience instructing civilians and law enforcement in the use of firearms for self-defense, and who can help the Court understand why magazines capable of holding more than ten rounds can be beneficial in self-defense situations.  Ayoob Decl. ¶3.  It is black-letter law that experts may testify based on expertise gained from practical experience, not just scientific (much less specifically statistical) qualifications.  *See, e.g.*, Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules; *see also, e.g.*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (Rule 702 "makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge").  And it is commonplace for "professional experience" to be the basis for expert testimony.  *United States v. Corey*, 207 F.3d 84, 90 (1st Cir. 2000) (allowing ATF agent to testify to firearms question "on his own knowledge and expertise as a firearms specialist, both with the ATF and in the private sector"); *see also, e.g.*, *United States v. Brinson*, 791 F.App'x 33, 35 (11th Cir. 2019) (detective qualified as expert on basis of experience in identifying firearms); *cf. United States v. Thompson*, 2007 WL 2044725, at *1 (9th Cir. July 16, 2007) (reversible error not to allow

expert with experience in cannabis use to testify as to what amounts were consistent with personal use, notwithstanding lack of law enforcement background).

Mr. Ayoob's extensive experience makes him eminently qualified to testify to the ways in which magazines capable of holding more than ten rounds can be beneficial for self-defense.  Mr. Ayoob has fifty years of experience as a firearms instructor and nineteen years as chair of the Firearms and Deadly Force Training Committee for the American Society of Law Enforcement Trainers, giving him extensive, expert experience in firearm training standards and the dynamics of violent encounters.  That more than qualifies him to testify on the impact of magazine limits on self-defense situations without having to present "statistical probabilit[ies]."  After all, Rule 702 "does not impose a requirement that the expert must reach a conclusion via an objective set of criteria or that he be able to quantify his opinion with a statistical probability," but instead "inherently allows for an expert with sufficient knowledge, experience, or training to testify about a particular subject matter." *United States v. Romero-Lobato*, 379 F.Supp.3d 1111, 1120 (D. Nev. 2019).  It is on exactly that basis that Mr. Ayoob has already been tested and qualified as an expert to give testimony at trial on the impact of magazine limitations on self-defense.  *See* Ayoob Decl. Ex. 2.  In short, Mr. Ayoob undisputedly has relevant specialized knowledge about the use of magazines in self-defense; that is easily sufficient under Rule 702.

Defendants take issue with the fact that Mr. Ayoob invokes anecdotes to help illustrate the impact of magazine limits.  But again, Mr. Ayoob is not using those anecdotes to make probabilistic arguments.  As he explains, the anecdotes are merely "real-world example[s]" that help illustrate what his decades of experience, including teaching self-defense classes, has taught him—namely, that magazines with more than ten rounds are beneficial in self-defense situations.  Ayoob Decl. ¶7.  Moreover, if using anecdotes to help illustrate a point were disqualifying, then Defendants

would have to exclude several of their own experts.  For example, in trying to demonstrate that Bowie knives were considered dangerous, Robert Spitzer relies on anecdotes, e.g., that one of the Lincoln assassination conspirators used a Bowie knife.  *See* Spitzer Decl. ¶61 n.149.  Similarly, Defendants' expert Lucy Allen relies, in part, on her "own study of news reports on incidents of self-defense with a firearm," Allen, Decl. ¶7, which is precisely what Defendants criticize Mr. Ayoob for doing, Def.Daubert.4.   Ms. Allen further testified that "[t]he number of rounds commonly needed by individuals to defend themselves *cannot be practically or ethically determined* with controlled scientific experiments and there is no source that systematically tracks or maintains data on the number of rounds fired by individuals in self-defense." *Id*.  Yet Defendants fault Mr. Ayoob for failing to conduct the kind of scientific experiment that their own expert claims cannot be "practically or ethically" performed.

