**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Hannah K. Hoffman, OSB #183641**
HannahHoffman@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
(503) 295-3085

    Special Assistant Attorneys General for Defendants

**Ellen F. Rosenblum, OSB #753239**
Attorney General
**Brian Simmonds Marshall, OSB #196129**
Senior Assistant Attorney General
Brian.S.Marshall@doj.state.or.us
**DEPARTMENT OF JUSTICE**
100 SW Market Street
Portland, OR 97201
(971) 673-1880

    Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>                                    Plaintiffs,<br><br>      v.<br><br>TINA KOTEK, et al.,<br><br>                                    Defendants,<br><br>      and | Case No. 2:22-cv-01815-IM (lead case)<br>              3:22-cv-01859-IM (trailing case)<br>              3:22-cv-01862-IM (trailing case)<br>              3:22-cv-01869-IM (trailing case)<br><br>**DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS** |

Page 1 –    DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

|  |
|---|
| OREGON ALLIANCE FOR GUN SAFETY, |
| Intervenor-Defendant. |
| MARK FITZ, et al., |
| Plaintiffs, |
| v. |
| ELLEN F. ROSENBLUM, et al., |
| Defendants. |
| KATERINA B. EYRE, et al., |
| Plaintiffs, |
| v. |
| ELLEN F. ROSENBLUM, et al., |
| Defendants, |
| and |
| OREGON ALLIANCE FOR GUN SAFETY, |
| Intervenor-Defendant |
| DANIEL AZZOPARDI, et al., |
| Plaintiffs, |
| v. |
| ELLEN F. ROSENBLUM, et al., |
| Defendants. |

## LR 7-1 CERTIFICATION

Pursuant to L.R. 7-1(a), counsel for defendants certify that they made a good-faith effort to resolve this dispute but have been unable to do so.

## MOTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 52(c), defendants move for judgment on partial findings as to plaintiffs' Counts I, V, and VI as enumerated in the Court's June 1, 2023 Order re Clarification of Issues for Trial (ECF 235).

## LEGAL STANDARD

Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

*Id*. "Rule 52(c) expressly authorizes the district judge to resolve disputed issues of fact. In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006) (internal citation and quotation omitted).

"[T]he rule 'authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence.'" *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030–31 (9th Cir. 1996) (quoting Rule 52(c) advisory committee's note). "A court may grant a Rule 52(c) motion made by either party or may grant judgment *sua sponte* at any time during a bench trial, so long as the party against whom judgment is to be rendered has been fully heard with respect to an issue essential to that party's case." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d Cir. 2010) (internal quotation marks omitted).

The requirement "that a party be fully heard does not mean that a party must be allowed to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence." *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 366 (3d Cir. 2020) (internal

citations and quotations omitted).  Furthermore, "it is within the discretion of the trial court to enter a judgment on partial findings even though a party has represented that it can adduce further evidence, if under the circumstances, the court determines that the evidence will have little or no probative value."  *Id*. (internal citations omitted).

## ARGUMENT

Defendants are entitled to a judgment on partial findings as to the following issues: (1) Measure 114's permit-to-purchase requirement is facially constitutional under *Bruen* (Count I); (2) Measure 114 comports with due process because it is not retroactive (Count V); and (3) Measure 114 comports with due process because it is not vague (Count VI).  In presenting their case-in-chief, plaintiffs failed to carry their evidentiary burden with respect to those issues, and defendants are entitled to judgment as a matter of law on each.

### I. Measure 114's permit-to-purchase is facially constitutional under *Bruen*.

Measure 114's permit-to-purchase requirement is presumptively constitutional because the permit program is the type of shall-issue regime that the *Bruen* Court explicitly endorsed. Measure 114 establishes a "shall issue" permit-to-purchase system that creates few new limitations on firearms acquisition.  *Bruen* made clear that it did not prohibit "shall issue" permit systems:

> To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes, under which a general desire for self-defense is sufficient to obtain a [permit.] . . . [I]t appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, *are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens.*  And they likewise appear to contain only narrow, objective, and definite standards guiding licensing officials, . . . rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion[.]

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111, 2138 n.9 (2022) (quotation marks and citations omitted) (emphasis added); *see also id.* at 2161 (Kavanaugh, J., concurring joined by Roberts, C.J.) (same sentiment) (quotation marks and citations omitted).