In a final attempt to paint Mr. Ayoob's testimony as unreliable, Defendants challenge his conclusions regarding the consequences of limiting magazine capacity.  But the law is clear:  "the focus of the inquiry envisioned by Rule 702 must be on the principles and methodology underlying an expert's testimony, not on the conclusions."  *Kennedy v. Collagen Corp*., 161 F.3d 1226, 1228 (9th Cir. 1998); *see also Pyramid Techs., Inc. v. Hartford Cas. Ins. Co*., 752 F.3d 807, 821 (9th Cir. 2014) (holding that even where an expert's report had multiple shortcomings, including a short visual inspection, a lack of test taking or investigation, and completion in only one day, the report must still go to trial to determine "how much weight, if any, to give the conclusions").   If Defendants want to question "the reliability of Mr. Ayoob's *analysis*," Def. Mot.5 (emphasis added), they must do so at trial.

In all events, Defendants' claim that Mr. Ayoob does not link his experiences with his conclusions is plainly false.  Mr. Ayoob provides a detailed explanation of how his experience in

firearm training helped him reach the conclusion that magazines with more than ten rounds are useful in self-defense.  For example, he explains how the ability to change a magazine "degrades severely in human beings under stress due to vasoconstriction" and that "the average gun owner, takes considerably longer time to change a magazine."  Ayoob Decl. ¶29.  He also uses his "experience in self-defense scenarios" to conclude that "fractions of seconds can mean the difference between the victim successfully repelling an attacker and the victim being subdued." *Id.* at ¶30.  Mr. Ayoob thus clearly will explain how his extensive experience in firearm safety and self-defense informed his conclusion about magazine capacity limitations.

## II.  The Testimony Of Clayton Cramer Is Reliable And Relevant And Should Be Admitted.

Clayton Cramer is a well-respected professor of history who offers historical evidence on mass murders in American history based on his review of relevant reports.  Defendants seek to exclude Mr. Cramer's testimony on what is essentially a disagreement over methodological choices.  But these differences should be resolved at trial because "[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony."  *Kennedy*, 161 F.3d at 1231 (quoting *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995)); *see also Bolin v. Baker*, 2015 WL 631290, at *18 (D. Nev. Feb. 13, 2015) (collecting cases).

To begin with, Defendants criticize Mr. Cramer for not using the FBI's standard definition of "mass murder."  But they fail to explain why there is anything problematic, let alone unreliable, about the definition Mr. Cramer used, which comes from the United States Secret Service.  Nor do they explain why it is impermissible for Mr. Cramer to deviate from the FBI definition when their own expert does not use the FBI definition either, but rather employs a definition of his own creation.  *See* Klarevas Decl. ¶11n.4 (adopting a definition for "high-fatality mass shootings" drawn from his own book).  In all events, Mr. Cramer not only explains why he found the Secret

Service definition better suited to his review, Wilson Decl. Ex. 4. (Cramer Dep. at Tr. 45:23-46:6), but also notes that his declaration in fact "provide[s] information using both definitions," Cramer Decl. ¶8, rendering this criticism both baseless and irrelevant.

Defendants next take issue with Mr. Cramer's methodology, claiming that it is too "subjective" because, e.g., he chose not to include as "mass murders" incidents involving self-defense, gang violence, or felony-murders. But expert testimony is only considered "subjective" if it cannot be explained in objective terms, is rejected by other experts, and cannot be proven false. *See Downs v. Perstorp Components, Inc.,* 126 F.Supp.2d 1090, 1127 (E.D. Tenn. 1999). None of those conditions obtains here. Mr. Cramer can and did explain his methodology in objective terms—in fact, Defendants' own motion provides a good, detailed description of precisely how Mr. Cramer conducted his review. Defendants do not provide a single contradictory expert, study, article, or journal, suggesting that any of the methodological choices Mr. Cramer made violated scientific or industry standards. And because Mr. Cramer's report is based on documented, verifiable historical incidents, his conclusions can be proven or disproven. Subjectivity exists when an expert cannot explain his methods; it does not exist simply because one party dislikes the particular methods adopted. After all, as the Sixth Circuit explained in a decision cited by Defendants themselves, "Rule 702 does not require perfect methodology," and "[a]ny weaknesses in [an expert's] methodology will affect the weight that his opinion is given at trial, but not its threshold admissibility." *Best v. Lowe's Home Centers, Inc*., 563 F.3d 171, 181-82 (6th Cir. 2009) (reversing district court for excluding expert testimony).