Justice Kavanaugh's concurrence, joined by Chief Justice Roberts, emphasized that shall-issue permit programs are constitutional: "[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id.* at 2161 (Kavanaugh, J., concurring). Justice Kavanaugh explained that "43 States employ objective shall-issue licensing regimes. Those shall-issue regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 2162. And he reiterated that "shall-issue licensing regimes are constitutionally permissible[.]" *Id.*

Here, Measure 114 provides for precisely what *Bruen* allows. It:

1. Requires a person to present a permit to acquire a firearm;
2. Requires the person to pass a background check to obtain the permit;
3. Requires the person to provide fingerprints to OSP for its use in the background check;
4. Requires the person to complete a firearm safety course;
5. Requires the person to pay a fee, capped at $65; and
6. Requires law enforcement to determine whether there are reasonable grounds to conclude that the applicant's mental state or behavioral history makes the applicant a risk to self, others, or the community.

As to facial constitutionality, plaintiffs appear to take issue only with the last of these requirements. In pretrial briefing, plaintiffs argued that the mental-health-review "provision on its face allows permit agents to deny permits based on the exercise of judgment and formation of

Page 5 –    DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

an opinion about the applicant's suitability to own a firearm." (Pls.' Trial Br. (ECF 165) at 28.). Plaintiffs are mistaken.

The Second Amendment protects "the right of law-abiding, *responsible* citizens" to keep and use arms. *Bruen*, 142 S. Ct. at 2118 (quoting *Heller*, 554 U.S. 570, 635 (2008)) (emphasis added). All three of the Supreme Court's major Second Amendment decisions since 2008 note that governments may prohibit persons suffering from mental illness from possessing firearms. *Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]"); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J. concurring) (reemphasizing *Heller*'s circumspection regarding "felons and the mentally ill"); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (same).

Measure 114's mental health review is an objective inquiry permissible under *Heller* and *Bruen*. Measure 114 states that a person "is qualified" to obtain a permit to purchase if, among other things, the person:

> Does not present reasonable grounds for a permit agent to conclude that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence[.][1]

Consistent with *Bruen*, the permit agent then "shall issue" a permit if the applicant is so qualified.

Contrary to plaintiffs' assertion, this is not a "pure judgment call" that subjects Second Amendment rights to "the whims of government officials." (Pls.' Trial Br. at 12, 17.) The permit agent must have "reasonable grounds" to believe that the person is "a danger to self or

---

[1] Measure 114 § 4(1)(b)(C).

others." Measure 114 has express judicial review provisions to challenge such a denial. After reviewing the databases described above, the permit agent must explain the reasons for a denial in writing, and an applicant can immediately pursue an expedited appeal of any denial in Oregon Circuit Court. Measure 114 § 5(5). On appeal, the circuit court reviews *de novo* the evidence on which the permit agent relied in denying the application and any countervailing evidence offered by the applicant to determine if the denial was appropriate. *Id.* § 5(10). When construing the nearly identical CHL provision, the Oregon Court of Appeals has held that a reviewing court should consider the "evidence on which the sheriff relied in evaluating" the applicant's dangerousness. *Concealed Handgun License for Stanley v. Myers*, 276 Or. App. 321, 331 (2016). Because the reviewing court must conduct a *de novo* review of the *evidence* supporting a permit denial, plaintiffs are simply wrong as a matter of state law that Measure 114 authorizes permit agents to deny permit application based on "subjective" beliefs and "whims."

Indeed, *Bruen* specifically cited the Oregon concealed carry scheme that includes this language as an example of the type of law that its holding did not call into question. 142 S. Ct. at 2138 n.9 (quotation marks omitted); *see id*. at 2123 n.1 (citing Oregon law).[2] Similarly, like Oregon, concealed carry statutes in Missouri, Montana, North Dakota, and Wyoming all allow for permit denial if a permit agent reviews available evidence and forms a "reasonable" belief that the applicant is a danger to themself or others.[3] The *Bruen* Court endorsed each of these statutes as permissible as well. *Id*.

---

[2] In relevant part, ORS 166.293(2) provides that "a sheriff may deny a concealed handgun license if the sheriff has reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence."

[3] See, Mo. Ann. Stat. § 571.101(2)(7) (requiring license to issue if applicant has "not engaged in a pattern of behavior, documented in public or closed records, that causes the sheriff

Page 7 –   DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

By contrast, plaintiffs do not cite, and defendants have not found, a single case striking down a similar mental-health-review provision as facially unconstitutional. Instead, federal courts uphold mental health reviews by permit agents against Second Amendment challenges, even in states with more broadly worded statutes. *See, e.g.*, *White v. Illinois State Police*, 482 F. Supp. 3d 752, 764-65 (N.D. Ill. 2020), *aff'd as modified*, 15 F.4th 801 (7th Cir. 2021) (upholding a statute that required a permitting agent to determine whether the concealed-carry applicant "pose[d] a danger"); *see also Bruen*, 142 S. Ct. at 2123 n.1, 2138 n.9 (endorsing constitutionality of the Illinois statute upheld in *White*). In sum, the mental-health-review provision in Measure 114 is not a "pure judgment call". It is the type of objective inquiry explicitly endorsed in *Bruen*. Accordingly, defendants should prevail because the permit-to-purchase is facially constitutional under the analysis described in Count I (1)(a) of this Court's June 1, 2023 Order (ECF 235).