Defendants also fault Mr. Cramer for failing to cover events over the past 60 years. But the whole point of his testimony is to demonstrate that mass murders unfortunately are not a new phenomenon. It is hardly surprising, then, that his review focuses on the 18th, 19th and early 20th

centuries. Defendants do not dispute that evidence of mass murder in early American history may be relevant to this case. *See Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible."). And the fact that Mr. Cramer has not completed a review of post-1960 mass murders in no way implies that the methods he used for the time periods he did study depart from reliable methods.

Defendants also fault Mr. Cramer for including inaccurate calculations in his initial declaration. But Mr. Cramer acknowledged and fixed the mistake in a corrected declaration, where he explained that it was owing to a faulty formula input in the software, not to any mistake in the collection of the underlying data. An inadvertent error that does not relate to the core of an expert's methodology hardly warrants excluding the expert's testimony entirely. *Cf. City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1048 (9th Cir. 2014) ("'[A] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method' does not render expert testimony inadmissible.") (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). Input mistakes happen. The law does not sanction experts who commit them with wholesale exclusion—especially when they are promptly acknowledged and corrected.

Finally, Defendants seek to exclude Mr. Cramer's testimony relating to the mental health causes of certain mass murder events. While it is true that Mr. Cramer is not a qualified mental health professional, his testimony on this matter does not require such training. As Mr. Cramer explains, his determinations as to which crimes were caused by mental illness is based on contemporaneous accounts of the incident or where the nature of the crime makes any other explanation implausible. Cramer Decl. ¶35. Neither of these determinations require specialized knowledge; they are based on common sense. *See Munoz v. PHH Mortg. Corp.,* 478 F.Supp.3d

945, 970 (E.D. Cal. 2020) ("To exclude an expert report simply because it also employs common sense—in addition to expertise—is not supported by the caselaw.").  However, to the extent that this Court determines that such evidence is inadmissible, that should not affect the admissibility of the rest of Mr. Cramer's testimony.  The main purpose of his testimony is to demonstrate the prevalence of mass murders in earlier American history, and the mere fact that those murders took place is relevant to this case regardless of their causes.  While Defendants may consider Mr. Cramer's historical analysis "crude and imperfect," "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony."  *Hill v. Sw. Energy Co.*, 858 F.3d 481, 486 (8th Cir. 2017) (quoting *SEC v. Das*, 723 F.3d 943, 950 (8th Cir. 2013)); *see also In re Roundup Prod. Liab. Litig.*, 390 F.Supp.3d 1102, 1109 (N.D. Cal. 2018) ("And the case law—particularly Ninth Circuit case law—emphasizes that a trial judge should not exclude an expert opinion merely because he thinks it's shaky … instead the weaknesses in an unpersuasive expert opinion can be exposed at trial, through cross-examination or testimony by opposing experts.").

### III.   Defendants Are Incorrect That Ashley Hlebinsky Is Not Qualified To Testify About The Existence Of Firearm Regulations And Only Testimony Relating To Legal Interpretations Or Conclusions Must Be Excluded.