## II. Measure 114 is not unconstitutionally retroactive.

Plaintiffs failed to establish that Measure 114 applies retroactively in violation of the Constitution's Due Process Clause.

---

to have a *reasonable belief* that the applicant presents a danger to himself or others") (emphasis added); Mont. Code Ann. § 45-8-321(2) ("The sheriff may deny an applicant a permit to carry a concealed weapon if the sheriff has *reasonable cause* to believe that the applicant is mentally ill, mentally disordered, or mentally disabled or otherwise may be a threat to the peace and good order of the community . . . .") (emphasis added); N.D. Cent. Code Ann. § 62.1-04-03 (West) ("The bureau may deny approval for a license if the bureau has reasonable cause to believe that the applicant or license holder has been or is a danger to self or others as demonstrated by evidence . . . ."); Wyo. Stat. Ann. § 6-8-104 ("The written report shall . . . establish reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to himself or others, or to the community at large as a result of the applicant's mental or psychological state, as demonstrated by a past pattern or practice of behavior, or participation in incidents involving a controlled substance, alcohol abuse, violence or threats of violence as these incidents relate to criteria listed in this section.").

### a. Measure 114's restrictions on LCMs are not retroactive.

Contrary to plaintiffs' assertion, Measure 114 does not have "retrospective aspects" that "violate due process." (Pls.' Trial Br. at 62.) The law does not punish past purchases; it regulates only future conduct (*e.g.*, possession and transfers) after Measure 114's effective date. That is, Measure 114 does not attach new legal consequences to any conduct completed before Measure 114 is in effect. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 269-70 (1994) (discussing legal standard for retroactivity). It therefore is not retroactive and does not violate the Due Process Clause.

In fact, Measure 114 is more forgiving than the law requires, in that it allows current owners of LCMs to keep and continue to use their existing magazines for certain purposes. Measure 114 § 11(5). As such, this Court has already concluded that "Measure 114 is not retroactive: it does not render Plaintiffs' already-possessed large-capacity magazines illegal, allows Plaintiffs to retain possession of these large-capacity magazines on their property, and allows Plaintiffs to use these large-capacity magazines in limited situations." (Op. & Order (ECF 39) at 37.)

### b. Measure 114 does not apply retroactively and justification is thus unnecessary.

As stated above, Measure 114 does not apply retroactively and, therefore, the Court need not consider whether its retroactive aspects are justified. Plaintiffs' trial presentation does not undermine this conclusion. Defendants are thus entitled to a judgment on partial pleadings as to the claim that Measure 114 violates the Fourteenth Amendment due process on retroactivity grounds.

### III. Measure 114's restrictions on LCMs are not unconstitutionally vague.

Plaintiffs failed to establish that Measure 114 is unconstitutionally vague in violation of the Constitution's Due Process Clause.

#### a. The LCM restrictions are not void for vagueness as they provide fair notice to a person or ordinary intelligence of what is prohibited.

In presenting its case-in-chief, plaintiffs failed to establish that Measure 114 is impermissibly vague. In a facial challenge, a statute is unconstitutionally vague only if it fails to provide a person of ordinary intelligence fair notice of what is prohibited. *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). A law is not void for vagueness merely because "there will be close cases requiring some degree of law enforcement subjectivity" when enforcing the law. *Edge v. City of Everett*, 929 F.3d 657, 666 (9th Cir. 2019). Instead, a law is unconstitutionally vague only if people "must necessarily guess at its meaning." *Id.* at 665 (quotation marks and citation omitted). "Whether a regulation is unconstitutionally vague is a question of law." *United States v. Erickson*, 75 F.3d 470, 475 (9th Cir. 1996). Thus, the Court should resolve this legal question by looking at the face of the statute, not by assessing lay legal conclusions.