In their own *Daubert* motion, Plaintiffs argued that it is highly inappropriate for experts to testify to the interpretation of laws and regulations.  *See* Pltfs.Daubert.5-6; *Chaney v. Wadsworth*, 2015 WL 4388420, at *10 (D. Mont. July 15, 2015) ("An expert witness may not testify as to conclusions of law ... or provide an interpretation of what a particular statute requires—tasks that are exclusively reserved for the court."); *Indep. Living Res. v. Or. Arena Corp.*, 982 F.Supp. 698, 765 (D. Or. 1997) ("As a general rule ... the interpretation of a law is peculiarly within the court's own expertise and thus is not a proper subject for expert testimony."), *supplemented*, 1 F.Supp.2d 1159 (D. Or. 1998).  Defendants' *Daubert* motion against Ms. Hlebinsky demonstrates that Plaintiffs were justified in raising this alarm:  Defendants move to exclude Ms. Hlebinsky precisely

because she "does not have a law degree." Defs.Daubert.15. Nothing could more clearly signal that the Defendants have conflated the role of experts with the role of the parties' lawyers and of the Court.

Defendants are correct that *any* expert witness testimony that requires legal expertise should be excluded, but that is not because Ms. Hlebinsky, or anyone else, is unqualified to testify on legal questions; it is because "[e]ach courtroom comes equipped with a 'legal expert,' called a judge." *Burkhart v. Wash. Metro. Area Transit Auth*., 112 F.3d 1207, 1213 (D.C. Cir. 1997) (reversing admission of expert testimony on legal issue at trial). As this Court has noted previously, "expert testimony is not proper for issues of law because the role of experts is to interpret and to analyze factual evidence rather than to testify about the law." *Bridgetown Condo. Homeowner's Ass'n v. Ford Dev., Inc*., 2009 WL 1743759, at *1 (D. Or. June 18, 2009) (citing *McHugh v. United States Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999), and *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996)). Yet three of Defendants' witnesses cross far over the line into testifying on impermissible legal interpretations. *See* Pltfs.Daubert.6-8; Rivas Decl. ¶9-10 (describing her testimony as an "exploration of historical record regulations" and her role as "interpret[ing] … laws"); Spitzer Decl. 13-19, 32-48 (discussing statutory interpretations and interpretations of case law), and on how legal conclusions should be reached, *see e.g.*, DeLay Decl. ¶77 (discussing how "lawmakers acted consistently with American tradition and practice"). To the extent Defendants think an expert cannot provide historical testimony that touches on firearms regulations without offering legal expertise about how to interpret those regulations, then that would just underscore that their own historical experts should be excluded for impermissibly invading the exclusive purview of this Court to resolve matters of legal interpretation.

In all events, Defendants once again misunderstand the nature of the testimony Plaintiffs'

expert will offer.  Unlike Defendants' experts, Ms. Hlebinsky was not retained to reduplicate the

work of counsel.  Her testimony focuses on the history of firearm *technology*, during which she

gives only a "brief look" at the history of firearms laws.  Hlebinsky Decl. 2.  Ms. Hlebinsky is

amply qualified to testify on the history of firearms; indeed, she possesses similar qualifications to

Defendants' witnesses.  None of Defendants' witnesses who will testify regarding the history of

firearms holds a law degree, and Ms. Hlebinsky has a master's degree in history just like Dr. Rivas

and Dr. DeLay.  To be sure, Ms. Hlebinsky does not hold a PhD, but "Rule 702 does 'not require

that expert witnesses be academics or PhDs.'" *Sapiro v. Sunstone Hotels Invs., L.L.C.*, 2006 WL

6255441, at *2 (D. Ariz. Aug. 24, 2006) (quoting *Tuf Racing Prods., Inc. v. Am. Suzuki Motor

Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)).  And once again, to the extent that Defendants take issue

with the specifics of Ms. Hlebinsky's credentials they must do so at trial.  *See Kennedy*, 161 F.3d

at 1231 ("Disputes as to the strength of [an expert's] credentials … go[es] to the weight, not the

admissibility, of his testimony.").

Ms. Hlebinsky also bolsters her academic credentials with years of professional experience

as curator, including as Curator-in-Charge, at the Cody Firearms Museum—the only accredited

firearms museum in America.  While Defendants suggest that this experience does not provide her

with sufficient specialized training or knowledge, both Dr. Rivas and Dr. DeLay (witnesses for

Defendants) emphasize in their depositions the importance of the time they spent researching in

the Cody Firearms Museum to inform their own expertise.  Lindsay Decl., Ex. 1, Rivas Dep. 20:4-

25:12; Ex. 2, DeLay Dep. 18:14, 66:10.  Indeed, Dr. Rivas cites the library of the Cody Firearms

Museum seven separate times in her declaration.  And Dr. DeLay and Dr. Spitzer both rely in their

declarations on the expertise of Herbet Houze, who not only holds the same degree as Ms.

Hlebinsky, but also held the exact same curator positions as she holds at the Cody Firearms Museum.  *See* Spitzer Decl. ¶48 n.98, DeLay Dec. ¶59 n.58.  Defendants can hardly question the credentials of an expert on whose research and expertise their own experts rely.  In short, there is no question that Ms. Hlebinsky has the "knowledge, skill, experience, training, [and] education" to be considered an expert on the history of firearms.  Fed. R. Evid. 702.  Indeed, Defendants do not appear to disagree.  *See* Def. Mot.14 (conceding that Ms. Hlebinsky has "practical experience [] involving firearms in U.S. history").

Defendants instead complain that, in the course of providing her expertise on the historical development of firearms technology, Ms. Hlebinsky occasionally discusses the history of firearms regulation as well.  But unlike Defendants' witnesses, Ms. Hlebinsky does not purport to opine on how historical laws should be interpreted.  She simply discusses the existence of various regulations where doing so helps provide historical context.  For example, in explaining how historical black powder was less stable than modern gunpowder, Ms. Hlebinsky describes how storage laws were passed to provide a safe place for people to store their powder.  Hlebinsky Decl. ¶25.  To claim that Ms. Hlebinsky needs a law degree to even mention the interaction of fact and law "defines the relevant field of expertise too narrowly."  *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *10 (C.D. Cal. July 24, 2014).  And if Defendants wish to challenge the degree to which Ms. Hlebinsky's expertise in the history of firearms technology extends to the relationship between firearm technology and firearm regulation, then the appropriate place to do so is at trial, as "[a] lack of specialization affects the weight of the expert's testimony, not its admissibility."  *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F.Supp.2d 1021, 1028 (C.D. Cal. 2013) (quoting *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F.Supp.2d 879, 889 (C.D. Cal. 2004)).

Defendants' quarrels with the reliability of Ms. Hlebinsky's testimony fare no better than their critiques of her qualifications. Defendants first argue that her testimony should be excluded because a different district court discounted it in a case that is presently on appeal to the First Circuit. Def. Mot.1 (referring to *Ocean State Tactical, LLC v. Rhode Island*, 2022 WL 17721175, at \*7 (D.R.I. Dec. 14, 2022)). But the court in *Ocean State Tactical* decidedly did not disregard Ms. Hlebinsky's testimony entirely, let alone deem it inappropriate to even consider. The court merely chose, after full consideration, to "discount [it] to some extent." *Ocean State Tactical, LLC*, WL 17721175, at \*7. The court reached that conclusion, moreover, based on the weight of the testimony, not its admissibility. That one court did not find testimony wholly persuasive is hardly a reason to exclude it.

Defendants also suggest that Ms. Hlebinsky's testimony is unreliable because she admitted that her research had time constraints and because she included a single citation to a district court decision that was reversed, by a court of appeals decision that itself has since been vacated by the Supreme Court. But when it comes to expert testimony, a "judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 962 (9th Cir. 2021) (quoting *Amorgianos*, 303 F.3d at 267). Defendants do not come close to meeting this threshold, as neither of their quibbles is even a "flaw," let alone one that negates the "good grounds" of Ms. Hlebinsky's conclusions.

As to the first issue, Defendants conveniently omit that in response to their question as to whether Ms. Hlebinsky exhausted her efforts to find "sources to potentially provide illuminating and relevant information about the subject matter," she replied: "Yes." Wilson Decl., Ex. 7 (Depo. Of Ashley Hlebinsky at Tr. 114:13-25). Defendants offer no support for their claim that Ms. Hlebinsky's survey of sources was inadequate other than the remarkably obvious fact that she (like

their own experts) did not have an infinite amount of time at her disposal.  As to Defendants' complaint that Ms. Hlebinsky cites *Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019), they conveniently ignore that when she was asked whether she relied on any additional source for that same proposition, she replied that she had also seen it in a separate casebook.  Wilson Decl., Ex. 7 (Depo. of Ashley Hlebinsky at Tr. 129:8).  Moreover, the Ninth Circuit reversed *Duncan* based on a disagreement about the governing legal standard, not about the history, *Duncan v. Bonta*, 19 F.4th 1087, 1111 (9th Cir. 2021), and in all events, the Supreme Court has since vacated the Ninth Circuit's decision, *Duncan v. Bonta*, 142 S.Ct. 2895 (2022).  It would be remarkable indeed to exclude an expert's entire testimony for citing a decision that has been cited by many a court throughout the country, and that may well still prevail in the final analysis.  *See City of Pomona*, 750 F.3d at 1048 ("'[A] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method' does not render expert testimony inadmissible.") (quoting *Amorgianos*, 303 F.3d at 267).  In short, there is nothing to suggest that Ms. Hlebinsky's testimony does not conform to "reliable principles and methods."  Fed. R. Evid. 702.

## IV.  Dr. Kleck's Lack Of Raw Data In Its Original Form Does Not Justify Excluding His Testimony.

Gary Kleck's testimony focuses on the relationship between mass shootings and types of magazines.  Defendants challenge only one component of that testimony: his calculations as to how often magazines capable of holding more than 10 rounds were used in mass shootings between 2013-2021.  Dr. Kleck clearly explains his method of analysis and data collection, which included compiling data from the Gun Violence Archive (GVA) and the Violence Policy Center (VPC).  Both sources of information are publicly available, and Defendants do not dispute that both are reliable.  Instead, Defendants insist that Dr. Kleck's calculations must be excluded entirely because the precise data figures on these websites can fluctuate, and because Dr. Kleck did not record the

specific raw data in its original form as it existed at the time he conducted his review. Neither quibble provides any basis to exclude Dr. Kleck's calculations.

An expert may rely on facts or data that are not otherwise admissible so long as "experts in the particular field would reasonably rely on those kinds of facts or data." Fed. R. Evid. 703. Defendants do not dispute that experts would reasonably rely on the data in the GVA or VPC; they instead cite Rules of Evidence 705 and 1006 for the proposition that Dr. Kleck must report the specific raw data figures as it existed in the GVA and VPC. Neither rule is applicable here. The first sentence of Rule 705, conveniently omitted by Defendants, explicitly allows an expert to "state an opinion—and give the reasons for it—without first testifying to the underlying facts or data," Fed.R.Evid.705, and Rule 1006 deals with the "best evidence rule," which is inapplicable to expert testimony, *see Kinser v. Gehl Co.*, 184 F.3d 1259, 1275 (10th Cir. 1999) ("Rule 703, however, permits expert witnesses to base their opinions on evidence that is inadmissible under the hearsay, authentication, and *best evidence rules*." (emphasis added)), *abrogated on other grounds by Weisgram v. Marley Co.,* 528 U.S. 440 (2000).

Defendants remaining claim is that Plaintiffs violated the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B)(ii). But Dr. Kleck's declaration *does* disclose which facts or data he considered in forming his opinion. He explains his methodology, identifies his sources of data collection, and provides the data distilled from those sources. With respect to the VPC, that data is fully preserved on the VPC website, and Defendants can access it at will. And even with respect to the GVA, there is no requirement to disclose the raw data in its original form— especially when all parties agree that the data source is reliable—and Defendants provide no authority for their contrary claim. Defendants cite only two cases. The first case dealt with the hearsay and best evidence rules with regard to a non-expert witness, which is irrelevant to Dr.

Kleck's expert testimony, *see United States v. Miller*, 771 F.2d 1219, 1238 (9th Cir. 1985), and the second case involved the unusual situation, not applicable to Dr. Kleck, where an expert, in an "ad hoc manner," completely changed his testimony with no explanation, *see McClellan v. I-Flow Corp.*, 710 F.Supp.2d 1092, 1128 (D. Or. 2010). The appropriate time to challenge data collection methods is during trial because the entire point of the Rules of Evidence is to "place the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980). Moreover, given Dr. Kleck's detailed declaration, Defendants know the precise details of his intended testimony, which satisfies Rule 26's primary purpose of preventing experts from giving surprise testimony. *See Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004).

Finally, even if Rule 26(a)(2)(B)(ii) required disclosure of raw data in its original form, disclosure is excused when it is "substantially justified or is harmless," Fed. R. Civ. P. 37(c)(1): Here, it is both. It is impossible for Dr. Kleck to produce the raw data in its original form because the GVA is frequently updated and the raw data as it existed when Dr. Kleck first performed his analysis no longer exists. This substantially justifies the failure to disclose it. Dr. Kleck provides the data as he recorded it and fully explains his method of collection, but he cannot provide what he cannot obtain. *See Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 521 (N.D. Cal. 2012) (suggesting that substantial justification occurs when the failure is outside plaintiffs' control). Additionally, the lack of raw data is harmless because Defendants can still access GVA's data and while it may not be precisely the same as when Dr. Kleck reviewed it, the modest updates do not meaningfully change Dr. Kleck's analysis or his conclusion that only a small share of mass shootings involve magazines capable of holding more than ten rounds. If Defendants dispute that conclusion, they must do so at trial.

## CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Motion to Exclude Testimony.


DATED:  May 22, 2023

Paul D. Clement[*]
Erin E. Murphy[*]
Matthew D. Rowen[*]
Nicholas M. Gallagher[*]
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

[*] admitted *pro hac vice*


s/ Stephen Joncus
Stephen J. Joncus, OSB #013072
JONCUS LAW PC
13203 SE 172nd Ave Ste 166 #344
Happy Valley, OR  97086
(971) 236-1200
steve@joncus.net

JURISLAW LLP

s/ Shawn M. Lindsay
Shawn M. Lindsay (OSB No.: 020695)
Daniel J. Nichols (OSB No.: 101304)
Three Centerpointe Drive
Suite 160
Lake Oswego, OR 97035
(503) 968-1475
shawn@jurislawyer.com

*Counsel for Eyre Plaintiffs*


s/ Leonard W. Williamson
Leonard W. Williamson, OSB #910020
VAN NESS WILLIAMSON LLP
960 Liberty St. SE, Ste 100
Salem, OR 97302
(503) 365-8800
l.williamson@vwllp.com

*Counsel for OFF Plaintiffs*


s/ James L. Buchal
James L. Buchal, OSB #910020
MURPHY & BUCHAL LLP
PO Box 86620
Portland, OR 97286
(503) 227-1011
jbuchal@mbllp.com

*Counsel for Fitz and Azzopardi Plaintiffs*

**ATTORNEY CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, I have made service of the foregoing **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY** of the party listed below in the manner indicated:

Matthew D. Rowen
Erin E. Murphy
Nicholas M. Gallagher
Paul D. Clement
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
*Attorney for Eyre Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email:
matthew.rowen@clementmurphy.com;
erin.murphy@clementmurphy.com;
nicholas.gallagher@clementmurphy.com;
paul.clement@clementmurphy.com
☒ Electronically via USDC CM/ECF system

Jessica A. Skelton
Zachary J. Pekelis
Kai Smith
W. Scott Ferron
Pacific Law Group LLP
1191 Second Avenue, Suite 2000
Seattle, WA 98101-3404
*Attorney for Proposed Intervenor-Defendant Oregon Alliance for Gun Safety*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email:
jessica.skelton@pacificlawgroup.com;
zach.pekelis@pacificlawgroup.com;
kai.smith@pacificlawgroup.com;
scott.ferron@pacificlawgroup.com
☒ Electronically via USDC CM/ECF system

James L. Buchal
Murphy & Buchal
PO Box 86620
Portland, OR 97286
*Attorney for Fitz Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: jbuchal@mbllp.com
☒ Electronically via USDC CM/ECF system

William Bergstrom
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
*Attorney for Fitz Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: wbergstrin@cooperkirk.com
☒ Electronically via USDC CM/ECF system

D. Angus Lee
Angus Lee Law Firm, PLLC
9105A NE HWY 99, Suite 200
Vancouver, WA
*Attorney for Fitz Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: Angus@AngusLeeLaw.com
☒ Electronically via USDC CM/ECF system

James L. Buchal

☐ U.S Mail

Murphy & Buchal
PO Box 86620
Portland, OR 97286
*Attorney for Azzopardi Plaintiffs*

☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: jbuchal@mbllp.com
☒ Electronically via USDC CM/ECF system


William Sack
Firearms Policy Coalition, Inc.
5550 Painted Mirage Rd., Suite320
Las Vegas, NV 89149
*Attorney for Azzopardi Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: Wsack@FPClaw.org
☒ Electronically via USDC CM/ECF system


Adam Kraut
Second Amendment Foundation
12500 NE Tenth Place
Bellevue, WA 98665
*Attorney for Azzopardi Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: akraut@saf.org
☒ Electronically via USDC CM/ECF system


D. Angus Lee
Angus Lee Law Firm, PLLC
9105A NE HWY 99, Suite 200
Vancouver, WA
*Attorney for Azzopardi Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: Angus@AngusLeeLaw.com
☒ Electronically via USDC CM/ECF system


Stephen J. Joncus
Joncus Law LLC
13203 SE 172nd Ave, Ste 166 #344
Happy Valley, OR 97086
*Attorney for OFF Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: steve@joncus.net
☒ Electronically via USDC CM/ECF system


Leonard W. Williamson
Van Ness Williamson
960 Liberty Street S, Suite 100
Salem, OR 97302
*Attorney for OFF Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: 1.williamson@vwllp.com
☒ Electronically via USDC CM/ECF system


Pete Serrano
Silent Majority Foundation
5238 Outlet Drive
Pasco, WA 99301
*Attorney for OFF Plaintiffs*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: pete@silentmajorityfoundation.org
☒ Electronically via USDC CM/ECF system


Jessica A. Skelton
Zachary J. Pekelis
Kai Smith
W. Scott Ferron
Pacific Law Group LLP

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier


CERTIFICATE OF SERVICE                                                2

1191 Second Avenue, Suite 2000
Seattle, WA 98101-3404
*Attorney for Proposed Intervenor-Defendant*
*Oregon Alliance for Gun Safety*

☐ Email:
jessica.skelton@pacificlawgroup.com;
zach.pekelis@pacificalawgroup.com;
kai.smith@pacificlawgroup.com;
scott.ferron@pacificalawgroup.com
☒ Electronically via USDC CM/ECF system

Brian Simmonds Marshall
Oregon Department of Justice
Trial Division
Special Litigation Unit
100 SW Market Street
Portland, OR 97201
*Attorney for Defendants*

☐ U.S Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email: brain.s.marshal@doj.state.or.us
☒ Electronically via USDC CM/ECF system

Erin N. Dawson
Hannah Hoffman
Harry B. Wilson
Markowitz Herbold PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
*Attorney for Defendants*

☐ U.S. Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☐ Email:
erindawson@markowitzherbold.com;
HannahHoffman@markowitzherbold.com;
harrywilson@markowitzherbold.com
☒ Electronically via USDC CM/ECF system

DATED:  May 22, 2023

s/ Shawn M. Lindsay
Shawn M. Lindsay (OSB No.: 020695)
Counsel for Eyre Plaintiffs

CERTIFICATE OF SERVICE                                            3