The definition of "large-capacity magazine" is not impermissibly vague as it provides fair notice of what is prohibited sufficient to inform a person of ordinary intelligence. Section 11(1)(d) of Measure 114 defines "[l]arge-capacity magazine" as:

> [A] fixed or detachable magazine, belt, drum, feed strip, helical feeding device, or similar device, including any such device joined or coupled with another in any manner, or a kit with such parts, that has an overall capacity of, or that can be readily restored, changed, or converted to accept, more than 10 rounds of ammunition and allows a shooter to keep firing without having to pause to reload….

Plaintiffs challenge the phrase "can be readily restored, changed, or converted to accept" as impermissibly vague but this phrase does not require Oregonians to guess at its meaning. Measure 114 restricts magazines that can be quickly altered to accept more than 10 rounds. *State v. Briney*, 345 Or. 505, 517 (2008) (holding that a "readily capable" firearm is one "operational or promptly able to be made so"). Magazines are legal if they have a capacity of 10 rounds or fewer and cannot "readily" be converted to hold more. Measure 114 § 11(1)(d). The Constitution does not require "meticulous specificity" if "it is clear what the ordinance as a whole prohibits." *United States v. Lucero*, 989 F.3d 1088, 1101 (9th Cir. 2021) (quotation marks and citation omitted).

Rather, like Measure 114, the former federal assault weapons ban defined "large capacity ammunition feeding device" as "any magazine, belt, drum, feed strip, or similar device . . . that has the capacity of, or that can be *readily restored or converted to accept*, more than 10 rounds of ammunition."[4] The District of Columbia, Massachusetts, Colorado, New York, Connecticut, Vermont, and Rhode Island similarly define magazine and firearm restrictions to include items that can be "readily" converted to include a large number of rounds.[5] Those laws have been on the books for decades, and plaintiffs do not identify any history of widespread confusion about their meaning. *Cf. United States v. Stewart*, 451 F.3d 1071, 1072 (9th Cir. 2006) (affirming conviction for possessing kit "readily" convertible into banned firearm).

The only federal court of appeals to have addressed this issue rejected the same vagueness argument that plaintiffs make here. In their complaint, plaintiffs contend that

---

[4] Former 18 U.S.C. § 921(31) (emphasis added).

[5] Colo. Rev. Stat. Ann. § 18-12-301; N.Y. Penal Law § 265.00(23); Conn. Gen.Stat. § 53–202w(a)(1); Mass. Gen. Laws Ann. ch. 140, § 121; R.I. Gen. Laws § 11-47.1-2; D.C. Code Ann. § 7-2506.01; Vt. Stat. Ann. tit. 13, § 4021.

**Page 11 –   DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

Measure 114 is vague because it does not specify whether the magazine must be "readily" convertible by the person in possession or instead "by a master gunsmith using the facilities of a fully-equipped machine shop." (*Eyre* Am. Compl. (ECF 67) ¶ 135.) In *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, the Second Circuit considered and rejected this gunsmith hypothetical, holding that plaintiffs' reading of statute was "implausible" and could be resolved in an as-applied challenge if such a prosecution ever arose. 804 F.3d 242, 266 (2d Cir. 2015). Plaintiffs' reliance on a Sixth Circuit case addressing Ohio law is inapposite because that case interpreted a different statutory phrase—"may be restored" without the modifier "readily." *See id.* (so holding). The phrase "readily restored, changed, or converted" is not unconstitutionally vague.

Plaintiffs' trial presentation failed to provide an evidentiary basis to reject the foregoing analysis. Plaintiffs offered the lay legal opinion of a gun store owner who purported to be confused by the phrase. As an initial matter, such testimony is not an appropriate basis for striking down a facially valid statute. Regardless, plaintiffs' lay legal opinion testimony was rebutted by plaintiffs' own market expert. Mr. Hanish testified that, during the time period in which the federal assault weapons ban was in effect—which used virtually identical text—he readily sold new 10-round magazines without any guessing or confusion as to the statutory meaning. Accordingly, defendants are entitled to a judgment on partial pleadings as to this issue.

## CONCLUSION

Based on the presentation of plaintiffs' case-in-chief, this Court should issue a judgment on partial findings in defendants' favor on Counts I, V, and VI.

DATED: June 6, 2023.

                ELLEN ROSENBLUM
                ATTORNEY GENERAL
                FOR THE STATE OF OREGON

By: *s/ Harry B. Wilson*
     Harry B. Wilson, OSB #077214
     HarryWilson@MarkowitzHerbold.com
     Hannah K. Hoffman, OSB #183641
     HannahHoffman@MarkowitzHerbold.com
        *Special Assistant Attorneys General for Defendants*

     Brian Simmonds Marshall, OSB #196129
     brian.s.marshall@doj.state.or.us
        *Of Attorney for Defendants*

2006306

Page 13 –    DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS